# EXHIBIT K

First and Second Defendants<br>
First Affidavit<br>
Exhibit PR-1<br>
6 July 2020

Claim No. QB-2020-002218

**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**

B E T W E E N:

STOKOE PARTNERSHIP SOLICITORS

Claimant

- and -

(1) PAUL ROBINSON
(2) COMPANY DOCUMENTS LTD
(3) OLIVER MOON

Defendants

---

**AFFIDAVIT OF PAUL ROBINSON**

---

I, **PAUL ROBINSON**, of 6 Belvedere Walk, Haywards Heath, West Sussex, RH16 4TD **STATE ON OATH** as follows:

1. I am the First Defendant in this action. I make this affidavit on behalf of the First and Second Defendants to provide the information sought by the Claimant pursuant to the draft Consent Order signed on behalf of the First and Second Defendants on 5 July 2020, a copy of which is now produced and shown to me.

2. Except where I indicate otherwise below, the facts and matters stated in this affidavit are within my own knowledge and are true. Where information has been supplied to me by others, its source is identified and I believe it to be true.

3. There is now produced and shown to me, marked "PR-1" an exhibit containing true copies of documents to which I will refer in this affidavit.

4. This affidavit records information that has been provided by me to the Claimant's legal representatives at a meeting at the Claimant's offices in Central London on 5 July 2020, at which my counsel and solicitor were present.

5. I confirm that, for the purposes of providing this Affidavit, I have carefully read and considered the Witness Statement of Haralambos Tsiattalou dated 29 June 2020. Except where I state otherwise below, the matters stated in that witness statement are true so far as they relate to me and to my involvement in the events described.

6. Nothing in this affidavit should be treated as waiving privilege in any privileged information.

(1) **Persons seeking Confidential Information from the Claimant**

7. I am asked to provide the identity of all persons from whom I received instructions to investigate the Claimant and to obtain its confidential information.

8. My instructions to investigate the Claimant and to obtain the information referred to at paragraphs 62 to 85 of Mr Tsiattalou's witness statement originated from Mr Patrick Grayson. I believe that Mr Grayson is a private investigator and was until approximately one year ago a partner in the firm of GPW Investigations. I have previously worked from time to time on other instructions provided to me by Mr Grayson before I was instructed to investigate the Claimant.

9. The first instruction that I received to investigate the Claimant was given to me by Mr Grayson in person at a meeting that took place at the Goring Hotel in Belgravia, London. I recall that this meeting took place in January 2020. The meeting was arranged by text messages and calls using the "Signal" private messaging system. I refer, in particular, to the messages dated 30 January 2020 that are now produced and shown to me at **PR-1 page 2**.

10. During the meeting, Mr Grayson asked me whether I knew of anyone who was capable of obtaining bank records and other information relating to the Claimant. I told him that I did know of somebody who would be able to do this. That person was Mr John Gunning, who I now understand is referred to as "Source A2" in Mr Tsiattalou's witness statement. Only once these proceedings were served on me, did I read that Mr Gunning had, in turn, asked Mr Oliver Moon to assist him in obtaining the relevant information. I did not know Oliver Moon, and have not had any contact with him.

11. I am also asked, specifically, whether I am aware of the identity of any persons from whom Mr Grayson was receiving his instructions to investigate the Claimant. I do not know this information. Mr Grayson did not tell me who was instructing him at the time and I did not ask him for this information.

(2) **Persons seeking Confidential Information from Others**

(a) **Radha Stirling**

12. At paragraphs 55 to 57 of his witness statement, Mr Tsiattalou refers to requests that were made to investigate Ms Radha Stirling and an organisation called "Detained in Dubai". In particular, Mr Tsiattalou refers to requests to obtain background information, Radha Stirling's whereabouts, her telephone numbers, and her banking information.

13. I confirm that, in around July 2019, I was asked by Mr Grayson to investigate both Ms Radha Stirling and Detained in Dubai. To the best of my knowledge, the account of these events given in these paragraphs of Mr Tsiattalou's statement is true, but only so far as it concerns me and my involvement. I do not now recall whether any information was obtained in response to these requests.

(b) Maltin PR

14. At paragraphs 58 to 61 of his witness statement, Mr Tsiattalou refers to requests that were made to access financial records and monthly transactional data from Maltin PR's bank account. In particular, Mr Tsiattalou refers to requests made on 8 March 2020 and 11 March 2020 to access the bank account and obtain information relating to payments to Ms Radha Stirling, Mr Farhad Azima, and the solicitors firm Hogan Lovells.

15. I confirm that I was asked by Mr Grayson to obtain this information. He gave me the document containing company information that I have exhibited in **PR-1, pages 13-14**. To the best of my knowledge, the account of these events given in these paragraphs of Mr Tsiattalou's statement is true but only so far as it concerns me and my involvement.

(c) Hogan Lovells

16. At paragraphs 86 to 92 of his witness statement, Mr Tsiattalou refers to requests that were made to access banking information from Hogan Lovells. In particular, Mr Tsiattalou refers to a request made on 6 April 2020 to obtain three months of corporate banking information.

17. I confirm that I was asked by Mr Grayson to obtain this information but it was never obtained. To the best of my knowledge, the account of these events given in these paragraphs of Mr Tsiattalou's statement is true but only so far as it concerns me and my involvement.

(3) Relevant Communications

18. At paragraphs 52 to 54 of his witness statement, Mr Tsiattalou refers to communications between me and Mr Gunning using an encrypted messaging application called "Threema" and by encrypted emails.

19. I confirm that I am the account holder and user of the email address: "duediligence@hushmail.com" and that I communicated with Mr Gunning using this email address in the manner described by Mr Tsiattalou in his witness statement.

