# EXHIBIT M

**IN THE HIGH COURT OF JUSTICE**        Claim no. QB-2020-002492
**QUEEN'S BENCH DIVISION**

**B E T W E E N :-**

STOKOE PARTNERSHIP SOLICITORS

**Claimant**

**and**

**(1) MR PATRICK TRISTRAM FINUCANE GRAYSON**
**(2) GRAYSON + CO LIMITED**
**(3) MR STUART ROBERT PAGE**
**(4) PAGE CORPORATE INVESTIGATIONS LIMITED**

**Defendants**

------------------------------

**PARTICULARS OF CLAIM**

------------------------------

**Parties**

1. The Claimant is a firm of solicitors. It is instructed by Mr Karam Al Sadeq in ongoing High Court proceedings under claim number QB-2020-000322 (the "**Al Sadeq Litigation**").

2. The First Defendant has had a long career in corporate investigation. He was a founding partner of GPW, from which he resigned in or about December 2018.

3. The Second Defendant is a company registered in England and Wales with company number 10907649. The First Defendant and his wife are its directors and shareholders. The Claimant believes and avers that the Second Defendant is the company through which the First Defendant provides investigation services.

4. The Third Defendant is an investigation agent. He has admitted being instructed by the ruler (the "**Ruler**") of Ras Al Khaimah ("**RAK**"). RAK is the Emirate in which the Claimant's client Mr Karam Al Sadeq is detained.

5. The Fourth Defendant is a company registered in England and Wales with company number 05985794. The Third Defendant is a director of the company and is registered as a person with significant control over it. The Claimant believes and avers that the

1

Fourth Defendant is the company through which the Third Defendant provides investigation services.

## Obtaining of the Claimant's confidential information

6.  From about January 2020, the First Defendant instructed Mr Paul Robinson to investigate the Claimant and to obtain information about the Claimant which (as explained below) was plainly confidential to the Claimant, for reward. Mr Robinson has explained this in his affidavit dated 6 July 2020. In particular:

    (1)  The first such instructions were given in or about January 2020 at a meeting at the Goring Hotel in Belgravia, London. At that meeting, the First Defendant asked Mr Robinson whether he knew anyone who was able to investigate the Claimant and obtain banking information.

    (2)  The First Defendant asked Mr Robinson a number of follow-up questions from time to time based on the information that Mr Robinson obtained, in particular by encrypted text messages sent using the Signal system which the First Defendant set to be automatically deleted.

7.  Mr Robinson in turn requested Mr John Gunning to obtain such information about the Claimant. Mr Gunning and Mr Robinson have confirmed this in affidavits dated respectively 2 and 6 July 2020. Mr Gunning in turn made requests of Mr Oliver Moon, as Mr Moon has confirmed in an affidavit dated 2 July 2020. In particular:

    (1)  On or about 2 April 2020, Mr Robinson requested Mr Gunning to obtain the banking co-ordinates of the Claimant.

    (2)  On or about 9 April 2020, Mr Robinson requested Mr Gunning to access the Claimant's main bank account and to obtain transactional data for the past three months.

    (3)  On or about 21 April 2020, Mr Robinson requested Mr Gunning to obtain information as to the "*movements in and out of Dubai – for Feb 2020*" of Mr Haralambos Tsiattalou.

(together, the "**Example Requests**").

2

8.   The subjects of each of the Example Requests coincided with the Al Sadeq Litigation in that:

   (1)   As to the first: Around 2 April 2020, enquiries were being made in the course of the Al Sadeq Litigation concerning the source of funding in those proceedings.

   (2)   As to the second: The Claim Form in the Al Sadeq Litigation was filed on 28 January 2020.

   (3)   As to the third: Mr Tsiattalou is the partner of the Claimant with conduct of the Al Sadeq Litigation. He visited Dubai for the purposes of that litigation in February 2020.

9.   The link with the Al Sadeq Litigation and parties thereto is supported by the following facts, namely that:

   (1)   On or about 22 April 2020, the First Defendant also requested Mr Robinson to obtain information relating to the Claimant's client account, including transactional information for March 2020, which request was passed on by Mr Robinson to Mr Gunning. According to Mr Gunning in his said affidavit, he was told by Mr Robinson that it was likely that transactional information of the Claimant would also be sought for the period November 2019 to February 2020. It is to be inferred that this latter information came to Mr Robinson from the First Defendant. The period in question overlaps with the period of the Claimant's instruction by Mr Al Sadeq.

   (2)   The First Defendant also requested Mr Robinson to obtain information from other persons connected to the Al Sadeq Litigation. In particular:

      (a)   In or about October to December 2019, the First Defendant requested the obtaining of confidential information about Ms Radha Stirling of Detained in Dubai, which is a human rights advocacy organisation assisting Mr Al Sadeq.

