THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:21-mc-00006-UA-LPA

*In re* Application of KARAM SALAH AL DIN AWNI AL SADEQ and STOKOE PARTNERSHIP SOLICITORS for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings.

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
*EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

The applicants Karam Salah Al Din Awni Al Sadeq and Stokoe Partnership Solicitors respectfully file this Supplemental Memorandum of Law in support of their *ex parte* application (Dkt. No. 1) (the "Application") for an order under 28 U.S.C. § 1782 to conduct discovery for use in foreign proceedings. In support of the Supplemental Memorandum of Law, Applicants have also filed the Supplemental Declaration of Haralambos Tsiattalou ("Tsiattalou Supp. Decl.").

**PRELIMINARY STATEMENT**

Karam Salah Al Din Awni Al Sadeq ("Mr. Al Sadeq") is currently imprisoned in Ras Al Khaimah ("RAK"), one of the constituent Emirates of the UAE, and has brought suit in England claiming that he was kidnapped and is being unlawfully detained in violation of UAE law (the "Al Sadeq Litigation"[1]). Stokoe Partnership Solicitors

---

[1] References to the Al Sadeq Litigation refer to the claim currently pending in the High Court of Justice of England and Wales, Queen's Bench Division, captioned: *Karam Salah*

("Stokoe") are the solicitors who represent Mr. Al Sadeq in the Al Sadeq Litigation, seeking to recover damages and vindicate his rights. Both Mr. Al Sadeq and Stokoe have been the targets of an unlawful hacking campaign which enlisted Nicholas Del Rosso ("Del Rosso") (an investigator who was engaged by one of the defendants in the Al Sadeq Litigation) and his company Vital Management Services Inc. ("Vital Management"). Stokoe has brought subsequent proceedings in England, described below, to pursue the perpetrators of the hacking scheme, one of which was resolved by consent order (the "Robinson Proceeding"[2]), and one of which is ongoing (the "Grayson Proceeding"). Mr. Al Sadeq and Stokoe allege that the hacking scheme has sought to disrupt Stokoe's representation of Mr. Al Sadeq, obtain privileged information concerning his action and deter the representation that he deserves.

---

*Al Din Awni Al Sadeq v. Dechert, LLP, Neil Gerrard, David Hughes, and Caroline Black*, Claim No. QB-2020-000322 wherein Stokoe is representing Mr. Al Sadeq as the claimant. The Applicants respectfully refer the Court to the Application for a full recital of the facts and conduct underlying the Al Sadeq Litigation.

[2] Paul Robinson ("Robinson") and his associated company, Company Documents Limited, were named defendants in a separate but related proceeding initiated by Stokoe captioned: *Stokoe Partnership Solicitors v. Mr. Paul Robinson, Company Documents Limited, and Mr. Oliver Moon*, Claim No. QB-2020-002218 (the "Robinson Proceeding"). As is more fully set forth in the Application, as a result of a consent order entered into between the parties in the Robinson Proceeding, Robinson submitted an affidavit implicating Grayson as the source of his instructions to obtain confidential information from Stokoe. (Tsiattalou Supp. Decl. ¶ 6). The contents of that affidavit served as the basis of the claims asserted by Stokoe in the Grayson Proceeding.

2

Mr. Al Sadeq and Stokoe (the "Applicants"), filed an *ex parte*[3] application for an order pursuant to 28 U.S.C. § 1782 to conduct discovery with respect to the hacking scheme for use in the case captioned: *Stokoe Partnership Solicitors v. Mr. Patrick Tristram Finucane Grayson, Grayson + Co Limited, Mr. Stuart Robert Page, and Page Corporate Investigations Limited*, Claim No., QB-2020-002492, that is currently pending in the High Court of Justice of England and Wales, Queen's Bench Division (the "Grayson Proceeding"). Stokoe had brought claims against Grayson and the other named defendants for their role in the hacking scheme. Since the filing of the Application, Stokoe has received additional information through a series of disclosures by and further information from the defendants in the Grayson Proceeding which further links Del Rosso and Vital Management to the hacking scheme. Based on that additional information, Mr. Al Sadeq and Stokoe now file this Supplemental Application in support of their request to issue subpoenas to Del Rosso and Vital Management that are limited to gathering additional information concerning their role and that of other participants in the effort to obtain the confidential information of Mr. Al Sadeq and Stokoe.

