THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:21-mc-00006-UA-LPA

*In re* Application of KARAM SALAH AL DIN AWNI AL SADEQ and STOKOE PARTNERSHIP SOLICITORS for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings.

## SUPPLEMENTAL DECLARATION OF HARALAMBOS TSIATTALOU

I, **HARALAMBOS TSIATTALOU**, do hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 the following:

## Introduction

1. I am admitted to practice before the Courts of England and Wales, and I am a partner at the UK-based law firm of Stokoe Partnership Solicitors ("Stokoe"), which is the Claimant in civil proceedings pending in the High Court of Justice of England and Wales, Queen's Bench Division captioned: *Stokoe Partnership Solicitors v. Mr. Patrick Tristram Finucane Grayson, Grayson + Co Limited, Mr. Stuart Robert Page, and Page Corporate Investigations Limited*, Claim No., QB-2020-002492 (the "Grayson Proceeding"). I am also the Solicitor to the applicant Karam Salah Al Din Awni Al Sadeq ("Mr. Al Sadeq") in civil proceedings pending in the High Court of Justice of England and Wales, Queen's Bench Division captioned *Karam Salah Al Din Awni Al Sadeq v. Dechert, LLP, Neil Gerrard, David Hughes, and Caroline Black*, Claim No. QB-2020-000322 (the "Al Sadeq Litigation," and, together with the Grayson Proceeding, the "Foreign

Proceedings"). Stokoe was also the claimant in concluded High Court proceedings captioned: *Stokoe Partnership Solicitors v. Mr. Paul Robinson, Company Documents Limited, and Mr. Oliver Moon*, Claim No. QB-2020-002218 (the "Robinson Proceeding" which, together with the Grayson Proceeding, are referred to as the "Hacking Claims").

2. I respectfully submit this Supplemental Declaration in support of Mr. Al Sadeq's and Stokoe's (collectively, the "Applicants") previously-filed application for an order under 28 U.S.C. § 1782 to conduct discovery for use in the Foreign Proceedings (the "Application"), which was filed in this Court on February 5, 2021 and is currently pending a decision.

3. As was set forth fully in my declaration accompanying the Application (the "Declaration"), after Stokoe began its representation of Mr. Al Sadeq, it and others associated with Mr. Sadeq's legal team became the targets of a sophisticated hacking scheme into their confidential information. After an investigation into the source of the hacking, Stokoe initiated the Hacking Claims against individuals who have engaged in unlawful activities aimed at obtaining confidential information from Stokoe and others associated with the Al Sadeq Litigation, including Detained in Dubai, 4 Stone Buildings, and Maltin Litigation Support Group (collectively, "Mr. Al Sadeq's Legal and Support Team").

4. As is more fully set forth below, since the filing of the Application, there have been disclosures of new evidence in the Grayson Proceeding that link Nicholas Del Rosso ("Del Rosso"), who is a private investigator in Chapel Hill, and his company, Vital

2

Management Services, Inc. ("Vital Management") to the defendants and unlawful hacking that is the subject of the Grayson Proceeding. This evidence, which is further detailed below, reinforces the need for the requested subpoenas to be issued to gain access to the materials, information, and documents that the Applicants seek in their Application from Del Rosso and Vital Management.

**Background to the Grayson Proceeding**

5. Prior to the filing of the Grayson Proceeding, Stokoe filed a Claim in the High Court of Justice, Queen's Bench Division, captioned: *Stokoe Partnership Solicitors v. Mr. Paul Robinson, Company Documents Limited, and Mr. Oliver Moon*, Claim No. QB-2020-002218 (the "Robinson Proceeding"). As is fully detailed in the Declaration, the claims asserted in the Robinson Proceeding were based on information that was obtained as a result of an investigation carried out by Stokoe which revealed the identity of some of the individuals involved in efforts to obtain confidential financial information from Stokoe. One of the individuals identified was Paul Robinson ("Robinson"), who is a private investigator.

