# EXHIBIT C

B E T W E E N : -

**STOKOE PARTNERSHIP SOLICITORS**

**Claimant**

a n d

**(1) MR PATRICK TRISTRAM FINUCANE GRAYSON
(2) GRAYSON + CO LIMITED
(3) MR STUART ROBERT PAGE
(4) PAGE CORPORATE INVESTIGATIONS LIMITED**

**Defendants**

___

**FURTHER INFORMATION OF THE DEFENCE OF THE
FIRST AND SECOND DEFENDANTS**

___

This Further Information of the Defence of the First and Second Defendants is provided pursuant to the Request for Further Information made by the Claimant dated 20 November 2020 and the Order of Master Brown dated 11 December 2020. It supersedes and replaces the previous response to that Request dated 4 December 2020. The following particulars are the best which the First and Second Defendants are at present able to provide.

**Under paragraph 6 of the Defence**

Of: "*Neither the First nor the Second Defendant instructed Mr Paul Robinson for reward either to investigate the Claimant or obtain information* "which was plainly confidential to the Claimant" *as alleged in paragraph 6 either from about January 2020 or at all*."

**And under paragraph 23 of the Defence**

Of: "*It is denied the Claimants are entitled to interest as pleaded in paragraph 21, the relief claimed in paragraph 22 or any relief.*"

1

**Request**

1. Is it the First and Second Defendants' case that they have never given any instructions or requests (directly or indirectly) to Mr Robinson: (a) to investigate the Claimant (including, in every instance, Mr Haralambos Tsiattalou); and/or (b) to obtain information about the Claimant - irrespective of whether such instructions were "*for reward*" or with the purpose of obtaining confidential information?

**Response**

1. No. That is not the First and Second Defendants' case. The First and Second Defendants' case is that:

    (1) They have never given any instructions or requests (directly or indirectly whether for reward or otherwise) to Mr Robinson with the purpose of obtaining any confidential information about the Claimant including the alleged confidential information which is the subject of these proceedings; and

    (2) The First and Second Defendants raised certain general questions with Mr Robinson (as set out in Response 2 below) about (i) the Al Sadeq litigation and (ii) the movements of people in and out of Dubai.

**Request**

2. If the First and/or Second Defendants have ever given any such instructions or requests, please provide full particulars of all such instructions and/or requests.

**Response**

2. (1) When Mr Grayson met Mr Robinson at the Goring Hotel for a general catch up on 30 January 2020, they had a conversation which covered a number of matters. In the course of that conversation, Mr Grayson mentioned to Mr Robinson that he would be interested in any general information as to how Mr Al Sadeq was funding the Al Sadeq litigation which had been the subject

of a press release on 28 January 2020. In that conversation, Mr Grayson did not ask Mr Robinson to obtain confidential information about the Claimant (and does not believe the Claimant was mentioned) or to obtain information unlawfully.

(2) Thereafter, probably in or around the beginning of April 2020, Mr Grayson spoke to Mr Robinson by telephone. As pleaded further in Response 3 below, Mr Grayson had been asked whether it was possible in Dubai to discover whether someone had travelled in and out of Dubai. Mr Grayson understood that in the past this had been possible but was not aware whether such information could still be obtained in Dubai. The gist of the conversation with Mr Robinson was whether it was still possible to find out in Dubai if an individual had entered or left Dubai. In response to this general query, Mr Robinson asked if Mr Grayson was interested in the travels of anyone in particular. Mr Grayson mentioned Mr Tsiattalou, the senior partner of the Claimant, as a potential person of interest. Further to this, Mr Grayson sent Mr Robinson an email (which he no longer has) which contained information obtained from Companies House about Mr Tsiattalou (who was a company director) in particular his date of birth and alternative spellings of his name. Mr Grayson did not provide any instruction to Mr Robinson to investigate Mr Tsiattalou or his movements; nor did he ask Mr Robinson to obtain confidential information about the Claimant or to obtain information unlawfully. Mr Robinson never confirmed to Mr Grayson whether it was still possible to find out in Dubai if an individual had entered or left Dubai. Mr Grayson never asked Mr Robinson to provide information about when Mr Tsiattalou entered or left Dubai. Mr Robinson never provided Mr Grayson with any information about when Mr Tsiattalou entered or left Dubai.

3

**Request**

3. If the First and/or Second Defendants have ever given any such instructions or requests, please explain the First and/or Second Defendants' purpose in making such instructions or requests. Please confirm, without limitation, whether the purpose included compliance with the requests or instructions of a third party (and, if so, the identity of that third party).

**Response**

3. (1) The First Defendant's interest in how Mr Al Sadeq might be funding his litigation was prompted by a general question raised with him in a telephone call on or shortly after 28 January 2020 with Mr Nicholas del Rosso of Vital Management Services ("**Vital**"). The Second Defendant had a general consulting arrangement with Vital (which was not contained in any written agreement) to provide general business intelligence services and advice. In that conversation, Mr del Rosso did not mention either the Claimant or Mr Tsiattalou.

   (2) Mr del Rosso and Mr Grayson had a telephone conversation probably in about late March/early April 2020. The gist of that conversation (so far as relevant to this response) was that Mr del Rosso asked Mr Grayson whether it was possible to find out if someone had travelled into and out of Dubai. In response to this query, Mr Grayson said he understood it had been possible in the past but he did not know the current position and would make enquiries. Mr Grayson asked whether Mr del Rosso was potentially interested in the movements of anyone in particular. Mr del Rosso named Mr Tsiattalou and said he was the senior partner at the Claimant. Shortly after and as a result of that request, Mr Grayson had the conversation with Mr Robinson in or around the beginning of April 2020 the gist of which is set out in Response 2 above. The query was not raised again by Mr del Rosso and Mr Grayson did not pursue it other than as set out in Response 2.

4

**Request**

4. Is it the First and Second Defendants' case that they were never (directly or indirectly) asked by a third party to obtain information (confidential or otherwise) about the Claimant?

**Response**

4. Yes, save to the extent set out in Responses 1-3 above.

**Request**

5. If the answer to the previous question is 'no': who asked the First and/or Second Defendants to obtain information about the Claimant, and when and how were such requests made?

**Response**

5. See Response 3 above.

**Under paragraphs 14 and 18 of the Defence**

Of: The whole of each paragraph.

**Request**

6. Is it the First and Second Defendants' case that, prior to the issue of these proceedings, they received no information (directly or indirectly, confidential or otherwise) about the Claimant? If the answer is 'no', what information was received?

**Response**

6. No. The First and Second Defendants' case is that prior to the issue of these proceedings, Mr Grayson did learn that the Claimant acted for Mr Al Sadeq, that Mr Tsiattalou was the senior partner at the Claimant, that he was a company director,

5

that his name is spelled in more than one way at Companies House and his date of birth (which can also be found on the Companies House website). All of that information about Mr Tsiattalou and the Claimant was in the public domain and was not confidential.

**Request**

7. Is it the First and Second Defendants' case that, prior to the issue of these proceedings, no information (confidential or otherwise) about the Claimant was accessed, examined, copied, retained, supplied to a third party and/or otherwise misused by the First and/or Second Defendant.

**Response**

7. Yes, save to the limited (and lawful) extent set out in Response 6 above.

**JEFF CHAPMAN QC**
**SAMUEL RITCHIE**

Dated this 19th day of March 2021

**Statement of Truth**

I believe that the facts stated in this Further Information of the Defence of the First and Second Defendants are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Full name: Patrick Tristram Finucane Grayson

Signed...................................  Position of Office Held:
Director of Second Defendant

First Defendant and on behalf of the Second Defendant
Dated: 19 March 2021