# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CASE NO. 21-mc-0006

|  |  |
|---|---|
| *In re* Application of KARAM SALAH AL DIN AWNI AL SADEQ and STOKOE PARTNERSHIP SOLICITORS for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO QUASH OR FOR A PROTECTIVE ORDER

# Table of Contents

INTRODUCTION ................................................................ 1

QUESTIONS PRESENTED ................................................. 3

BACKGROUND ................................................................ 4

    A.    The Foreign Proceedings ...................................... 4

    B.    The Application ...................................................... 5

    C.    The Order ................................................................ 7

ARGUMENT ...................................................................... 8

I.    The Requested Discovery Is Not "For Use" in or Relevant to the Foreign Proceedings and Is Unduly Burdensome. ................... 8

    A.    Section 1782 Standard. .......................................... 8

    B.    The Requested Discovery Is Not "For Use" Abroad Because the Foreign Claims Do Not Involve Hacking. .............. 11

    C.    Azima's Claims and Page's Comments Do Not Support Granting Discovery. .............................................. 16

    D.    Applicants' Claims of a Nefarious Nexus Between Movants and Their Defendants Are Too Vague. ........................ 19

II.    The Subpoenas Should Be Narrowed. ....................................... 21

    A.    The Depositions Should Be Quashed. ............................. 21

    B.    The Document Requests' Period and Scope Should Be Limited. ............................................................... 23

III.    The Application Required Decision by an Article III Judge. .............. 24

IV.    Applicants Improperly Joined Their Unrelated Applications. ........... 26

CONCLUSION ................................................................ 27

i

# INTRODUCTION

Applicant Karam Al Sadeq was convicted of fraud and embezzlement in 2015 by a United Arab Emirates court and is serving a prison sentence there. Last year, he sued the global law firm Dechert LLP and several individuals in England over the conditions of his confinement and alleged judicial process violations. Applicant Stokoe Partnership Solicitors is his English law firm. It separately brought an English lawsuit against various defendants asserting claims that Al Sadeq's legal team was subjected to physical surveillance in Dubai and that someone gained improper access to its bank records in 2020.

Movants Nicholas Del Rosso, a North Carolina resident, and his North Carolina company Vital Management Services, Inc. ("VMS") are not parties to either case, are not alleged to have been involved in Al Sadeq's criminal process, and are not alleged to have been involved in the alleged 2020 surveillance or to have accessed Stokoe's bank records. The Section 1782 Application here seeks documents from Movants showing their communications between 2015 and 2017 with an Indian IT company called CyberRoot Risk Advisory Private Limited ("CyberRoot"). Like Movants, CyberRoot also is not a party to the foreign litigations and is not alleged to have been involved in the underlying facts,

1

and indeed it is not accused of any wrongdoing in those cases.

With no factual link between the allegations in their cases and Movants (or CyberRoot), Applicants spin a theory: Al Sadeq is a fraudster whose lawyers were subject to hacking, they say, and the likely instigator is the fraud victim, the Investment Authority of Ras al Khaimah ("RAKIA"); Movants have been allegedly connected with hacking in a separate lawsuit by a different fraudster who stole from RAKIA in a separate fraud; so they should get discovery related to that other alleged incident because it could shed some light on their own hacking incident. But the premise is false, because their tort claims do not in fact seek recovery for hacking (though they lard their most recent complaint with legally extraneous references to hacking attempts). And the link is false, both because there is no non-hearsay evidence in the other litigation that Movants have anything to do with hacking; and because the alleged hacking of the other fraudster has nothing to do with Al Sadeq and Stokoe, so the material sought about Movants from the period 2015 to 2017 has no bearing on the hacking claims that Applicants (falsely) say they are asserting. This is a fishing expedition, and this Court should not allow it. At a minimum, the Court should protect Movants from the worst of the burdens by declining to compel depositions.

Separately, the subpoenas should be quashed as a matter of law because they were issued without authority and the Applicants improperly joined their applications. As the Fourth Circuit has held, the Constitution, statutory law and the Federal Rules of Civil Procedure require stand-alone proceedings like the Section 1782 proceedings here to be adjudicated by an Article III judge. Further, Applicants improperly joined unrelated applications together in violation of Rule 20. The subpoenas are invalid, and must be quashed.

## QUESTIONS PRESENTED

1. The first foreign litigation here complains of judicial process violations in connection with one Applicant's criminal trial in the U.A.E., and the second one complains of attempts in 2020 to interfere with that Applicant's lawyers in connection with the first litigation. Movants are not accused of being involved in the alleged torts at issue in either case, and the Application does not seek discovery related to those torts and instead seeks discovery into Movants' dealings with an Indian company that is not identified in and has no asserted link to either litigation. Should the subpoenas be quashed in whole or in part because Applicant has not shown that the discovery sought is "for use" in the foreign proceedings or that it is relevant and proportionate to the case's needs?

