# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

-----------------------------------------------------------X
*In re* Application of KARAM SALAH AL DIN AWNI AL SADEQ and STOKOE PARTNERSHIP SOLICITORS for an Order under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings

Case No. 1:21-mc-0006

-----------------------------------------------------------X

## DECLARATION OF PAUL ROBINSON

I, **PAUL ROBINSON,** of 6 Belvedere Walk, Haywards Heath, West Sussex, RH16 4TD, do hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 the following:

### INTRODUCTION

1. I am a director of a corporate research and investigation firm, Company Documents Ltd, which undertakes standard corporate research and worldwide document retrieval. Company Diligence (to which I refer below) is a trading name of Company Documents Ltd and undertakes more in-depth investigative research and due diligence enquiries with a separate US-facing website.

2. The facts and matters set out in this witness statement are either derived from my own knowledge or are derived from other sources or documents that I have seen and which, in all cases, I believe to be true. Where I refer to facts and matters below that are within my own knowledge, they are true. Where I refer to information supplied to me by others, its source is identified and it is true to the best of my

knowledge and belief. I do not waive privilege in relation to any information or materials which I reference in my statement.

3. There is now produced and shown to me an exhibit containing true copies of documents to which I will refer in this statement. True copies of those documents are annexed to this declaration and labelled as **Exhibits A–H**.

4. I make this witness statement further to the affidavit I swore on 6 July 2020 in Claim No. QB-2020-002218 ["**the affidavit**"] and my first witness statement of 14 May 2021 (**"first witness statement"**) made in the Claim No. QB-2020-002492 (the Stokoe Claim against Grayson, Page (and their respective companies), Dechert LLP and Neil Gerrard). The affidavit and the accompanying exhibits are annexed hereto and labelled as **Exhibit A** and the first witness statement is annexed hereto and labelled as **Exhibit B**.

5. The purpose of this statement is to provide further details of my dealings with Mr Grayson and details of my dealings with Mr Nicholas Del Rosso and in particular the involvement of Mr Del Rosso in the enquiries that Mr Grayson instructed me to carry out.

6. This witness statement has been prepared on the basis of my own knowledge and records of the relevant events and through consultation with my legal advisers.

## BACKGROUND

### a. <u>Nicholas Del Rosso</u>

7. Mr Del Rosso is a private investigator and managing director of Vital Management Services ("**VMS**"), based in North Carolina, USA. I was first introduced to him through another private investigator in around 2016. Over the following years Mr Del Rosso instructed me to carry out a number of different open source intelligence enquiries for which I received payment. Prior to the instructions I received from Mr Grayson between early 2019 and June 2020 ("**the Grayson enquiries**"), which I detail in my first witness statement, all instructions I received from Mr Del Rosso came directly from Mr Del Rosso and not through Mr Grayson.

8. The way in which Mr Del Rosso instructed me changed in respect of the Grayson enquiries. Whereas prior to Mr Grayson's involvement, Mr Del Rosso had instructed me directly, when Mr Grayson became involved, beginning in early 2019, he was the one who instructed me on **the Grayson enquiries**, which I believe were made on behalf of Mr Del Rosso as he was paying for them. I don't know why these instructions came through Mr Grayson and can only surmise that it was due to their confidential nature. Whilst Mr Grayson provided the instructions in respect of the Grayson enquiries, with the exception of the £5,000 in cash paid

to me by him and the payment for Project Maxwell (which I give further details of below), Mr Del Rosso / VMS paid me for all of the Grayson enquiries.

9. Whilst the Grayson enquiries centred upon what I characterise as "UAE related matters" some of the prior open source research investigations upon which I was directly instructed by Mr Del Rosso also concerned UAE matters. An example of this concerns Mr Farhad Azima, who I am aware was involved in litigation with Ras Al Khaimah. Mr Del Rosso instructed me to carry out open source research investigations concerning Mr Azima.

b. **Payments**

10. On 28 January 2018, Company Diligence, entered into a consultancy agreement with VMS for which VMS initially made a payment of £500 per month. These monthly payments commenced in 2018 and ended in June 2020. A copy of that consultancy agreement is annexed hereto and labelled as **Exhibit C**.

11. When I spoke to Mr Grayson in connection with the Grayson enquiries, he informed me that he had only recently returned from visiting Mr Del Rosso in North Carolina. Mr Grayson also informed me that Mr Del Rosso would be responsible for paying me for the Grayson enquiries. Whilst Mr Grayson paid me £5,000 (half of the sum agreed) for obtaining certain confidential information in respect of the Stokoe Partnership (as explained in my first witness statement), VMS made the remaining payments to cover the cost of the Grayson enquiries.

12. I also recall one occasion when Mr Del Rosso contacted me by secure message after I had sent him an invoice in relation to the Grayson enquiries. He queried what the amount was for, saying that it was not related to him and I should speak to Mr Grayson regarding this. I believe I must have spoken to Mr Grayson at the time to try and resolve the matter and assume that he would have spoken to Mr Del Rosso to explain any issue, as the invoice was subsequently settled in full by Mr Del Rosso. I can't recall exactly which invoice this query was relating to, but I think it was in early 2020.

13. I have collated a number of invoices which were issued by both Company Diligence and Company Documents Ltd to both Mr Del Rosso and VMS for work which I carried out from January 2016 – April 2020. These documents include invoices for the work that was carried out as part of the Grayson enquiries. Copies of these invoices are annexed hereto and labelled as **Exhibit D**.

