UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 21-mc-0006

|  |  |
|---|---|
| *In re* Application of KARAM SALAH AL DIN AWNI AL SADEQ and STOKOE PARTNERSHIP SOLICITORS for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | ) ) ) ) ) ) ) ) ) ) ) |

NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES,
INC.'S REPLY IN SUPPORT OF THEIR
MOTION TO QUASH OR FOR A PROTECTIVE ORDER

# Table of Contents

REPLY ........................................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I.   The Requested Discovery Is Not "For Use" in or Relevant to the
     Foreign Proceedings and Is Unduly Burdensome................................... 2

     A.    Stokoe Proceedings ........................................................................ 2

     B.    Al Sadeq Proceedings..................................................................... 5

II.  The Application Required Decision by an Article III Judge..................... 8

III. Applicants Improperly Joined Their Unrelated Applications. .............. 11

IV.  Evidentiary Objections ........................................................................... 12

CONCLUSION........................................................................................................ 13

**REPLY**

In this matter, Applicants have inexplicably introduced the confidential bank statements of CyberRoot upon which non-party Farhad Azima has relied and appear to be improperly seeking discovery solely for Azima's benefit. As the motion explained, the material sought is not relevant to the English cases. Most simply, it is about a different time period than the Stokoe case, and a different person than the Al Sadeq case. After Movants explained why Applicants' original claims of relevance failed, the opposition abandons most of them.

Applicants now rest on a single theory of relevance for each case: that Movants' communications with CyberRoot in 2015-2017 might help Stokoe show that Movants worked on investigating Stokoe in 2020; and that showing (as Applicants hope to do) that Movants were involved in hacking non-party Farhad Azima in 2016 could help Al Sadeq show that his prosecution was "politically motivated." Those are non-sequiturs, and neither of them meets the relevance standard of Federal Rule of Evidence 401, so the discovery should be rejected.

1

Further, as the motion explained, the Application was flawed *ab initio* because Applicants improperly joined their unrelated applications; and the approving order was issued without constitutional authority. Applicants have no serious answers to those problems. The subpoenas should be quashed.

## ARGUMENT

### I. The Requested Discovery Is Not "For Use" in or Relevant to the Foreign Proceedings and Is Unduly Burdensome

#### A. Stokoe Proceedings

The material that Stokoe seek is not relevant to the Stokoe proceedings because it involves events in 2020 and does not involve hacking, while it is now undisputed that Stokoe seek communications from 2015 to 2017 between two non-parties that allegedly relate to the hacking of another non-party's email account in 2016.

As Movants explained and as Stokoe's Particulars of Claim reveal, hacking is not at issue in Stokoe's case. Stokoe's central allegation is that in March 2020, a defendant there possessed a document stating that a particular public relations firm had paid the blogger Radha Stirling "for raising profile of KAS". *See* Dkt. 16, Ex. 2 ¶ 9A. That PR activity was clandestine, Stokoe contend, so the underlying financial information must have been obtained via a "breach of confidence." *Id.* ¶ 16. Stokoe do not allege that that (or any) information was

2

obtained from them (or anyone) through hacking. The result, as Movants explained, is that any hacking allegations are legally extraneous to the complaint.

Stokoe do not seriously dispute this.[1] They point to their allegation that they received a "heightened number" of anonymous "spear phishing" emails (Dkt. 17 ("Opp.") at 18), but do not dispute the conclusion—plain on the face of the Particulars—that they claim no harm from receiving them, have no evidence linking those to Movants, and do not assert a cause of action arising from them. The discovery sought here, by contrast, is claimed to relate only to an alleged 2016 incident of hacking against an unrelated third party.[2] Stokoe can point to nothing but their own speculation to link Movants, Azima, the alleged hacking of Azima's email in 2016, or any hacking activity at all, to any 2020

---

[1] In opposition, Applicants submit materials from Paul Robinson. As discussed in Section IV, they are largely inadmissible. Further, they are irrelevant because they address Robinson's work in 2020 and have nothing to do with the CyberRoot communications from 2015-2017 that are being sought.