4

20. I am also asked how I communicated with Mr Grayson at the relevant times. I communicated with Mr Grayson using Signal private messages and calls. I no longer have a complete record of those communications because, shortly after my meeting with him in January 2020, Mr Grayson configured the Signal messaging application to delete all text messages exchanged between us automatically after a period of 12 hours.

21. I do, however, still retain screenshots of records of the calls that took place between Mr Grayson and me during the period between January and June 2020. I also retain screenshots of a small number of text messages that were exchanged between Mr Grayson and me during the period before the Signal application was set to delete messages automatically. I now produce and exhibit these screenshots at **PR-1 pages 2-12**.

### (4) Gist of Communications

22. I am asked to provide the gist of the requests that I received from Mr Grayson to investigate the Claimant.

23. I have already referred to the communications between Mr Grayson and me at the meeting that took place in January 2020. On that occasion, Mr Grayson asked me whether I knew anyone who was able to investigate the Claimant and obtain banking information. I told him that I did know someone who could do so.

24. Following the meeting, there were a number of communications that took place between Mr Grayson and me concerning the investigation. The gist of those communications were follow up questions to the initial enquiry, I do not have any records of the message content since on 30 January the Signal communications were set by Mr Grayson to disappear after 12 hours.

25. I recall, in particular, that Mr Grayson asked me a number of follow-up questions from time to time based on the information that had been obtained from the Claimant. I did not, myself, study the information and so I passed on these requests to Mr Gunning. To the extent that further information was obtained by Mr Gunning, I passed this on to Mr Grayson.

26. Mr Grayson and I agreed a fee of £10,000 for the investigation into the Claimant. At the date this affidavit is sworn, I have been paid £5,000 in cash by Mr Grayson. The remaining £5,000 has not been paid.

27. Shortly after being served with these proceedings, on Wednesday 1st July 2020 I called Mr Grayson and informed him of the situation. Mr Grayson told me not to call him again. There has been no further communication between us since.

(5) **Confidential information originating from the Claimant**

28. I am asked to specify what confidential information originating from the Claimant was requested and obtained by me. I understand that, in answering this question, I must state all requests made by me for the Claimant's confidential information and not only those requests that are mentioned in Mr Tsiattalou's witness statement.

29. I confirm that I requested, and obtained, the confidential information that is described at paragraphs 62 to 85 of Mr Tsiattalou's witness statement. I did not request, or obtain, any other confidential information from the Claimant not mentioned in Mr Tsiattalou's witness statement.

(6) **Use of Confidential Information**

30. I am asked to state the use of the Claimant's confidential information identifying, in each case, (i) to whom it has been provided, (ii) when, (iii) where, (iv) how, and (v) for what purpose.

31. During the investigation, Mr Gunning passed information to me by email as described at paragraphs 52 to 54 of Mr Tsiattalou's witness statement. Shortly after receiving this information from Mr Gunning, I passed it on to Mr Grayson. I recall that, on one occasion, I believe it was early March 2020, that I met Mr Grayson in Sloane Square, and provided him with a hard copy print out of the information given to me by Mr Gunning, and a USB stick containing the same information electronically. .

32. On other occasions, I sent Mr Grayson the information I had received from Mr Gunning using a 'Proton Mail' encrypted email account. I sent the messages from my 'hushmail' email address to Mr Grayson at the email address cloverdock@protonmail.com, which he provided to me. I have, however, deleted the emails that I sent to Mr Grayson from this account. I confirm that I did so before being served with these proceedings.

33. I am asked to state for what purpose the confidential information has been used by Mr Grayson. I do not know this information. I did not ask Mr Grayson about this at the time.

### (7) Documents

34. I have been asked to provide any documents in the possession of the First and Second Defendants relating to the requests to obtain the Claimant's confidential information. I have provided those documents at Exhibit PR-1. I confirm that, apart from those documents, the First and Second Defendants do not retain any documents relating to the investigations.

### (8) Other Matters

35. At Section E of his witness statement, Mr Tsiattalou has stated that he was the subject of surveillance during trips that he took to Dubai in February and March 2020. I do not have any knowledge of these matters.

36. I have been asked whether I know Mr Stuart Page. I confirm that I do know him and that I have previously worked with him on more than one occasion. In particular, I worked with Mr Page approximately 20 years ago on an investigation not relevant to this case. Since then, I have also worked with Mr Page from time to time on small pieces of corporate research.

37. Shortly after being served with these proceedings, on 1st July 2020, after seeing Mr Page's name in the documents I called Mr Page and informed him that he had been mentioned in Mr Tsiattalou's witness statement. I sent the first few pages to him, I can't recall how many pages exactly.

38. Mr Page called me back a few days later on Friday 3rd July 2020. He suggested to me that I could fight this case and offered to provide me with a "top lawyer" to do so. He also stated that, if funding was likely to be a problem, he could assist me with this. I did not accept Mr Page's offer, as by that stage I had obtained legal representation. I have not spoken to Mr Page since this date.

39. At Section F of his witness statement, Mr Tsiattalou has stated that both he and other persons have received emails and text messages which appear to be 'phishing' attempts to access information. I confirm that I do not have any knowledge of these matters.

SWORN by Paul Robinson

Signed: ..................

This 6th day of July 2020

Acknowledged before me by the above named this 6th day of July 2020, he having solemnly averred the truth of the above contents.

Signed: ..................

JENSEN MARK BOURKE
COMMISSIONER FOR OATHS
FCILEX 86825
JUDGE e PRIESTLEY LLP
JUSTIN HOUSE
6 WEST STREET
BROMLEY BR1 1JN

8