      (b)   In or about February and March 2020, the First Defendant requested and obtained financial records and monthly transactional data from a bank

3

account held by Maltin PR, which is a public relations and litigation support entity assisting the Claimant with the Al Sadeq Litigation.

(3) In or about April 2020, the First Defendant requested the obtaining of three months of corporate banking transactions of Hogan Lovells, an international firm of solicitors. Hogan Lovells have no role in the Al Sadeq Litigation. However, Hogan Lovells act on behalf of Eurasian National Resources Corporation ("**ENRC**") in court proceedings commenced by ENRC against Dechert LLP and Mr Neil Gerrard. Dechert LLP and Mr Gerrard are defendants in the Al Sadeq Litigation.

10. The information which was the subject of the Example Requests was plainly confidential in that:

(1) A solicitors' firm's bank details and transactional data are not generally available. A solicitors' firm would not wish such information to be generally available.

(2) The movements of a solicitor while acting for a client engaged in litigation are not generally in the public domain. A solicitor would not wish such information to be generally available, in particular because it is likely to reveal privileged information.

(3) Those considerations would have been obvious to the reasonable recipient. They were emphasised by the surreptitious way in which the information was gathered and conveyed.

11. The Claimant cannot be sure if the Example Requests are the only instances on which its confidential information was requested and/or obtained, and reserves its right to supplement these Particulars of Claim to the extent that further instances are discovered.

**Confidential information obtained by the First and Second Defendants**

12. Mr Robinson provided the confidential information obtained from the Example Requests to the First Defendant. In particular:

4

(1) In or about early March 2020, Mr Robinson met the First Defendant in Sloane Square, London. Mr Robinson provided him with a hard copy print out of the information, and a USB stick containing the same information electronically.

(2) On other occasions, Mr Robinson sent the information using a Proton Mail encrypted email account to the address cloverdock@protonmail.com.

13. The Claimant believes that, in requesting and/or receiving the information, the First Defendant was acting through the Second Defendant (being the company through which he appears to provide investigation services).

**Confidential information obtained by the Third and Fourth Defendants**

14. The Claimant believes and avers that the Third and/or Fourth Defendants have accessed some or all of, and have misused, its confidential information obtained from the Example Requests. The Claimant relies in particular on the following facts and matters:

(1) The Third Defendant is an investigation agent who has admitted being instructed by the Ruler of the Emirate in which the Claimant's client Mr Al Sadeq is detained, meeting the Ruler regularly (sometimes monthly) and alone. The Third Defendant made such admission in the course of giving evidence on behalf of the Ras Al Khaimah Investment Authority ("**RAKIA**") in High Court proceedings between RAKIA and Mr Farhad Azima (the "**Azima Action**") tried in January-February 2020 before Mr Andrew Lenon QC (sitting as a Deputy Judge of the High Court).

(2) In his judgment in the Azima Action – *Ras Al Khaimah Investment Authority v. Azima* [2020] EWHC 1327 (Ch) (the "**Azima Judgment**") – at paragraph 369 the Judge held that "*Mr Page operates in a world of covert surveillance in which agents acquire confidential information unlawfully and that Mr Page has dealings with such agents.*" He further found that "*it would be a reasonable inference ... that Mr Page has access to agents with the capacity to hack emails.*"

(3) In the Azima Judgment, it was found that the Third Defendant was instructed by the Ruler to arrange covert surveillance monitoring and investigation of persons whom the Ruler viewed as adverse to him and/or RAK and/or RAKIA, and

5

towards whom the Ruler felt hostile, including Mr Azima (see in particular paragraph 377 of the Azima Judgment). The Third Defendant briefed the Ruler on such projects by way of "*Project Updates*", which briefings were also provided to Mr Neil Gerrard of the law firm Dechert LLP (see in particular paragraphs 32, 266 and 273 of the Azima Judgment). Mr Gerrard and Dechert LLP are both defendants in the Al Sadeq Litigation, having carried out work in relation to Mr Al Sadeq on behalf of the Ruler and/or RAK and/or RAKIA in respect of which Mr Al Sadeq claims redress.

(4)  The Claimant believes that the unlawful accessing of its confidential information has been caused or procured by those interested in and/or associated with the defence of the Al Sadeq Litigation. The Azima Judgment shows the way in which the Third Defendant has provided his investigation and monitoring services for or on behalf of persons whom the Claimant avers have an interest in defeating the Al Sadeq claims or those acting for and/or associated with them.

(5)  A public Internet Protocol address used to access the Claimant's confidential information has been geolocated to an address in the vicinity of the premises at 5-8 Sanctuary, London SW1P 3JS which were at material times the address of both the Third and Fourth Defendants.

(6)  The Fourth Defendant is a company providing investigation services of which the Third Defendant is a director.