---

[3] This Court has discretion to grant applications pursuant to Section 1782 on an *ex parte* basis. *See In re Merck & Co.*, 197 F.R.D. 267, 270 (M.D.N.C. 2000); *see In re Qwest Commc'ns Int'l, Inc.*, No. 3:08mc93, 2008 U.S. Dist. LEXIS 115845, at *14 (W.D.N.C. July 10, 2008) ("[T]he issuance of a subpoena based on an *ex parte* application will not prejudice the rights of the subpoenaed party . . . . Issuance of the subpoena is but a first step in this process, and allows for the subpoenaed party to challenge the subpoena under Rule 45, Federal Rules of Civil Procedure, or appeal this Order to the district court upon a showing that its issuance was clearly erroneous or contrary to law.").

The new evidence came to light in March 2021 and is substantial. First, a defendant in the Grayson action, Patrick Tristram Finucane Grayson ("Grayson") provided a formal statement to the court in which he states that at the behest of Del Rosso, he provided instructions to Paul Robinson during the time period of January 30, 2020 and in late March to early April 2020 to (1) investigate how Mr. Al Sadeq was funding the Al Sadeq Litigation and (2) investigate the whereabouts of Haralambos Tsiattalou ("Tsiattalou") (a partner at Stokoe and lead on the Al Sadeq Litigation) while he was in Dubai. Second, there have been disclosures of three documents that link Del Rosso and Vital Management to individuals involved in the hacking scheme. The first is a non-disclosure agreement executed between Vital Management and defendant Grayson dated August 30, 2018 for a term of thirty-six months. The second document is an email Grayson sent to himself containing a chart which depicted the various individuals and entities involved in the Al Sadeq Litigation and Azima litigation, which included Stokoe and the individuals involved in providing support to Stokoe in connection with the Al Sadeq Litigation such as Radha Stirling of Detained in Dubai and Maltin Litigation Support Group (together with Stokoe, "Mr. Al Sadeq's Legal and Support Team"). Third, correspondence has been produced in the Grayson litigation between Stephenson Harwood (the attorneys for two of the defendants in the Grayson Proceeding Stuart Robert Page and Page Corporate Limited) and Allen & Overy (the attorneys to the Ruler and Government of RAK) making reference to various statements made by Page, most significantly, a threat by Page to implicate Neil Gerrard, Jamie Buchanan, Dechert LLP (Neil Gerrard and Dechert LLP are defendants in

4

the Al Sadeq Litigation), Del Rosso, and the "boss" (a reference presumably to the Ruler of RAK) if Allen & Overy's clients did not help Page to get out of the Grayson Proceeding. (Tsiattalou Supp. Decl. ¶ 15, Ex. F). It is noteworthy that in Stephenson Harwood's response that they do not deny that defendant Page made these threats.

The Applicants contend that this newly-discovered evidence provides critical evidence implicating Del Rosso and therefore his company Vital Management to individuals involved in the hacking campaign carried out against Stokoe and others associated with the Al Sadeq Litigation. The Applicants further submit that this newly-discovered evidence supports the arguments set forth in the Application that the information sought from Del Rosso and Vital Management is germane to the claims asserted in the Grayson Proceeding. Specifically, the information that the Applicants seek will aid in identifying the person(s) who instructed Del Rosso to instruct Grayson to gather confidential information about Stokoe, and in turn, will assist them in ascertaining the identity of those who are ultimately responsible for the unlawful information gathering targeting Stokoe, what information they received and who provided instructions to proceed. This information is likewise essential to the Al Sadeq Litigation, as the Applicants contend that the newly discovered evidence shows that there is an undeniable correlation between the initiation of that proceeding and the unlawful accessing of confidential information of Mr. Al Sadeq's Legal and Support Team, and that the aim of this unlawful conduct is to directly interfere with the progress of the Al Sadeq Litigation.

5

As is fully set forth in the Application, and is fully incorporated herein, the Applicants have met the statutory requirements and factors applicable to applications for discovery under 28 U.S.C. § 1782 and have satisfied each of the discretionary factors the Supreme Court articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004). As such, based on the foregoing and as set forth more fully below, Mr. Al Sadeq and Stokoe respectfully submit that their Application for discovery under Section 1782 should be granted.