6. The Robinson Proceeding was stayed as a result of a consent order entered into between the parties under which Robinson agreed to provide a sworn affidavit identifying any person who directed him to obtain confidential information from Stokoe. In his affidavit (the "Robinson Affidavit"), Robinson identified Patrick Grayson as his source of instructions to obtain confidential information from Stokoe, including Stokoe's banking information. A copy of the Robinson Affidavit is annexed hereto as **Exhibit A**.

(Ex. A, ¶ 8).

7. Due to Robinson's implication of Grayson as his source of instructions to obtain confidential information from Stokoe, Stokoe initiated the Grayson Proceedings seeking, *inter alia*, an injunction to prevent Grayson and his company, Grayson + Co Ltd, from engaging in further unlawful conduct in obtaining Stokoe's privileged and confidential information and to seek the source of Grayson's instructions to access Stokoe's financial information.

8. The parties in the Grayson Proceeding entered into a consent order, pursuant to which Grayson agreed to submit a sworn affidavit identifying any person who instructed him to obtain confidential information from Stokoe. In his affidavit (the "Grayson Affidavit"), Grayson stated, "Nobody requested me to obtain Confidential Information from or pertaining to [Stokoe], directly or indirectly" and "I never asked Mr Robinson to obtain Confidential Information relating to" Stokoe. A copy of the Grayson Affidavit is annexed hereto as **Exhibit B**. (Ex. B, pp. 2-3).

**Recent Developments in the Grayson Proceeding and Newly Developed Evidence**

9. In the course of the Grayson Proceeding, on March 19, 2021, Grayson provided responses to Stokoe's Requests for Further Information pursuant to the English Civil Procedure Rule 18.1 (the "Responses"). The Responses call into question Grayson's credibility and the veracity of statements he made in an affidavit in which he denied obtaining confidential information from Stokoe and denied instructing Robinson to do so on his behalf.

4

10. In his Responses, Grayson stated that: (1) during a meeting with Robinson at a hotel on January 30, 2020, just two days after the filing of the Al Sadeq Litigation, Grayson mentioned to Robinson that he was interested in information "as to how Mr. Al Sadeq was funding the Al Sadeq Litigation" but denied that he asked "Robinson to obtain confidential information about" Stokoe "or to obtain information unlawfully"; (2) Grayson's "interest in how Mr. Al Sadeq might be funding his litigation was prompted by a general question raised with him in a telephone call on or shortly after 28 January 2020 with" Del Rosso; (3) in late March or early April 2020, Grayson spoke to Del Rosso over the phone and Del Rosso "asked Grayson whether it was possible to find out if someone had travelled into and out of Dubai" and that Del Rosso said he was interested in my movements in particular, but denied that he pursued Del Rosso's request any further. A copy of the Responses is annexed hereto as **Exhibit C**. (Ex. C, pp. 2-4). Although Grayson denies any illegality or wrongdoing in the Responses, he does state that his interest in information as to how the Al Sadeq Litigation was funded and my whereabouts in Dubai was as a result of such inquiries by Del Rosso.

11. On March 29, 2021, Grayson provided a copy of a non-disclosure agreement between Vital Management and Grayson that was signed by Del Rosso dated August 30, 2018 which was for the term of thirty-six months (the "Non-Disclosure Agreement"). A copy of the Non-Disclosure Agreement is annexed hereto as **Exhibit D**. The time period of the Non-Disclosure Agreement corresponds to the time period of the conduct underlying the Grayson Proceeding. In other words, the Non-Disclosure Agreement evidences that

5

Grayson was retained by Del Rosso's company Vital Management during the time that Robinson was instructed to obtain Stokoe's financial information and to provide information relating to my movements in and out of Dubai in February 2020.

12. On March 29, 2021, Grayson also disclosed an email that he seems to have sent to himself on March 12, 2020 containing a chart depicting the alleged links between persons and entities involved in the Al Sadeq Litigation (the "Chart"). A copy of the Chart is annexed hereto as **Exhibit E**. The email was sent from finucane03@gmail.com, an email account presumed to belong to Grayson (whose middle name is Finucane), to cloverdock@protonmail.com, an email account that Robinson identified in his affidavit as an email address through which he communicated with Grayson. (Ex. A, ¶ 32).