2. Under the Constitution, federal law, and the Federal Rules, the final disposition of a federal proceeding must be decided by an Article III judge. The Fourth Circuit has thus held that only an Article III judge may, *e.g.*, quash an administrative subpoena. The order granting the Application was not issued by an Article III judge. Must the subpoenas therefore be quashed?

3. The Federal Rules permit plaintiffs to join their claims only if they arise from a common occurrence, but Applicants filed a joint application arising from their separate lawsuits, which in turn assert different claims arising from different facts against different defendants. Should their applications be severed and considered separately?

3

## BACKGROUND

### A.     The Foreign Proceedings

Applicant Al Sadeq is a former investment officer for the Emirate of Ras al Khaimah ("RAK") who is presently incarcerated in RAK for committing fraud and embezzlement while in public office.  Dkt. 4 ("Tsiattalou Decl.") Ex. A ¶¶ 1, 35, 175.  He is pursuing a claim in England (the "Al Sadeq Proceeding") against the Dechert law firm and three current or former partners.  Tsiattalou Decl. ¶ 8; *see generally id.* Ex. A.  His allegations there complain about his conditions of confinement and alleged judicial process violations during his prosecution and conviction.  Tsiattalou Decl. ¶¶ 4-5 & Ex. A ¶¶ 8-10.  Movants, a North Carolina investigative services firm and its principal, are not parties to that lawsuit, are not mentioned in the operative pleading, and are not alleged to have been involved in his prosecution or conviction or in any of the conduct at issue in Al Sadeq's claims.  *See* Neuman Decl. Ex. 1.

Applicant Stokoe Partnership Solicitors is Al Sadeq's English law firm. Stokoe filed its own lawsuit in England in July 2020 (the "Stokoe Proceeding")

4

accusing various of RAK's alleged agents of trying to interfere with its representation of Al Sadeq.[1] In its operative particulars of claim, Stokoe alleged that its lawyers were physically surveilled on one occasion in Dubai and that someone gained improper access to its bank records, all in 2020. Tsiattalou Decl. ¶¶ 10-11, 34, 45; Dkt. 2 ("Mem.") at 12; Neuman Decl. Ex. 2 ¶¶ 7, 9, 14(7). Stokoe did not allege that it was hacked, and Movants were not alleged to have hacked Stokoe.

## B. The Application

Applicants commenced these § 1782 proceedings seeking discovery from Movants, putatively in connection with these two lawsuits. In support of their Application, however, they submitted exhibits primarily concerned with two unrelated litigations—one in England, one in this District—being pursued by an unrelated third party named Farhad Azima.[2] The proposed subpoenas

---

[1] Applicants did not provide this Court with the operative particulars of claim (the equivalent of a U.S. complaint) in either underlying proceeding. *See* Neuman Decl. Exs. 1 & 2.

[2] Azima is a former business partner of RAKIA's who was sued by RAKIA in England and was found liable for misappropriation of funds, bribery, and other bad faith conduct, and ordered to pay $8.3 million to RAKIA. Tsiattalou Decl. Ex. B ¶¶ 159, 181, 189, 249-50. He has counterclaimed against RAKIA, asserting a theory that RAKIA was responsible for hacking into his email account in 2015 or 2016. Tsiattalou Decl. ¶ 22; Tsiattalou Decl. Ex. B ¶ 57. Movant Del Rosso, a U.S. resident, was a witness in the Azima trial, and Azima has filed an action against Del Rosso in this District accusing him (wrongly) of orchestrating the hack. The cases of these two different adjudged fraudsters

5

(since served) demand deposition testimony and the following documents in this suit:

- "All documents evidencing payments made to CyberRoot, including . . . bank statements and invoices";

- "Copies of all invoices and account statements provided to [Del Rosso or VMS] by CyberRoot";

- "All documents, including communications, referring or relating to the payments made by [Del Rosso or VMS] to CyberRoot";

- "All documents sufficient to identify the source of funds used to make payments to CyberRoot";

- "All documents . . . which refer, relate to, evidence, or memorialize any meetings, discussions, or communications with CyberRoot"; and

- "All documents, including communications, which evidence the work product produced by CyberRoot on [Del Rosso or VMS's] behalf."

Dkt. Nos. 3-1 & 3-2 ("Subpoenas") at 7-8. The subpoenas specify a date range of "July 1, 2015 through September 30, 2017," *id.* at 7, despite the fact that the alleged improper access to Stokoe's confidential banking information took place three years later, in 2020.[3]

---

have no connection with one another, and Azima's suit is not connected to this § 1782 Application. The fraud scheme for which Al Sadeq was convicted was a separate fraud scheme from the one for which Azima was found liable by an English court.