14. Six invoices (dated 1/11/2019, 26/02/2020, 16/03/2020, 2/04/2020, 9/04/2020 and 7/06/2020) are not the original invoices which I sent to Mr Del Rosso. When these invoices were first issued, I sent them by email to Mr Del Rosso at reverendmack@protonmail.com and they were subsequently paid. Following service of the Claim QB-2020-002218 upon me on 1 July 2020, I spoke to Mr Del Rosso who told me not to mention his name in relation to this work and to keep his name out of the entire matter. In an effort to distance myself from Mr

Del Rosso, I deleted the six invoices. Before I deleted the invoices, I made a note of the detail set out therein. I subsequently used this detail to recreate the six invoices that I now exhibit. Whilst the handwritten note is no longer available, I have checked my bank statements, and confirm that payment for these invoices entered my bank account within days of the invoice date.

15. Two further points of detail concerning the invoices:

    15.1. The narrative on the spreadsheet for the invoice dated 16 March 2020 refers to "RS" (Radha Stirling) and to "P" (Patrick Grayson). Ex. D.

    15.2. The 10 July 2019 invoice contains the following narrative: *"OP Dotty – Adress (sic) Trace – as instructed by PG £250"*. The PG referred to is Mr Grayson. Ex. D.

16. I have collated a number of relevant Company Diligence bank statements for the period November 2018 – June 2020. Copies of these statements are annexed hereto and labelled as **Exhibit E**. I have redacted a number of entries as they are not relevant to the present matter. The ones that have been left unredacted show that payments were received from VMS. A proportion of these sums were then paid to John Gunning (whom I had instructed to undertake the Grayson enquiries) by me/Company Diligence. All of these payments to John Gunning were for work carried out in relation to the Grayson enquiries. The one exception is the £750 payment from Mr Grayson on 23 January 2020. Ex. E. This

payment was for an enquiry Mr Grayson instructed me to carry out, which was unconnected to these proceedings. The reference on the bank statement is "Project Maxwell", this was the name attributed to this particular enquiry.

c. <u>**Legal Fees**</u>

17. On 1 July 2020 I was served with a letter from the Claimant, enclosing among other matters, the claim form and an application notice seeking *Norwich Pharmacal* relief against me.

18. On the same date I called Mr Del Rosso and explained what had happened. The conversation was brief and he told me that his American lawyer would contact me and that if I did not mention his name he would pay any legal fees I incurred in relation to the proceedings. A short time later Brandon Neuman, Mr Del Rosso's American lawyer, called me. A number of emails were exchanged between him and I in connection with the matter. This email correspondence is annexed hereto and labelled as **Exhibit F**.

19. In a conversation over Signal, Mr Neuman informed me that as he was based in the USA, he could not assist me and he advised me to contact a lawyer based in the United Kingdom, which I did. Mr Del Rosso informed me that he would assist with my legal fees and he would set up a loan agreement, which is what happened. On 2 July 2020 Company Documents Ltd entered into a loan agreement with VMS for the sum of $25,000. The money was due to be repaid on

1 July 2021 and the rate of interest was 8 % per annum. A copy of that loan agreement is annexed hereto and labelled as **Exhibit G**.

20. The loan has not yet been repaid, and I have not yet been asked to repay it. However, the proceedings against me were settled shortly after I swore the affidavit.

### d. Counter Surveillance

21. Shortly after 1 July 2020 I became aware that I was under 24 hour overt and covert surveillance. As I felt threatened by the individuals carrying out the surveillance, I spoke to another private investigator, Gary Lowe (with whom I had a long-standing relationship), as I knew he offered personal security services. I knew that Mr Lowe had previously worked with Mr Del Rosso and he told me that he would speak to Mr Del Rosso about what I had told him. A short time after this, Mr Lowe reported back to me that he would offer me some security and carry out counter-surveillance on my behalf and that I would not have to pay him for this. Over the next three weeks or so, under Mr Lowe's directions, a number of individuals carried out 24/7 counter-surveillance upon the people watching me and offered security for myself and my family. Although Mr Lowe never told me directly, I assumed that Mr Del Rosso was paying Mr Lowe for the counter-surveillance, given the circumstances and the fact of Mr Lowe's existing relationship with Mr Del Rosso.



# CONTACT WITH MR GRAYSON

a. <u>**Signal Messages**</u>

22. In my first witness statement I exhibited a number of Signal messages between Mr Grayson and me. These messages mostly covered the period from January 2020 – June 2020. I now exhibit a number of additional Signal messages between me and Mr Grayson spanning the period June 2019 – January 2020. These Signal messages are annexed hereto and labelled as **Exhibit H**.

23. With the exception of a number of messages on 9 October 2019 concerning Project Maxwell, all messages contained in **Exhibit H** are connected to the Grayson enquiries. So far as I was concerned all the relevant enquires referred to within those messages were, in one way or another, connected to investigations in the UAE.

[SIGNATURE APPEARS ON FOLLOWING PAGE]

Pursuant to 27 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 10, 2021.

Paul Robinson

Signed before me
this 10 December 2021

ALAN J. OAKLEY
SOLICITOR, NOTARY PUBLIC
BENNETT OAKLEY LIMITED
13 MILL ROAD, BURGESS HILL
WEST SUSSEX RH15 8DN
ENGLAND