[2] Stokoe asserts for the first time that the discovery sought might help it determine whether CyberRoot was instructed to obtain its confidential information. Opp. at 19. But as the motion explained and Stokoe's Particulars show, CyberRoot is not alleged to have been involved in any misconduct against Stokoe.

3

"breach of confidence" that allegedly disclosed that Stokoe's public relations firm was secretly paying Stirling.[3]

Even if phishing claims were genuinely at issue, Stokoe's opposition cannot explain why the discovery would aid its case, and instead shows affirmatively that the discovery would *not* be helpful. As noted, all of Stokoe's allegations concern events in 2020. If Stokoe wished to explore a theory that Movants were behind the phishing attempts, then their discovery would seek information from 2020 about Movants' activities with respect to Stokoe. But while the Application was obscure about the date range it sought (*see* Dkt. 1), Stokoe now do not dispute that the information they seek is exclusively for 2015 to 2017 (*see, e.g.*, Opp. at 15).

This temporal limitation defeats their primary claim of relevance. Stokoe asserts a long chain of inference (Opp. at 13-15) that they say "establishes" Movants' "likely" role in directing others in 2020 to obtain what Stokoe claim was their confidential information (*id.* at 15). They then overstate that

---

[3] Stokoe links its claim that it received a "heightened" number of phishing emails in March-September 2020 to Robinson's claim that in March 2020 he researched Stirling. Opp. at 18. The evidence of the Stirling work is inadmissible (*see* Section IV), but nothing anyway supports the non-sequitur suggests that Robinson's Stirling research meant sending phishing emails to Stokoe. *Contra id.* To the contrary, had Robinson engaged in phishing, he would know that, but none of his three voluntary signed statements here say that he had any involvement in phishing.

4

one of their adversaries, Stuart Page, has "implicated" Movant Del Rosso in the "conduct" at issue in the Stokoe case (*id.* at 16), and contend that the discovery they seek "will aid Stokoe in determining" whether Page "instructed Del Rosso" in this regard, which Page has denied (again, all in 2020). Opp. at 19. But Stokoe have limited their requests to 2015 to 2017, which was years before Stokoe's engagement by Al Sadeq began and before anyone is alleged to have tried to obtain their confidential information. So there is no way in which the information sought could show "whether 'one of the defendants in those proceedings'" instructed Movants to "unlawfully obtain" Stokoe's information in 2020. Opp. at 19. The end result is that the opposition offers no connection between the discovery sought and the Stokoe case.

### B. Al Sadeq Proceedings

In response to the motion, Al Sadeq barely articulates a link between the sought discovery and his case. Though he recites facts about *Azima*'s litigation at length (Opp. at 13-16), Azima's case is not *his* case.[4] His sole stated link is that "the timing and the methods" that RAKIA used to obtain Azima's emails

---

[4] Azima's suit against Movants in this district has been dismissed except for a narrow trade secrets and related conspiracy claim based on allegations from 2018 and 2019. *Azima v. Del Rosso et al.*, No. 1:20-cv-954, Dkt. 65 (M.D.N.C.).

5

are "relevant" to Al Sadeq's allegations that RAKIA's prosecution was "politically motivated." Opp. at 16. But he makes no effort to meet his burden of showing relevance by explaining why that would be so.

Evidence is relevant if it tends "to make a fact more or less probable than it would be without the evidence" and is "of consequence in determining the action." Fed. R. Evid. 401. Whether Azima was hacked and by whom would not make it "more or less probable," *id.*, that Al Sadeq, a different person, was prosecuted "politically." They are separate, unrelated factual questions, and Al Sadeq's contention that he was wrongly prosecuted does not allow him to get discovery related to Azima's case.