(7)  The Claimant's lawyers saw the Third Defendant at close quarters at their hotel in Dubai when they were working on the Al Sadeq Litigation. They believe that the Third Defendant and/or his associates were at the time surveilling them.

(8)  According to information provided by the Third Defendant through solicitors instructed by him (Stephenson Harwood) in a letter to the Claimant dated 28 July 2020, Mr Robinson has worked with the Third Defendant on a number of investigations and they have allegedly discussed merging their businesses. It is thereby to be inferred that Mr Page knows of and approves of Mr Robinson's business and methods, and vice versa. Mr Robinson's said business and methods include the wrongful accessing of the Claimant's confidential information, to which Mr Robinson has admitted in his affidavit, as set out above.

6

(9) Mr Robinson contacted the Third Defendant when Mr Robinson was served with an application for *Norwich Pharmacal* relief and an injunction arising out of the Example Requests (claim number QB-2020-002218).

(10) The Third Defendant offered to assist Mr Robinson with funding a lawyer in connection with defending such claim.

(11) Although, in a short affidavit sworn by the Third Defendant on 27 July 2020, the Third and Fourth Defendants appear to deny obtaining confidential information from the Claimant, the Third Defendant has previously failed to give a true account of his discovery of information in High Court litigation, this being the finding in the Azima Judgment at paragraphs 355 to 356.

(12) In paragraph 64 of the Azima Judgment, the Third Defendant was described as "*an unsatisfactory and unreliable witness*" whose "*witness statement was misleading in relation to two significant matters*". The Deputy Judge concluded that "*it would be unsafe to rely on any evidence from [the Third Defendant] that was not corroborated by some other source.*"

(13) It is to be inferred that Mr Robinson contacted the Third Defendant as alleged above because they had a mutual interest in the proceedings concerning the Example Requests since the Third Defendant (and through him, the Fourth Defendant) was/were involved with, party to or otherwise complicit in the wrongdoing comprised within the Example Requests.

15. As providers of investigation services, it is to be assumed that each of the Defendants typically obtain information on the instructions of others, to whom they pass it on, rather than for their own use.

## Breaches of confidence

16. In the premises, the Claimant believes that the Defendants have each committed the wrong of breach of confidence by using its confidential information, in that they have procured access to and/or examined, made, retained and/or supplied copies of it and/or otherwise misused such information. The Claimant does not at present have full knowledge of the precise use of its confidential information, because of the clandestine

7

nature of the conduct, and reserves the right to amend or supplement its claim as further details emerge through disclosure or otherwise.

17.   As a result of such breaches, the Claimant has suffered loss and damage, in particular:

    (1)   loss of confidential information;

    (2)   ongoing costs of investigating the wrongdoing;

    (3)   ongoing costs of pursuing wrongdoers, including the defendants to claim QB-2020-002218.

The Claimant is entitled to and claims damages in respect of the foregoing. Full particulars will be supplied in due course.

18.   Further or alternatively, the Claimant is entitled to and claims an account of the Defendants' profits from the said breaches of confidence, together with all necessary inquiries.

**Unlawful means conspiracy**

19.   As set out in paragraph 6, the First Defendant (and/or the Second Defendant to the extent that the First Defendant was acting on its behalf) agreed with Mr Robinson to commit the breaches of confidence described above. As set out in paragraph 7, Mr Robinson in turn agreed with Mr Gunning, who in turn agreed with Mr Oliver Moon. Loss was thereby caused to the Claimant. In the premises, the First and/or Second Defendants have committed the tort of conspiracy.

20.   The Claimant is entitled to and claims damages from the First and/or Second Defendants in respect of its resultant loss. Full particulars will be supplied in due course.

**Interest**

21.   The Claimant further claims interest pursuant to section 35A of the Senior Courts Act 1981 on such sums as may be awarded to it at such rate(s) and for such period(s) as the Court deems fit.

**Superseded relief**

22. In the Claim Form, the Claimant further sought injunctions and *Norwich Pharmacal* disclosure orders against all Defendants. By consent orders dated 24 July 2020 made by Mrs Justice Tipples, the Defendants each gave undertakings in lieu of such orders. If and to the extent that those undertakings lapse, or prove insufficient, the Claimant maintains its claim for such relief.

AND the Claimant claims:

(1) damages to be assessed;

(2) an account of profits together with all necessary inquiries;

(3) interest pursuant to statute;

(4) costs; and

(5) further or other relief.

TIM LORD QC

GERARD ROTHSCHILD

FREDERICK WILMOT-SMITH

**Statement of truth**

The Claimant believes that the facts stated in these Particulars of Claim are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Signed .............................................................................

Name        BAMBOS TSIATTALOU
.............................................................................

Position    PARTNER
.............................................................................

Dated       2 SEPTEMBER 2020
.............................................................................