## FACTUAL BACKGROUND

**Developments in the Grayson Proceeding Support Granting the Application**

Since the filing of the Application, developments in the Grayson Proceeding have shed further light on the role played by defendant Grayson and his company, Grayson + Co Limited, in the efforts to unlawfully obtain confidential information from Stokoe, and more importantly, on Del Rosso's role in that scheme. Grayson's affidavit in the Grayson Proceeding was inconsistent with an affidavit that Robinson submitted in the Robinson Proceeding. Robinson's Affidavit stated that his "instructions to investigate [Stokoe] . . . originated from" Grayson, which Grayson denied. (Tsiattalou Supp. Decl. ¶ 6, Ex. A, ¶ 8).

In the course of the Grayson Proceeding, on March 19, 2021, Grayson provided responses to Stokoe's Requests for Further Information pursuant to the English Civil Procedure Rule 18.1 (the "Responses"[4]). (Tsiattalou Supp. Decl. ¶ 10, Ex. C). The

---

[4] These are responses provided under Part 18 of the Civil Procedure Rules. Part 18 is entitled "Further Information." It provides, in particular, that "The court may at any time

6

Responses further called into question Grayson's credibility and the veracity of statements he made in his affidavit and clearly link Grayson to Del Rosso and Vital Management. Moreover, Stokoe has obtained additional evidence linking Grayson to Del Rosso and Vital Management.

The new evidence included: (1) Part 18 Responses provided by Grayson to Stokoe, wherein Grayson stated that he was interested in Stokoe's financial information and Tsiattalou's whereabouts in Dubai as a result of conversations with Del Rosso, during which Del Rosso inquired as to those matters; (2) a non-disclosure agreement between Vital Management and Grayson dated August 30, 2018 for a term of thirty-six months (Tsiattalou Supp. Decl. ¶11, Ex. D).; (3) a chart Grayson emailed to himself depicting the individuals and entities involved in the Al Sadeq Litigation, including members of Al Sadeq's Legal and Support Team (Tsiattalou Supp. Decl. ¶12, Ex. E).; and (4) correspondence between the attorneys representing the Ruler and Government of RAK and defendant Stuart Page's ("Page") attorneys (Tsiattalou Supp. Decl. ¶ 15, Ex. F).. That correspondence, in relevant part, made reference to statements made by Page, including threats to "implicate" certain individuals, including Patrick Grayson, Del Rosso, Dechert

---

order a party to – (a) clarify any matter which is in dispute in the proceedings; or (b) give additional information in relation to any such matter, whether or not the matter is contained or referred to in a statement of case." Part 18 Responses are filed at court and endorsed with a "statement of truth" with the consequence that a knowingly false Part 18 Response will amount to a contempt of court.

7

and Neil Gerrard if the "boss" (an apparent reference to the Ruler of RAK), could not "get him out of" the Grayson Proceeding. (Tsiattalou Supp. Decl. ¶¶ 9-15, Ex. F, ).

**The Relevancy of the Newly-Discovered Evidence**

As was detailed in the Application, Del Rosso is a private investigator located in Chapel Hill who is the subject of a lawsuit pending in the Middle District captioned *Farhad Azima v. Nicholas Del Rosso and Vital Management Services Inc.*, No. 20-cv-954 (M.D.N.C. Oct. 15, 2020) (the "Del Rosso Lawsuit"). That lawsuit alleges that Del Rosso has worked with the same parties named as defendants in the Al Sadeq Litigation to orchestrate the hacking into a Mr. Farhad Azima's online accounts to gather information to implicate him in a fraud allegedly committed against the sovereign wealth fund of RAK (RAKIA). (Dkt. No. 2, pp. 13-15). In those proceedings, it is alleged that Del Rosso paid more than $1,000,000 to a hack-for-hire firm named CyberRoot Risk Advisory on behalf Dechert LLP, one of the Al Sadeq Defendants, at the time that Mr. Azima and other targets of that Dechert investigation received hundreds of spear-phishing emails intended to harvest their password information. (*See* Dkt. No. 2, pp. 13-15). Tens of thousands of Azima's confidential emails were published online in 2016, shortly after Dechert partner Gerrard, also an Al Sadeq Defendant, had threatened to make Azima "collateral damage" in the war Mr. Al Sadeq's former employer was waging against its former CEO. (*See* Dkt. No. 2, pp. 12-16).