13. The Chart's metadata suggests that it was created on February 24, 2020 and modified on March 11, 2020. This is significant because in the Robinson Affidavit, Robinson stated that on March 8, 2020 and March 11, 2020, Grayson asked him to obtain transactional information from Maltin Litigation Support Group's bank account. (Ex. A, ¶ 14). The information related in part to payments made to Radha Stirling (the CEO of Detained in Dubai, an organization which seeks to garner public attention to human rights abuses in the UAE, including that of Mr. Al Sadeq). (*See* Ex. A, ¶ 14). The Chart (in the March 11, 2020 version which Stokoe has) states "Maltin paid RS for raising profile of KAS." The modification of the chart therefore seems to coincide with Grayson learning that confidential information from Robinson.

14. The Chart, therefore, shows that Grayson was privy to confidential

information Robinson obtained as to Mr. Al Sadeq's Legal and Support Team, which tends to contradict his assertions in the Grayson Affidavit that he was never instructed to obtain confidential information "from or pertaining to [Stokoe], directly or indirectly" and never instructed Robinson to obtain confidential information from Stokoe. (*See* Ex. B, pp. 2-3).

15. On March 22, 2021, defendant Stuart Page ("Page") disclosed correspondence dated September 16, 2020, from Allen & Overy LLP (a firm representing the Ruler and Government of Ras Al Khaimah) to Stephenson Harwood LLP (the firm representing defendant Page in the Grayson Proceeding), wherein a number of statements purportedly made by defendant Page are referenced, most notable of which is:

> "*your client [sc. Mr Stuart Page, the Third Defendant] referred to English High Court proceedings that have been commenced against him by Stokoe Partnership Solicitors and said: "if I have to implicate Nick / Patrick, Decherts, Neil and the boss to get me out of this I will." We understand that your client's reference to "the boss" is intended to be a reference to the Ruler.*"

A copy of the letter from Allen & Overy LLP to Stephenson Harwood LLP dated September 16, 2020 is annexed hereto as **Exhibit F**. I believe that the references Page makes are as follows: "Nick" is to Nicholas Del Rosso, "Patrick" is to Grayson, "Decherts" is Dechert LLP, "Neil" is to Neil Gerrard, the "boss" is to Ruler of Ras Al Khaimah. As this Court is aware, Dechert LLP and Neil Gerrard are defendants in the Al Sadeq Litigation. The reference to these individuals in this letter, along with Del Rosso, further evidences Del Rosso's involvement in the conduct alleged in the Grayson Proceeding and his potential link to the defendants in the Al Sadeq Litigation. The letter provides that Page

7

made this statement to Jamie Buchanan, who is the former Chief Executive Officer of Ras Al Khaimah Development LLC, which holds and manages assets and liability previously owned by Ras Al Khaimah Investment Authority, and is thus intimately tied to the Al Sadeq Litigation.

16. This newly discovered evidence disclosed by Grayson provides a critical link between the allegations underlying the Grayson Proceeding and Del Rosso by implicating Del Rosso in the efforts to unlawfully obtain Stokoe's confidential information. As such, this evidence proves that Del Rosso is in possession of information and knowledge that is necessary in uncovering who instructed Del Rosso to instruct Grayson to access Stokoe's financial information and gather information about my whereabouts in Dubai. This information is critical to learning who is behind the orders to access Stokoe's confidential information and putting an end to these efforts, which are undoubtedly aimed at interfering with Mr. Al Sadeq's right to representation and to subvert the progress of the Al Sadeq Litigation.

17. For these reasons, the Applicants respectfully request that this Court consider the Supplemental Application and grant the Application in its entirety.

[Signature appears on the following page]

Pursuant to 27 U.S.C. § 1746, I declare under penalty of perjury the foregoing is true and correct.

Dated: May 12, 2021

　　　　　　　　　　　　　　　　　　　　　　Haralambos Tsiattalou