[3] The subpoenas' instructions state a period running "to the date of [the] deposition," but this is then shortened to September 30, 2017 by operation of their eighth definition. Subpoenas at 5, 7.

6

Applicants filed supplemental materials on May 12, 2021. Dkt. 5 ("Supp. Mem.") at 8-14. Most of the material has no facial bearing on Movants, but one defendant submitted an affidavit in which he "denied obtaining confidential information from Stokoe and denied instructing [another defendant] to do so on his behalf," and suggested that in March or April 2020, Movant Del Rosso had asked one of the defendants whether it was possible to know when Al Sadeq's lawyer entered and exited Dubai. Dkt. 6 ("Tsiattalou Supp. Decl.") ¶¶ 9-10; Tsiattalou Supp. Decl. Ex. C at 2-4.

## C. The Order

On October 18, 2021, this Court granted the Application on an *ex parte* basis. Dkt. 7 ("Order"). The Court observed that Al Sadeq and Stokoe qualify as "interested parties" and that Movants are "found" in this District. *Id.* at 35. It allowed the discovery on the basis that it was "for use" in the foreign proceedings. *Id.* at 35-36.

The Court understood, based on the Application's characterization of the foreign litigations, that Stokoe was pursuing a claim for "hacking," and perceived a similarity between Stokoe's purported hacking claim and the hacking claim that Farhad Azima has asserted. *Id.* at 37, 39. Specifically, the Court reasoned that "the timing and method by which RAKIA obtained Azima's confidential emails, which allegedly implicated Al Sadeq in the asserted fraud,

7

appear[ed] relevant to Al Sadeq's contention that RAKIA's claims stem from political motives" and that "the methods employed in RAK's . . . investigation . . . relate to both Al Sadeq's claims . . . and to Stokoe's Hacking Claims" because Stuart Page (a defendant in the Stokoe Proceeding) "has suggested that Del Rosso, Gerrard, and the Ruler bear responsibility for at least some of the conduct at issue in the" Stokoe Proceeding. *Id.* at 39. The Court observed that under Fourth Circuit precedent, its *ex parte* order was "without prejudice to Del Rosso and Vital Management later contesting the requested discovery." *Id.* at 41 n.25 (internal quotation marks and brackets omitted).

Movants were served on October 20, 2021, and now ask the Court to quash the subpoenas.

## ARGUMENT

## I. The Requested Discovery Is Not "For Use" in or Relevant to the Foreign Proceedings and Is Unduly Burdensome.

### A. Section 1782 Standard.

Applicants should not be allowed to compel the discovery they seek here because it is speculative and not relevant to either of the underlying foreign litigations. It therefore does not satisfy either Section 1782's "for use" requirement or *Intel*'s burden analysis.

8

A Section 1782 application may be granted only if the discovery sought is "for use" in a qualifying foreign proceeding.[4] To meet that requirement, an Applicant must "explain or allow a district court to infer how the discovery sought will increase the applicant's chances of success in the foreign proceeding." *In re Diligence Glob. Bus. Intelligence S.A.*, 2021 WL 2156278, at *2 (S.D.N.Y. May 27, 2021) (quotations and alterations omitted). An applicant's mere "belie[f]" that "the evidence sought . . . will support [its] claims" is not sufficient. *In Re Postalis*, 2018 WL 6725406, at *4 (S.D.N.Y. Dec. 20, 2018). This "guard[s] against" using Section 1782 to conduct a "fishing expedition." *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014).

Further, where Section 1782's statutory minima are met, a court must decide whether to allow the requested discovery as a matter of discretion. That inquiry is governed by *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), and includes asking whether "the documents or testimony sought are 'unduly intrusive or burdensome.'" *See In Re Green Dev. Corp. S.A. de C.V.*, 2015 WL 10319091, at *3 (D. Md. Oct. 1, 2015) (citing *Intel*, 542

---

[4] The minimal requirements are that the applicant must be an "interested person;" the discovery must be "for use" in a foreign proceeding; and the discovery target must be "found" in the district where the application is filed. 28 U.S.C. § 1782.

9

U.S. at 265).[5]  Overbreadth and burden are determined by applying the famil-
iar standards of Rule 26, *see id.* at *5, which permits only discovery that is
"proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1).  The discovery
must be important enough to the claims or defenses at issue in the underlying
foreign proceeding that the burden and expense of discovery are justified.  A
request that is "only marginally relevant" should be denied.  *In Re Diligence
Glob. Bus. Intelligence S.A.*, 2021 WL 2156278, at *2 (citation omitted).