Al Sadeq is also wrong to insist that his case and Azima's are linked because Azima is his "alleged co-conspirator." Opp. at 16-17. As the motion explained, and Al Sadeq does not dispute, the frauds for which Al Sadeq was prosecuted, and which are at issue in his litigation, did not involve Azima.[5]

---

[5] Al Sadeq's litigation is not about hacking, and Movants' brief said so. Al Sadeq's response is that this "ignores" that *Azima's* allegedly hacked emails implicated Al Sadeq in *Azima's* fraud. But whatever Al Sadeq's involvement was in that separate fraud, Al Sadeq was not prosecuted for Azima's fraud, and the fact that Azima's case involves hacking does nothing to show that Al Sadeq's case involves hacking. It does not. *See generally* Neuman Decl., Ex. 1, Dkt. 16-1.

6

That his name arose in the facts of Azima's fraud scheme does not make material related to that scheme relevant to the unrelated schemes for which he in fact was prosecuted and which are in fact at issue in his case. Again, the question of relevance is whether the material Al Sadeq seeks would make the facts he has to prove in his case more or less likely, Fed. R. Evid. 401, and he identifies no facts in his case that the Azima discovery he seeks would help him to prove. His core allegations are set forth in the Tsiattalou Declaration, and nothing there has anything to do with Movants, CyberRoot, or Azima's alleged hacking. Dkt. 4 ¶ 5. Movant, CyberRoot, and the fact that Azima was supposedly hacked are not alleged or mentioned anywhere in his operative Particulars of Claim. *See generally id.* Ex. A.

Al Sadeq's ultimate position is that "Del Rosso has admitted that his dealings with CyberRoot during this period were unrelated to Azima and, therefore, a reasonable inference is that these inquiries were related to Al Sadeq." Opp. at 22.[6] But that is plainly wrong. Movants' denial that they did anything improper with respect to Azima of course does not give rise to an inference that that was because they were involved in committing a tort with

---

[6] As the motion noted, there is no evidence of these statements by Del Rosso before the Court. Applicants cited to an English appellate court ruling in the Azima litigation (Opp. at 14), but that is not evidence, and Movants are not parties to or bound by that litigation.

7

respect to someone else. Al Sadeq's logic is wrong, and his request for discovery should be denied.

* * *

Applicants offer pages of factual recitation, a local phonebook of witness names, and a pile of documentary material to suggest that the discovery they want is warranted. But volume is not weight. The material sought here is not relevant to Stokoe's 2020 claims because what is sought is time-limited to 2015-2017; and it is not relevant to Al Sadeq's claim that he was mistreated in prison because what is sought is material of interest in Azima's separate case and has nothing to do with Al Sadeq. The subpoenas should be quashed or narrowed as set forth in the motion.[7]

## II. The Application Required Decision by an Article III Judge.

As Movants explained, a request is dispositive and "not a 'pretrial matter'" if it "set[s] forth all of the relief requested." *ALCOA v. E.P.A.*, 663 F.2d 499, 501 (4th Cir. 1981); *see also Springs v. Ally Fin. Inc.*, 657 F. App'x 148,

---

[7] The motion explained points to which Applicants do not respond and as to which Movants rest on their opening brief, including that third-party discovery always imposes a burden; oral and document discovery as to communications with a non-party regardless of relevance to Applicants' claims poses an undue burden; and depositions are not permitted under English practice.

8

152 (4th Cir. 2016) (post-judgment protective order was "dispositive"). Applicants suggest that a Section 1782 application is "neither dispositive or final" because a subpoena authorized by the application "may be called into question" via a later motion to quash. Opp. at 23. That is imprecise, and wrong. A Section 1782 application requests authority to serve subpoenas, while a motion to quash targets the subpoena itself, not the authority to serve it, so it does not target the relief requested in the application. The Section 1782 application results in a final order granting the authority to serve subpoenas. Applicants' own Fourth Circuit precedent confirms that a "[Section] 1782 order is a sufficiently final order" to render it immediately appealable. *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014).