Given the information that the Applicants have set forth regarding Del Rosso's business as a private investigator, who would himself have little or no interest in the

8

information about Stokoe or Mr. Al Sadeq, his prior dealings with the defendants in both the Al Sadeq Litigation and the Grayson Proceeding, his history of conducting investigation work for the Al Sadeq Defendants, and the newly discovered information that directly links him to investigations into Mr. Al Sadeq and Stokoe, the only logical inference one can reach is that Del Rosso was not requesting this information on Mr. Al Sadeq and Stokoe for himself, but rather for a client. Accordingly, the information and documents that the Applicants seek to gather from Del Rosso would provide evidence showing on whose behalf he was instructed to inquire into this information and whether it was Grayson or the other Al Sadeq Litigation defendants. Such evidence is critical to determining the identity of the ultimate perpetrators targeting Stokoe's confidential information, the instructions that were provided, the roles that different entities or individuals played and what information was obtained.

The Applicants submit that the newly-discovered evidence is reliable, as it has been disclosed as part of the ongoing Grayson Proceeding in accordance with discovery procedures in the United Kingdom. The Responses submitted by Grayson, wherein he implicates Del Rosso, were signed by Grayson and contain a Statement of Truth which states:

> I believe that the facts stated in this Further Information of the Defence of the First and Second Defendants are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

9

(Tsiattalou Supp. Decl. ¶ 10, Ex. C, p. 6).

Grayson's implication of Del Rosso is further supported by the non-disclosure agreement executed between Grayson and Del Rosso which spans the time of the allegations contained in the Grayson Proceeding and corresponds to the time period Grayson states Del Rosso made the inquiries. (*See* Tsiattalou Supp. Decl. ¶ 11, Ex. D). As to the chart that Grayson disclosed to Stokoe depicting the various individuals and entities associated with the Al Sadeq Litigation, although there is no direct allegation that this chart was provided by or to Del Rosso, the timing of the creation of the chart on February 24, 2020, its modification on March 11, 2020, and the inclusion of the information that "Maltin [Litigation Support Group] paid [Radha Stirling] for raising profile of [Mr. Al Sadeq]," suggests that Grayson provided the information reflected in the chart to Del Rosso. (Tsiattalou Supp. Decl. ¶ 12-13, Ex. E). It also tends to show that information about Mr. Al Sadeq's Legal and Support Team was in fact obtained by Grayson and, thus, likely shared with Del Rosso. Lastly, the letter sent by the attorneys representing the Ruler and Government of RAK to Page's attorney making reference to various statements made by Page, most significantly, a threat by Page to implicate Neil Gerrard, Patrick Grayson, Dechert LLP, Del Rosso, and the "boss" (a reference presumably to the Ruler of RAK) if their clients did not help Page to get out of the Grayson Proceeding:

> "your client [sc. Mr Stuart Page, the Third Defendant] referred to English High Court proceedings that have been commenced against him by Stokoe Partnership Solicitors and said: "if I have to implicate Nick / Patrick, Decherts, Neil and the boss to get me out of this I will." We understand that your client's

10

> reference to "the boss" is intended to be a reference to the Ruler."

(Tsiattalou Supp. Decl. ¶ 15, Ex. F).

Thus, this evidence further lends credence to Grayson's implication of Del Rosso in the scheme to gather confidential information from Stokoe and others associated with the Al Sadeq Litigation.

The newly-discovered evidence bolsters the need for the discovery the Applicants are seeking from Del Rosso and Vital Management. First, the newly-discovered evidence proves that Del Rosso was involved in gathering confidential information about Stokoe and others associated with the Al Sadeq Litigation, and thus, has information that is relevant to determining who is behind the unlawful information gathering targeting Stokoe. Second, Del Rosso and Vital Management are not parties to the Grayson Proceeding or the Al Sadeq Litigation, and thus, the Applicants can only obtain the requested discovery through the granting of the Application. Without the requested information, Stokoe remains a target for hacking which has, and continues to, interfere with their ability to effectively represent Mr. Al Sadeq, and until those who are involved can be identified and stopped, the progress of the Al Sadeq Litigation, wherein a number of the most serious human rights abuses are alleged, is under threat.