Here, Applicants seek communications from 2015 to 2017 between Mo-
vants and third-party CyberRoot.  CyberRoot, however, has no connection to
the foreign litigations, and is not alleged to have been involved in any miscon-
duct against Applicants; Movants' names have been raised tangentially and in
a self-serving way in those litigations but there is zero evidence, and no alle-
gation, that they were involved in the torts at issue; and the Movants' relation-
ship with CyberRoot in India in the period from 2015 to 2017 has anyway noth-
ing to do with Al Sadeq's (heavily disputed) allegations of official misconduct
in connection with his detention and trial in the U.A.E., nor anything to do

_____

[5] *Intel* also requires consideration of, *inter alia*, whether the foreign court
is receptive to federal-court assistance and whether the applicant is trying to
circumvent policies of the foreign court.  *See Intel*, 542 U.S. at 264-65.

with his lawyers' claims that in 2020 they were subjected to physical surveillance during a client visit to the U.A.E. and that someone improperly accessed their banking information.

## B. The Requested Discovery Is Not "For Use" Abroad Because the Foreign Claims Do Not Involve Hacking.

Applicants do not claim otherwise. Instead, they explain that the requested discovery is relevant because Movants and CyberRoot are alleged to have hacked an unrelated third party named Farhad Azima in 2015 or 2016, and so Movants' documents and testimony "would aid the Applicants in determining the identity of those behind the hacking campaign targeting Mr. Al Sadeq's Legal and Support Team" in 2020. Mem. 18. That theory is flawed for several reasons.

First, the underlying foreign litigations are not about hacking. In the Al Sadeq Proceeding, Al Sadeq complains that he was mistreated in connection with his criminal arrest, detention, and prosecution. Tsiattalou Decl. ¶ 5; Order at 8-9 (quoting Tsiattalou Decl. ¶ 5). He does not allege that he was hacked in connection with those events (or otherwise). *See* Tsiattalou Decl. ¶ 5. The only theory on which Al Sadeq seeks discovery from Movants is the (unfounded and heavily disputed) allegation that Movants had something to do with gaining unauthorized access to the email account of unrelated third-party Farhad Azima in an effort to uncover proof that he (Azima) had committed fraud. Dkt.

11

1 at 2-4. But discovery related to that alleged incident (which is subject to separate proceedings in England), completely separate in time, space, and subject matter, and brought by a different litigant (Azima), has no bearing on the truth or falsity of Al Sadeq's claim of official misconduct in his criminal proceedings. Al Sadeq does not claim anyone looked at his emails.

The Stokoe Proceeding is also not about hacking. In that case, Al Sadeq's lawyers allege that they were subjected to physical surveillance when they visited Al Sadeq in the U.A.E., and that someone obtained unauthorized access to the firm's banking information. *See* Neuman Decl. Ex. 2 ¶¶ 7, 9, 12, 14(7). The attorney declaration supporting the Application characterizes this latter incident as "hacking," Tsiattalou Decl. ¶ 13, but then clarifies that in fact it did not involve hacking: instead, Stokoe voluntarily provided third parties with access to its own bank account documents "in a format which allowed covert tracking, to identify the recipients of th[e] documents," *id.* ¶¶ 33-35; *see also* Tsiattalou Decl. Ex. H at 14. The concern, that is, was that someone with authorized access to the information was improperly sharing it with others. Indeed, the allegation in the Stokoe Proceeding is that the confidential material was accessed in the UK, by one of the defendants in those proceedings. Neuman Decl. Ex. 2 ¶ 12.

In granting the petition on an *ex parte* basis, the Court accepted Applicants' characterizations of their claims as being based on hacking. Dkt. 1 at 3-5; Mem. at 3, 8, 10-12, 16-18, 20, 25; Dkt. 3 ¶ 4; Tsiattalou Decl. ¶¶ 1, 3, 13-14, 16, 44-45, 48; Supp. Mem. at 2-5, 11, 13; *see* Order at 20-21 (citing Tsiattalou Decl. ¶¶ 13–16), 39. But Applicants' references in *this* Court to a "hacking campaign," Tsiattalou Decl. ¶¶ 3, 48; "instructions … [to] hack[] Stokoe's bank accounts, including its client account," *id.* ¶ 13; to an "attempted hacking," *id.* ¶ 16; and to "hacking attempts" on Al Sadeq's legal and support team, *id.* ¶ 44, appear nowhere in Stokoe's *English* pleading. *See* Neuman Decl. Ex. 2. Their description of a "cyber attack" on the IT systems of Stokoe and "ten other law firms" on November 5, 2020, Tsiattalou Decl. ¶ 45, on which the Court relied, Order at 28, 39, does not appear at all in Stokoe's statement of the particulars of its claim. The repetitive insistence that hacking is involved in the English litigation is a mischaracterization intended to spin the facts in the English litigation into a basis for granting discovery here. The Court relied on these mischaracterizations and exaggerations in granting the Application, but because the underlying litigations do not in fact materially involve hacking, the discovery requested is not warranted.[6]