But even if a motion to quash did "call into question" the relief requested in the application itself, the Application still requests dispositive relief. Motions that are undisputedly dispositive—a motion to dismiss, for summary judgment, or for judgment as a matter of law—may all be "called into question" by a later motion. All are subject to a motion to reconsider. *See, e.g.*, *Srinivasan v. Snow*, 211 F. App'x 186, 189 (4th Cir. 2006) (summary judgment order was final despite "court's indication that the parties could file a motion for reconsideration"). Any trial-court decision in a case, including on dispositive motions, is non-final and subject to being revisited by the court at any time. *See*

9

*Plotkin v. Lehman*, 1999 WL 259669, at *1 (4th Cir. Apr. 30, 1999) ("Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration. . . ."); *Krembel v. United States*, 837 F. App'x 943, 950 (4th Cir. 2020) (same). And re-consideration of a motion for judgment as a matter of law under Rule 50(a) is built into the Federal Rules: a party can (and to preserve appellate issues, must) raise the same arguments again under Rule 50(b), but that required re-consideration does not render a Rule 50(a) motion non-dispositive. *See, e.g.*, *James v. Wright,* 2014 WL 2612487, at *3 (D.S.C. June 9, 2014) ("motions for . . . judgment as a matter of law are dispositive").

The test of whether a motion is dispositive is therefore not, as Movants implicitly contend, whether the relief requested can be "called into question" by a later decision. It is instead exactly what ALCOA held: whether the request sets forth all the relief requested.[8] A Section 1782 application does that. The Application had to be decided by an Article III judge, and the order granting the Application is therefore void. The subpoenas should be quashed.

---

[8] The court in *ALCOA* noted in a footnote that the petitioner there sought injunctive relief, but nothing in the decision turned on the kind of relief requested. *Contra* Opp. at 24-25. Applicants emphasize *In re Naranjo*, 768 F.3d at 332 (Opp. at 24), but ignore that the applicable standard of review was neither pressed nor passed upon in that case (*see* Dkt. 15 at 25 n.9). They also ignore that unlike even in *Naranjo*, no Article III judge has, on any standard, reviewed and affirmed the 1782 order in this case.

10

## III. Applicants Improperly Joined Their Unrelated Applications.

Parties may prosecute claims jointly only if they arise from the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). Joinder is not appropriate when "the parties requesting joinder have unique histories and the events at issue happened at different times under different circumstances." *Scott v. Lumbee River Elec. Membership Corp.*, 2006 WL 8438729, at *1 (E.D.N.C. Nov. 21, 2006).

As the motion showed, Applicants' claims arise from different alleged events. Dkt. 15 at 4. Al Sadeq complains of alleged foreign judicial process violations in 2014 to 2016. Stokoe alleges (speculative) claims arising from someone allegedly obtaining a copy of certain of their bank statements. Opp. at 4-5, 26-27. "[E]ach are suing for distinct wrongs allegedly committed against them by [] separate defendants," *Johnson v. City of Fayetteville*, 2015 WL 3409058, at *2 (E.D.N.C. May 27, 2015), and the events occurred "at different times under different circumstances," *Scott*, 2006 WL 8438729, at *1.

Applicants fail to explain how their distinct claims arose from the same transaction or occurrence. They cite no legal authority, and rely only on this Court's *ex parte* conclusion that the discovery sought could be relevant to both proceedings. Opp. at 26 (quoting Dkt. 7 at 39). That has no relevance under Rule 20(a). Whether both parties would benefit from the relief requested is not

11

the rule; the question is whether the claims arose from the same transaction or occurrence. Applicants do not try to link their claims in this way, and they cannot, because the requests arise from different litigations, and those litigations arise from different, years-apart events. The Court should not have considered their applications together.[9]

## IV. Evidentiary Objections

As noted, the new Robinson material submitted is irrelevant because it deals with 2020 events and fails to support Applicants' position that the 2015-2017 material sought is relevant to their proceedings. In any event, much of it is improper and inadmissible, and should be excluded:

- Robinson Declaration: Robinson recites out-of-court statements asserted for their truth. *See* Dkt. 18 ¶ 11 (statements by Patrick Grayson); *id.* ¶ 15 (reciting hearsay portions of Exhibit D); *id.* ¶ 21 (Mr. Lowe's statements).