## **ARGUMENT**

The Applicants herein incorporate the arguments set forth in the Application as to the statutory requirements set forth in Section 1782 and the discretionary factors

established by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), and submit that their Application satisfies all of these requirements. For the purposes of the Supplemental Application, the Applicants will discuss below the fourth *Intel* factor which is "whether the request is otherwise unduly intrusive or burdensome", and how the newly-discovered evidence further weighs in favor of granting their Application under this factor. *See Id*. at 265.

The Applicants submit that the requested discovery from Del Rosso and Vital Management is narrowly tailored to include only relevant information and to avoid any undue burden. In evaluating the fourth *Intel* factor, a District Court should be guided by the standards set forth in Federal Rule of Civil Procedure 26(b)(1) ("Rule 26(b)(1)). *See, e.g., German Am. Trade Ass'n v. Waldthausen*, No. 3:13-MC-015-MOC-DCK, 2013 U.S. Dist. LEXIS 180652, at *5-6 (W.D.N.C. Dec. 27, 2013) (applying Federal Rule of Civil Procedure 26(b)(1) to a motion to compel production of documents pursuant to a Section 1782 application). Under Rule 26(b)(1), discovery must be "relevant to any party's claim or defense, proportional to what is at issue in a case; and not excessively burdensome or expensive as compared to the likely benefit of obtaining the discovery being sought." *Synder v. Moag & Co., LLC*, No. ELH-20-2705, 2020 Dist. LEXIS 238661, at *4 (D. Md. Dec. 17, 2020). Where requests are "narrowly tailored to produce information relevant to the issues now pending" in the foreign tribunal, the requests do not impose an undue burden. *Chevron Corp. v. Camp*, No. 17-mc-80067-HRL, 2017 U.S. Dist. LEXIS 83512,

12

at *14 (W.D.N.C. Aug. 30, 2010); *In re Qwest Commc'ns Int'l, Inc.*, No. 3:08mc93, 2008 U.S. Dist. LEXIS 115845, at *13 (W.D.N.C. July 10, 2008).

The newly-discovered evidence implicates Del Rosso and Vital Management in efforts to gather confidential and potentially privileged information from Stokoe, conduct which directly bears on the claims Stokoe has asserted in the Grayson Proceeding. This information is also relevant to the Al Sadeq Litigation, as Stokoe has asserted in the Grayson Proceeding that it understands that the hacking campaign is designed to interfere with the Al Sadeq Litigation. As Stokoe has asserted in the Grayson Proceeding, it is crucial that the identity of those who are orchestrating the hacking of Stokoe's information be identified, not only to protect confidential information about Stokoe, but also to protect confidential information between Stokoe and their client, Mr. Al Sadeq. The protection of that information is crucial to preserving the integrity of the attorney-client relationship and the proceedings in the Al Sadeq Litigation. Mr. Al Sadeq's access to legal representation is especially paramount, as the claims asserted in the Al Sadeq Litigation arise from the denial of Mr. Al Sadeq's right to representation which allowed for his torture and unlawful interrogation which yielded coerced, incriminating statements that were used against him to secure a wrongful conviction. Thus, the requested information and documents are vital to preserving Mr. Al Sadeq's fundamental right to legal representation, and consequently, in preserving the integrity of the Al Sadeq Litigation.

As to the question of whether the requested discovery would be unduly burdensome for Del Rosso and Vital Management to produce, the Applicants submit that it is not. The

requests are narrowly tailored in scope and should be readily identifiable and accessible. The discovery requests are sufficiently specific to allow Del Rosso and Vital Management to conduct targeted searches to identify and produce the documents, materials, and information which are relevant to the claims asserted in the Grayson Proceeding and Al Sadeq Litigation with minimal burden. Accordingly, the newly-discovered information further supports that the Application comports with the Federal Rules of Civil Procedure and this fourth factor weights in favor of granting the Application.

## CONCLUSION

Based on the foregoing and for the reasons set forth in the Application, the Applicants respectfully request that the Court issue an Order granting the Application and authorizing the Applicants to serve the subpoenas attached as Exhibit A and Exhibit B to the Merritt Declaration (Dkt. No. 3) upon Del Rosso and Vital Management.

This 12th day of May, 2021.

/s/ Mark W. Merritt
Mark W. Merritt
N.C. Bar No. 12198
mmerritt@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Suite 1900
Charlotte, North Carolina 28246
Telephone: 704.377.2536
Facsimile: 704.378.4000

*Attorneys for Applicant Karam Salah Al Din Awni Al Sadeq and Stokoe Partnership Solicitors*