---

[6] The Court granted the Application in part in light of the fact that no other party had appeared to contest it, Order at 34-35, but that should not have

The one allegation related to hacking that genuinely is raised in the foreign litigation is Stokoe's speculation that when it received a certain series of suspicious emails, that was an attempted phishing campaign, and its further speculation that those phishing attempts were prompted by Stokoe's representation of Al Sadeq. Neuman Decl. Ex. 2 ¶ 11A. But leaving their speculative nature aside, those emails are not tied to any claim of tort. The purported phishing campaign is not alleged to have been successful in breaching Stokoe's systems or to have caused any harm. *Id.* In any event there is no basis for connecting those emails in 2020 to Movants; and no reason is offered to suspect that the discovery sought here into Movants' dealings with an unrelated third party between 2015 and 2017 would have any bearing on those 2020 emails.

This is precisely the reason that the Northern District of California Court denied an application like this one that was brought by these same Applicants related to the same foreign proceedings. There, as here, Al Sadeq and Stokoe cited allegations of hacking in the same foreign litigations and sought discovery from a number of technology service providers, claiming that they

---

affected the disposition. Courts at times require a § 1782 applicant to invite responses from potentially affected parties, *see, e.g.*, *In re Al Sadeq*, 2021 WL 2828810, at *1 (N.D. Cal. Mar. 30, 2021), but absent such an invitation, courts regularly resolve such applications on an *ex parte* basis subject to *de novo* consideration once a subpoena is served.

sought to learn the identity of the supposed attackers. The Court denied the *ex parte* application because the requested discovery into the identity of individuals that supposedly sent phishing emails had nothing to do with either foreign proceeding. *See In re Al Sadeq*, 2021 WL 2828810, at *3. It concluded that while the applicants had "describe[d] in detail the ways in which they believe they are being surveilled and hacking attempts against them," ultimately they did "not establish a link between the fact that someone might be watching or attempting to hack them and the particular claims at issue in the foreign proceedings." *Id.* The same is true here.

In fact, the disconnect here is greater because Applicants request discovery into events from 2015 to 2017, when the facts at issue in the Stokoe Proceeding—including the allegations of phishing attempts—are all from 2020. Indeed, the Application demonstrates that the 2015 to 2017 period sought here is not relevant: Stokoe was "first retained" for the Al Sadeq Proceeding in October 2019 and the claim form in the Al Sadeq Proceeding was issued on January 28, 2020. Tsiattalou Decl. ¶¶ 7-8. There can be no justification for Stokoe seeking discovery for a date range that pre-dates its engagement by Al Sadeq.

Similar disconnects between the time period at issue in a litigation, and the time period sought through Section 1782 discovery, have led other courts to deny Section 1782 applications. *See, e.g.*, *In re Qualcomm Inc.*, 162 F. Supp.

3d 1029, 1044 (N.D. Cal. 2016) (denying application because requests were "not narrowly tailored temporally, geographically or in their subject matter"). The same result should follow here.

## C. Azima's Claims and Page's Comments Do Not Support Granting Discovery.

Second, the Court's conclusion that Azima's claims are related to Al Sadeq's and Stokoe's claims is not supported by the evidence filed in support of the Application. The Court reasoned that "the timing and method by which RAKIA obtained Azima's confidential emails, which allegedly implicated Al Sadeq in the asserted fraud, appear[ed] relevant to Al Sadeq's contention that RAKIA's claims stem from political motives." Order at 39. But neither the Application nor the documents submitted in support assert that Azima's purportedly confidential emails allegedly implicated Al Sadeq in the frauds at issue in the Al Sadeq Proceeding. *See, e.g.*, Tsiattalou Decl. ¶ 24. Azima's fraud and Azima's emails are irrelevant to Al Sadeq's frauds and imprisonment. Indeed, Applicants do not assert that Azima's emails were used in the prosecution of Al Sadeq.