- Exhibit A: This foreign-sworn affidavit is hearsay not within any exception. It is not apostilled as required for foreign affidavits to be recognized under the Hague Convention Abolishing the Requirement of Legalisation for Foreign Public Documents, and does not otherwise subject the signatory to U.S. perjury penalties as required under 28 U.S.C. § 1746.

---

[9] Even claims that are more closely linked than these cannot be prosecuted together. *See Hogan v. Cherokee Cnty.*, 2019 WL 11769118, at *4 (W.D.N.C. Nov. 14, 2019) (denying joinder of proposed plaintiffs because their claims were distinct from each other); *Wilson v. Nash Edgecombe Econ. Dev., Inc.*, 2020 WL 5594538, at *23 (E.D.N.C. Sept. 18, 2020) ("pattern and practice" cannot ground joinder).

12

- Exhibit B: This witness statement is hearsay not within any exception. It is unsworn and so is not an affidavit admissible to support a motion under Rule 43(e) and does not comply with 28 U.S.C. § 1746, which requires that a declaration executed abroad be sworn under penalty of perjury under U.S. laws.

- Exhibit D: As set forth in ¶ 14, the purported invoices dated November 1, 2019 and February 26, March 16, April 2, April 9 and June 7, 2020 are admitted fabrications. Robinson admits deleting invoices, claims to have made notes of their contents, and claims to have reproduced them (and destroyed the notes). These documents are hearsay admitted for their truth, but are not Fed. R. Evid. 803(6) business records because they were not "made at or near the time," were not "kept in the course of a regularly conducted activity," and making them was not "a regular practice of that activity."

## CONCLUSION

For these reasons and those stated in the opening brief, the Court should quash or narrow the subpoenas.

Respectfully submitted this 23rd day of December, 2021.

       **NELSON MULLINS RILEY &**
       **SCARBOROUGH, LLP**

    By: */s/ Brandon S. Neuman*
      Kieran J. Shanahan, NCSB# 13329
      Brandon S. Neuman, NCSB# 33590
      Jeffrey M. Kelly, NCSB# 47269
      Nathaniel J. Pencook, NCSB# 52339
      Glenlake One
      4140 Parklake Avenue, Suite 200
      Raleigh, North Carolina, 27612
      Telephone: (919) 329-3800
      Facsimile: (919) 329-3799
      kieran.shanahan@nelsonmullins.com
      brandon.neuman@nelsonmullins.com
      jeff.kelly@nelsonmullins.com
      nate.pencook@nelsonmullins.com
      *Counsel for Movants*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 3,025 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 3,125 word limitation.

Respectfully submitted this 23rd day of December, 2021.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/ Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
Glenlake One
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Movants*

15

# CERTIFICATE OF SERVICE

      I hereby certify that on this 23rd day of December 2021, I electronically filed the foregoing **Nicholas Del Rosso and Vital Management Services, Inc.'s Reply in Support of Motion to Quash or For a Protective Order** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

> Mark W. Merritt
> Robinson, Bradshaw & Hinson P.A.
> 101 N. Tryon St., Suite 1900
> Charlotte, NC 28246
> mmerritt@robinsonbradshaw.com

> **NELSON MULLINS RILEY & SCARBOROUGH, LLP**
>
> By:    */s/ Brandon S. Neuman*
> Kieran J. Shanahan, NCSB# 13329
> Brandon S. Neuman, NCSB# 33590
> Jeffrey M. Kelly, NCSB# 47269
> Nathaniel J. Pencook, NCSB# 52339
> Glenlake One
> 4140 Parklake Avenue, Suite 200
> Raleigh, North Carolina, 27612
> Telephone: (919) 329-3800
> Facsimile: (919) 329-3799
> kieran.shanahan@nelsonmullins.com
> brandon.neuman@nelsonmullins.com
> jeff.kelly@nelsonmullins.com
> nate.pencook@nelsonmullins.com
> *Counsel for Movants*

16