Applicants' reliance on the English appellate court's description of evidence submitted in unconnected proceedings in Azima's appeal was improper, and that material does not and cannot support granting the discovery that Applicants seek. *Contra* Order at 17-19. The appellate court's description of that

16

declaration is not evidence with respect to Movants. Movants are not parties to that litigation, and the appellate court's (threshold) decision has zero res judicata or collateral estoppel effect as to them. The declaration itself is not before the Court, because Applicants did not submit it. If that declaration had been submitted in connection with a U.S. proceeding (let alone in a U.S. appeal), it would have been rejected because it is the self-serving hearsay statement of a paid investigator for Azima reporting the double-hearsay account of an anonymous source accusing Movants of wrongdoing.

Movant Del Rosso stands by his sworn statement that he had no involvement in the alleged hacking, but that question is not for Applicants to raise or for this Court to explore or decide. Azima has sued Movants in a separate action pending in this district, where these facts are in dispute. Indeed, Azima has twice attempted to initiate discovery in that action seeking these exact same records (which are not relevant to Applicants' suits), but Judge Webster has twice rejected his requests for that discovery as premature while Movants' motion to dismiss is pending, and his third motion seeking again to get these same records is pending disposition. *See Azima v. Del Rosso, et al.*, 1:20-cv-00954-UA-JLW (M.D.N.C.), Dkt. 30 (order denying Azima's motion seeking leave to commence discovery); Dkt. 54 (order denying Azima's motion for leave

17

to file supplemental materials); Dkt. 61 (Azima's motion for leave to file supplemental information and to commence discovery). Whether Azima is entitled to these materials remains to be decided, but he at least *alleges* that he was affected by Movants' work with CyberRoot from 2015 to 2017. Applicants make no such allegation, have no standing to complain about or explore Movants' work with CyberRoot during that period, and should not be allowed discovery into that work.

Applicants are also wrong to contend that Stuart Page's purported comments threatening to "implicate" Del Rosso support the requested discovery. Page is reported in attorney correspondence to have self-servingly "suggested that Del Rosso, Gerrard, and the Ruler bear responsibility for at least some of the conduct at issue in the" Stokoe Proceeding. Order at 39. But that is not genuine evidence of Movants' involvement in the Stokoe facts. The multiple-hearsay, fact-free account reflected in the attorney letter that Applicants submit is on its face a conclusory threat by Page to falsely "implicate" others, not testimony or evidence that Movants were indeed involved. Tsiattalou Supp. Decl. Ex. F at 1.

And even if that passage referring to purported comments by Page did credibly suggest that Movants had some involvement in the 2020 conduct that

18

Stokoe complains of, it still would not support the 2015-to-2017 discovery Applicants seek here, because Applicants do not seek discovery related to that 2020 conduct. They seek historical information from years ago involving Movants' dealings with CyberRoot. Neither Stuart Page's putative comments, nor any other evidence in any other proceeding, links CyberRoot to any 2020 conduct having to do with Stokoe. So Stuart Page's reported threats do nothing to suggest that the discovery actually sought here could potentially be relevant to the conduct of which Stokoe complains. Without a link between Page's reported comment and the discovery that is sought, that comment does not support the Application. *See In Re Diligence Glob. Bus. Intelligence S.A.*, 2021 WL 2156278, at *2 (attenuated link to discovery is not sufficient). The discovery should not be granted on the basis of Page's purported comment.

### D. Applicants' Claims of a Nefarious Nexus Between Movants and Their Defendants Are Too Vague.

Third, Applicants' remaining relevance theories also fail. Applicants argue that Movants' and CyberRoot's "prior dealings with defendants" in foreign litigation is sufficient to justify discovery. Supp. Mem. at 9. But that vague claim does nothing to show an entitlement to the particular material requested here. A similar argument was rejected in *In Re Green Development Corporation S.A. de C.V.*, where a court in this Circuit denied Section 1782 discovery premised on allegations of a "nefarious nexus" between the discovery target

19

and the defendants in the foreign litigation. 2015 WL 10319091, at *5. The court held that those allegations alone were not sufficient to find "any relevance" to the foreign litigation. There, similar to here, the court also noted the "irrelevan[ce]" of the requested discovery to the issues in dispute in the foreign litigation, as evidenced by the fact that applicants sought discovery about events "*four to five* years prior to the allegedly wrongful" conduct. *Id.*

As in *Green*, that Movants and some of Applicants' defendants have a relationship does not entitle Applicants to discovery from them on topics unrelated to—and "*four to five* years prior to"—the tort claims that Applicants are pursuing. *See id.* The case is even stronger here because, unlike in *Green*, the discovery requested is about Movants' dealings with yet another unrelated third party, and not even about Movants' relationship with Applicants' defendants.

Applicants also try to tie Del Rosso to their case by hypothesizing that he was involved in surveilling Stokoe lawyers in Dubai in 2020. They point to a third party's hearsay statement that Del Rosso asked if it would be possible to find out whether Al Sadeq's lawyer had flown in or out of Dubai. Supp. Mem. at 4; Tsiattalou Supp. Decl. Ex. C at 4.[7] But Applicants do not seek discovery

---

[7] Applicants self-servingly omit the remainder of Grayson's statement, which states that "del Rosso did not mention either [Stokoe] or Mr Tsiattalou"

20

about this incident: they seek no documents from 2020, and none about this statement or the alleged surveillance. Nor is there any suggestion anywhere that CyberRoot was connected to that alleged surveillance. So there is no tie made between the actual allegations of Del Rosso's involvement in Stokoe's claim of tort on the one hand, and the evidence that Stokoe seeks from Del Rosso on the other.

In sum, the Application does not show that the historical information sought is relevant to the foreign proceedings, and the Court should not follow Applicants' "leaps of logic" in hypothesizing some such relevance. *Att'y Gen. of Brit. Virgin Islands v. Hyman*, 2021 WL 706504, at *4 (D.D.C. Feb. 23, 2021) (discussing undue burden). The subpoenas should be quashed.

## II.   The Subpoenas Should Be Narrowed.

### A.      The Depositions Should Be Quashed.

For those reasons, the subpoenas should be quashed in their entirety; and at a minimum, they should be limited.

No deposition testimony should be allowed. For the reasons above, Applicants have not established a basis for discovery, so any burden should be

---

when he allegedly inquired about how Al Sadeq might be funding his litigation and that Del Rosso "did not pursue" further any inquiry regarding Tsiattalou's travel movements. Tsiattalou Supp. Decl. Ex. C at 4.

minimized.  Under Rule 26, courts give a subpoena "recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189, 194 (4th Cir. 2019) (citation omitted) (affirming denial of deposition absent showing of what "additional useful information" would be gained).  Deposition testimony is "costly and time-consuming," and should be denied because it is "not proportional to the needs of the case." *Bright-Asante v. Saks & Co., Inc.*, 2019 WL 1109741, at *3 (S.D.N.Y. Mar. 11, 2019) (denying "costly and time-consuming deposition testimony . . . not proportional to the needs of the case"); *In re WildBrain Family Int'l Ltd.*, 2020 WL 6135765, at *3 (S.D.N.Y. Oct. 19, 2020) (quashing deposition subpoena).

That is particularly appropriate here because pre-trial deposition testimony is not customary in English proceedings.  *See WildBrain*, 2020 WL 6135765, at *2.  The court in *Wildbrain* rejected a Section 1782 deposition request because "[t]he 'nature' and 'character' of the UK proceedings are not such that they include live pretrial testimony, but only witness statements."  *Id.*

"[O]rdering live testimony would be in tension with the proof-gathering procedures that govern the UK tribunal overseeing [the] dispute." *Id.* The identical logic applies here.[8]

## B. The Document Requests' Period and Scope Should Be Limited.

Any document discovery granted should also be limited both in time period and scope to narrow Applicants' overbroad and burdensome requests.

First, this Court should at minimum modify and restrict the responsive time period for all discovery, including any oral testimony, to January through April 2020—the period after Al Sadeq publicized his claim and in which Stokoe alleges it witnessed phishing attempts. Applicants' request for material from 2015 to 2017 does not target relevant material.

Second, the Court should limit the subpoenas to VMS's work with CyberRoot—if any—relating to Stokoe or Al Sadeq. Applicants request "all documents" and communications between Movants and CyberRoot, "including, *but not limited to*," documents that "refer, relate to, evidence, or memorialize *any* meetings, discussions, or communications with CyberRoot," *see* Subpoenas

---

[8] The Court concluded that the Azima court's receptivity to further *trial* (not *deposition*) testimony from Movants supported granting discovery, Order at 40-41, but that should have no bearing because what is requested is deposition testimony, and the relevant proceedings are Applicants' foreign litigations, not Azima's.

at 7-8 (emphases added), regardless of their relevance to either Applicant's claims. Applicants' requests are overbroad and untethered to the issues in the foreign litigation, and the Court should limit them. *See, e.g.*, *In re Blue Oil Trading Ltd.*, 2009 WL 3247854, at *2 (W.D.N.C. Oct. 5, 2009) (modifying subpoena where "[s]everal of the document requests and deposition topics are unlimited in time" and "seek information that is general in nature and not focused specifically on the UK Litigation").

## III. The Application Required Decision by an Article III Judge.

This Court should quash the subpoenas because the Constitution, statutory law, and the Federal Rules require a Section 1782 petition to be decided by an Article III judge. Article III of the Constitution vests "[t]he judicial Power of the United States" in the Supreme Court and such other courts as Congress creates. "Congress has . . . authorized the appointment of . . . magistrate judges," and as the Supreme Court recently recognized, "without the[ir] distinguished service," the "work of the federal court system would grind nearly to a halt." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668-69 (2015). But because magistrate judges "do not enjoy the protections of Article III," the Constitution does not allow a magistrate judge to decide "claims for which litigants are constitutionally entitled to an Article III adjudication." *Id.*

In consequence, 28 U.S.C. § 636(b)(1)(A) authorizes magistrate judges to decide only "pretrial matters," and Rule 72(a) similarly provides that a magistrate judge may decide only "a pretrial matter not dispositive of a party's claim or defense." F.R.C.P. 72(a). A Section 1782 application is a standalone proceeding that results in an order granting or denying ultimate relief, so a decision on whether to grant or deny a Section 1782 application is "dispositive" within the meaning of Rule 72. *See, e.g.*, Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3068.2 (3d ed.) (so observing).

The Fourth Circuit held in the analogous context of an enforcement proceeding for an administrative search warrant that the Constitution requires the decision to be made by a district court judge. *See Aluminum Co. of Am., Badin Works, Badin, N.C. v. EPA,* 663 F.2d 499, 502 (4th Cir. 1981) ("*ALCOA*").[9] In *ALCOA*, a magistrate judge declined to quash an EPA search warrant, and the district court affirmed on clear-error review. The Fourth Circuit vacated and remanded, holding that the motion to quash was dispositive. The

_____

[9] In *In re Naranjo* (discussed at Order at 1 n.2) the appellant did not raise an objection to the magistrate judge's authority to issue an order, *see* Br. of Appellant, *In re Naranjo*, 768 F.3d 332 (4th Cir. 2014) (No. 13-2028, Dkt. No. 19), 2013 WL 2065272, at *11, so that case does not speak to the issue. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925); *see Mays v. Sprinkle*, 992 F.3d 295, 302 n.4 (4th Cir. 2021) (quoting *Webster*).

25

motion "was not a 'pretrial matter,'" but instead "set forth all of the relief requested," and therefore the movant was entitled to *de novo* consideration by the district court judge. *Id.* at 501. A Section 1782 decision similarly adjudicates with finality the relief requested. The subpoenas here were based on an order that the Court lacked power to issue, are invalid and should be quashed.

## IV. Applicants Improperly Joined Their Unrelated Applications.

Finally, the subpoenas should be quashed because the Application improperly joined parties. Rule 20 allows persons to be joined "in one action as plaintiffs" if they "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Here, Al Sadeq's claimed right to relief arises from his litigation, and Stokoe's from its; those are not the same transaction or occurrence. Nor are the underlying facts of each case the same. Rule 20 does not allow Applicants to proceed jointly. *See Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (per curiam) (affirming denial of joinder where "allegedly similar problems" with two vehicles "did not satisfy the transaction or occurrence test"); *Saunders v. Clarke*, 2015 WL 1916929, at *5 (E.D. Va. Apr. 27, 2015) (denying joinder of claims on same topic but involving different underlying litigation).

26

The false joinder matters especially because Applicants cannot establish that the requested discovery is "for use" in each litigation taken individually. Instead they weave together pieces from these distinct litigations (and Azima's): Al Sadeq has allegations against RAK, but not involving hacking. Stokoe does not allege wrongdoing by RAK, but portrays its claims as involving hacking. Only by linking the two can Applicants portray their combined cases as looking something like Azima's case and then articulate why they should be granted discovery that on its face is relevant only to that case. But the sum is not greater than the parts. The subpoenas should not have been authorized in a joint proceeding; they should be quashed, the proceedings severed under Rule 21, and new separate applications considered afresh.

## CONCLUSION

For these reasons, Movants respectfully request that the Court quash the subpoenas.

Respectfully submitted this 30th day of November, 2021.

NELSON MULLINS RILEY &
SCARBOROUGH, LLP

By:    */s/Brandon S. Neuman*

Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Movants*

28

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 6,212 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 6,250 word limitation.

Respectfully submitted this 30th day of November, 2021.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By:     */s/ Brandon S. Neuman*

Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Movants*

29

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November 2021, I electronically filed the foregoing **Nicholas Del Rosso and Vital Management Services, Inc.'s Motion to Quash or For a Protective Order** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

> Mark W. Merritt
> Robinson, Bradshaw & Hinson P.A.
> 101 N. Tryon St., Suite 1900
> Charlotte, NC 28246
> mmerritt@robinsonbradshaw.com

> **NELSON MULLINS RILEY &**
> **SCARBOROUGH, LLP**

By: ___*/s/ Brandon S. Neuman*___
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Movants*