# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CASE NO. 21-mc-0006

|  |  |
|---|---|
| *In re* Application of KARAM SALAH AL DIN AWNI AL SADEQ and STOKOE PARTNERSHIP SOLICITORS for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES, INC.'S OBJECTION TO MAGISTRATE JUDGE'S OPINION AND ORDER ON MOTION TO QUASH

# Table of Contents

OBJECTION ................................................................................................. 1

BACKGROUND ......................................................................................... 2

    A.    The Foreign Proceedings ................................................................ 2

    B.    The Application ............................................................................... 4

    C.    Procedural History ......................................................................... 6

ARGUMENT .............................................................................................. 10

I.    The Magistrate Judge Lacked Authority to Grant the § 1782 Application and Deny the Motion to Quash Because Both are Dispositive Matters............................................................................. 10

II.    The Magistrate Judge Erred in Finding the Application Satisfied the Statutory and *Intel* Factors. ........................................................ 18

    A.    The Requested Discovery Is Not "For Use" in the Foreign Proceedings. ................................................................................... 18

    B.    The Subpoenas Should Be Narrowed. ......................................... 24

III.    The Magistrate Judge Erred in Failing to Exclude the Robinson Affidavit and Relying on Hearsay Evidence. ..................................... 26

CONCLUSION ........................................................................................... 28

i

## OBJECTION

Applicant Karam Salah Al Din Awni Al Sadeq ("Al Sadeq") sued Dechert LLP and several individuals in England over alleged judicial process violations following his conviction for fraud and embezzlement. Applicant Stokoe Partnership Solicitors ("Stokoe"), his English law firm, brought an English lawsuit asserting that Al Sadeq's legal team was physically surveilled and that someone attempted to gain improper physical access to its bank records in 2020.

Neither of the foreign litigations asserts claims arising from hacking. Neither has anything to do with an Indian IT company called CyberRoot Risk Advisory Private Limited. But Applicants still sought discovery from Movants Nicholas Del Rosso and Vital Management Services, Inc. ("VMS") pursuant to 28 U.S.C. § 1782 relating to all of their communications with, and payments to, CyberRoot, on a theory that they may have been involved in "hacking" Stokoe.

The discovery that Applicants seek has nothing to do with their own case, and instead relies on—and seeks to explore—the allegations made in a separate litigation by non-party Farhad Azima. The evidentiary link Applicants seek to draw is that if Movants were involved in hacking Azima in 2016, that

1

will suggest that Al Sadeq's prosecution was "politically motivated" and that Stokoe was "hacked" as a result of its representation of Al Sadeq.

The Magistrate Judge concluded that Al Sadeq had an interest in proving that Azima was hacked sufficient to support a grant of § 1782 discovery. The judge further found that a Magistrate Judge has the power to grant or deny a party's § 1782 petition, and issued an order granting the discovery. Dkt. 7 at 1 n.2. Upon Movants' motion to quash the resulting subpoenas, the same judge found that he had authority to decide that motion, and denied it. Dkt. 20 ("Order") at 55-61, 97.

Movants bring this objection to explain that the subpoenas should have been quashed as a constitutional matter because the Magistrate Judge lacked authority to grant the Application; the judge lacked authority to decide the motion to quash; and on the merits of the Application, the discovery sought should have been denied because it is not related to Applicants' own foreign proceedings and is not "for use" in them. At a minimum, this Court should limit the subpoenas to cover only discovery related to Al Sadeq or Stokoe.

## BACKGROUND

### A.    The Foreign Proceedings

Al Sadeq is a former investment officer for the Emirate of Ras al Khaimah ("RAK") who is currently incarcerated in RAK after being convicted

of fraud and embezzlement. His fraud was revealed following an investigation by international law firm Dechert LLP. In January 2020, Al Sadeq filed a lawsuit against Dechert and three of its partners in England (the "Al Sadeq Proceeding"), alleging violations of his rights relating to his arrest, detention and prosecution from 2014 to 2016. Dkt. 4 ¶¶ 4-5.

Stokoe represents Al Sadeq in the Al Sadeq Proceeding. *Id.* ¶ 7. Stokoe alleges that it has been subject to surveillance and that there have been attempts to obtain—although not by means of hacking—certain of its banking information. *Id.* ¶¶ 3, 10-11, 13. It also alleges that it received a number of emails that appeared to be efforts to obtain the passwords of Stokoe employees, although it does not allege that these "spear-phishing" attempts were successful, has no evidence of who may have been behind them, and brings no cause of action arising from them. *Id.* ¶¶ 43-44.

Stokoe "believe[s]" that the alleged attempts are related to their representation of Al Sadeq because they happened around the time that they filed the Al Sadeq Proceeding. Dkt. 2 at 12. In July 2020, Stokoe initiated its own lawsuit in England (the "Stokoe Proceeding"), accusing alleged agents of RAK of being behind the alleged surveillance and attempts to obtain its banking information.

Case 1:21-mc-00006-WO-LPA   Document 21   Filed 04/01/22   Page 5 of 32

Del Rosso, a North Carolina resident, and his North Carolina company, VMS, are not parties to either the Al Sadeq Proceeding or Stokoe Proceeding (together, the "Foreign Proceedings"). They are not alleged to have been involved in any of the conduct at issue in Al Sadeq's claims, nor are they alleged to have been involved in hacking Stokoe. *See* Dkts. 16-1, 16-2. The putative link to Stokoe is an allegation that VMS engaged Patrick Grayson, a defendant in the Stokoe Proceeding, in 2018; that VMS asked Grayson a question about who was funding the Al Sadeq litigation; and that this is what prompted Grayson to become "interested in [Stokoe's] affairs." Dkt. 16-2 at 11-12.

## B. The Application

Unrelated to the facts and causes of action at issue in either of the Foreign Proceedings, Applicants allege that Movants have a link to CyberRoot, that Movants paid for CyberRoot's services in the past; and that a witness claims that in 2016, CyberRoot hacked the email accounts of another former affiliate of RAK, an individual named Farhad Azima. *Id.* at 12. The question whether Azima was hacked and by whom is hotly contested elsewhere in live litigation. Azima sued over the incident in D.C. District Court, until his claim was dismissed by the D.C. Circuit. *See Azima v. RAK Inv. Auth.*, 926 F.3d 870 (D.C. Cir. 2019). He is currently pursuing a claim related to the alleged hacking in England; and has sued Movants in a separate pending litigation in this

4

Court, although most of his claims here have already been dismissed, *see Azima v. Del Rosso*, 2021 WL 5861282 (M.D.N.C. Dec. 10, 2021). Over time, Azima has put forward multiple theories for who was behind the alleged hacking.[1]

On February 5, 2021, Applicants filed a § 1782 application seeking discovery from Movants. They attached a declaration of Haralambos Tsiattalou, a partner at Stokoe, exhibits, and proposed subpoenas that sought discovery relating to Movants' business dealings with CyberRoot. The subpoenas sought documents from July 1, 2015 through September 30, 2017. Dkts. 3-1, 3-2. On May 12, 2021, Applicants filed a supplemental memorandum of law in support of their Application, along with a supplemental declaration of Tsiattalou and exhibits. Dkts. 5-6.

Applicants contend that Movants have information related to Azima's *separate* English lawsuit (the "Azima Proceeding"). Azima, as noted, is an unrelated individual—the only connection is that he and Al Sadeq have both been found by courts to have defrauded the Investment Authority of RAK

---

[1] Azima himself is an adjudged fraudster who was ordered to pay over $4 million in damages to RAKIA in its English litigation against him. Dkt 4-2 ¶¶ 159, 181, 189, 249-50. Movants have already attested in the Azima English litigation that they have nothing to do with the hacking, and maintain that as a fraudster, Azima has no credibility and is engaged in strategic, baseless litigation.

5

("RAKIA"), and, being in that way similarly situated, they now appear to be coordinating their litigation strategies.[2] Applicants argued here that they hoped to prove that Movants hacked Azima, because that would, by their logic, prove that they had also suffered the different torts that they claimed in their litigations.

## C. Procedural History

On October 18, 2021, the Magistrate Judge granted the *ex parte* Application. Dkt. 7. On November 30, 2021, after being served with the subpoenas, Movants moved to quash ("Motion"), arguing that, as relevant here: (1) the Magistrate Judge lacked the power to enter an order granting the 1782 Application, (2) the requested discovery was not "for use" in the Foreign Proceedings because of the attenuated link between the Azima-related evidence sought and the wholly different facts at issue in each of the foreign cases, and (3) the subpoenas were overbroad and unduly burdensome, and should be, at least, narrowed to target only evidence relevant to the Foreign Proceedings.

Applicants' opposition to the Motion relied on a declaration of Paul Robinson, a purported investigator who was previously a defendant in the Stokoe

---

[2] For example, immediately after Al Sadeq filed this § 1782 application, Azima filed a motion in his action appending materials from Al Sadeq's filing and seeking the commencement of early discovery in that case. *See Azima v. Del Rosso*, No. 20-cv-954, Dkts. 45-46 (filed one week after this Application).

6

Proceeding, and exhibits to that declaration. Dkts. 17-18. One of those exhibits was an improperly sworn affidavit of Robinson in which Robinson alleges that he received payments and instructions from Grayson in 2020 to obtain information regarding Stokoe. Dkt. 18-2.

Movants objected that much of the new Robinson material submitted was improper and inadmissible, including because the foreign-sworn affidavit was not properly apostilled and did not otherwise subject its signatory to U.S. perjury penalties. Dkt. 19 at 12-13. Movants also objected to the admission of a number of the exhibits, including admittedly fabricated invoices: Robinson admitted to having destroyed certain of the original invoices; claimed to have kept notes of their contents; admitted he created new documents that looked like genuine invoices and dated them; destroyed the notes he used to reproduce them; and then submitted the fabricated documents in place of ordinary business records. Dkt. 18 ¶ 14. Movants objected that these fabricated invoices were not ordinary business records and were inadmissible hearsay. Dkt. 19 at 12-13.

The Magistrate Judge denied the Motion. The Magistrate Judge first concluded that he had the authority to grant the Application because a Section 1782 order is a non-dispositive matter. Order at 55 n.31.

The Magistrate Judge then rejected Movants' evidentiary objections to

7

the Robinson materials. *Id.* at 66-71. He concluded he could consider Robinson's affidavit even though it was not apostilled and did not subject Robinson to U.S. perjury penalties because the "Hague Convention addresses procedures for certifying the authenticity of foreign public documents . . . and Movants do not challenge the authenticity of Robinson's affidavit." *Id.* at 70. The Magistrate Judge concluded that "28 U.S.C. § 1746 requires only unsworn foreign documents to subject the signatory to U.S. perjury penalties . . . and the affidavit reflects that Robinson made the affidavit under oath." *Id.*

The Magistrate Judge also concluded that he "need not resolve the[] hearsay challenges [because] exclusion of the challenged materials does not impact resolution of the Motion." *Id.* at 71. The Magistrate Judge reached that conclusion even though he did in fact rely on the hearsay materials. *See id.* at 47 n.25, 97.

Turning to Section 1782's requirements, the Magistrate Judge concluded that the discovery was "for use" in the Foreign Proceedings because there was evidence that "tied Movants to the defendants in the Foreign Proceedings and the alleged wrongs against Al Sadeq and Stokoe." *Id.* at 90.

With respect to the Stokoe Proceedings, the Magistrate Judge reasoned that "Robinson and Grayson directly connect Del Rosso to the attempts to gain

confidential information regarding Stokoe in 2020 that both the [Stokoe Proceeding] and the Amended Al Sadeq Claim challenge. In turn, a former Cyber-Root employee reports that he and his CyberRoot colleagues hacked Azima's emails on Del Rosso's instructions, emails that allegedly implicate Al Sadeq in the fraudulent sale of RAKIA assets in Georgia." *Id.*

With respect to the Al Sadeq proceedings, the Magistrate Judge concluded that since Al Sadeq alleged his claims "arise from political motivations," "determining the circumstances by which the Ruler obtained Azima's emails . . . remains relevant to Al Sadeq's claims regarding the Ruler's politically motivated campaign against Al Sadeq [and] Azima . . . regardless of the fact that" the frauds at issue were different. *Id.* at 91.

Finally, the Magistrate Judge rejected Movants' request to narrow the scope of the subpoenas to the January through April 2020 time period after Al Sadeq filed his claim and in which Stokoe alleges it witnessed phishing attempts, and to work with CyberRoot that relates to Stokoe or Al Sadeq, if any. *Id.* at 96-97. The Magistrate Judge concluded that the earlier time period requested by Applicants (2015 to 2017) was relevant to "Al Sadeq's claims regarding the politically motivated nature of the actions against him." *Id.*

Movants object to the Order as follows.

9

# ARGUMENT

## I. The Magistrate Judge Lacked Authority to Grant the § 1782 Application and Deny the Motion to Quash Because Both are Dispositive Matters.

The Magistrate Judge decided both the initial § 1782 application and the Motion rather than issue a Report and Recommendation. Federal magistrate judges perform an essential function within the federal judiciary: "without [their] distinguished service," the "work of the federal court system would grind nearly to a halt." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668 (2015). But, at the same time, because magistrate judges "do not enjoy the protections of Article III," the Constitution requires that an Article III judge decide matters for which "litigants are constitutionally entitled to an Article III adjudication." *Id.* at 668-69.

"[C]onscious at all times of the need to restrict any enlargement of the magistrate's jurisdiction or authority so as not to violate the purposes and intent of Article III," *Wimmer v. Cook*, 774 F.2d 68, 71 (4th Cir. 1985), Congress and the Federal Rules limit the authority of magistrate judges to deciding "a pretrial matter not dispositive of a party's claim or defense." *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A) (similar). In this Circuit, it is crystal clear that proceedings related solely to requests for evidence are "dispositive" and "not [] 'pretrial matter[s]'"—and therefore must be decided by a district court

judge—if they "set forth all of the relief requested." *Aluminum Co. of Am.,* *Badin Works, Badin, N.C. v. EPA*, 663 F.2d 499, 501 (4th Cir. 1981) ("*ALCOA*"). This is because, as the Fourth Circuit explained in *ALCOA*, a magistrate judge cannot "dispos[e] of the entire case" before the federal court. *Id.* Under *AL-COA*'s rule, the Magistrate Judge lacked authority to grant the initial § 1782 application, and similarly lacked authority to decide the Motion.

In *ALCOA*, ALCOA initiated a standalone motion-to-quash proceeding to quash an administrative search warrant. The motion was heard by a magistrate judge, who denied it by order, and the district judge reviewed for clear error. *Id.* The Fourth Circuit remanded the case, explaining that the motion to quash "was not a 'pretrial matter' but set forth all of the relief requested." *Id.* For this reason, the motion was a "dispositive" matter that required a "de novo determination" from a district judge. *Id.*

Like a proceeding to quash an administrative search warrant or subpoena, an initial § 1782 application "set[s] forth all of the relief requested" in that action and therefore is a "dispositive" matter requiring decision by an Article III judge. *Id.* Such matters are dispositive because "[t]he ultimate relief sought in a § 1782 application is court-ordered discovery"—the authority to issue subpoenas. *Khrapunov v. Prosyankin*, 931 F.3d 922, 931 (9th Cir. 2019) (Callahan, J., concurring) (internal quotation marks omitted). If the § 1782

11

application is denied, "there is no further case or controversy before the district court." *Id.* at 932. The "sole purpose of the [§ 1782] proceeding is to obtain discovery, and accordingly a motion to compel such discovery is a final, dispositive matter." Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3068.2 (3d ed.).

A § 1782 application or administrative warrant proceeding will often be the only opportunity for an Article III judge to be involved with the case. Unlike garden-variety discovery disputes, an "Article III court[]" will retain less "supervisory authority over the process" in these contexts. *Wellness Int'l Network, Ltd.*, 575 U.S. at 678. Transferring the federal judiciary's entire involvement in these matters to a magistrate judge would therefore impinge on "Article III, § 1's guarantee of an independent and impartial adjudication by the federal judiciary of matters within the judicial power of the United States." *CFTC v. Schor*, 478 U.S. 833, 848 (1986).

Extraordinarily, Applicants *themselves* made exactly this argument before the Ninth Circuit in an appeal related to another § 1782 application they filed related to the same underlying Foreign Proceedings. The Magistrate Judge in that case had denied Applicants' *ex parte* § 1782 application for discovery from third-party technology companies due to the lack of "a link between the fact that someone might be watching or attempting to hack them and the particular claims at issue in the foreign proceedings." *In re Al Sadeq*,

12

2021 WL 2828810, at *3 (N.D. Cal. Mar. 30, 2021). On appeal, Applicants argued that "the magistrate judge [in *that* case] lacked the authority to exercise jurisdiction and issue an order [denying Applicants' § 1782 application] under 28 U.S.C. § 636(b)(1)(A)." Appellants' Supplemental Brief at 17, *In re Al Sadeq*, 2022 WL 501136 (9th Cir. Feb. 18, 2022). The Ninth Circuit then dismissed the appeal because "[n]o district court judge ever acted on" Applicants' § 1782 application. *In re Al Sadeq*, 2022 WL 501136, at *1 (9th Cir. Feb. 18, 2022).

Here, the Magistrate Judge reached a contrary conclusion because he failed to apply (or even mention) the relevant standard under *ALCOA*. *See* Order at 56-61. The Magistrate Judge dismissed *ALCOA*'s relevance, appearing to view it only for the proposition that administrative search warrants and subpoenas must be decided by a district judge. *Id.* at 59. The Fourth Circuit's decision cannot just be read away by limiting it to its facts: binding precedent includes "not only the result but also those portions of the opinion necessary to that result." *Seminole Tribe v. Florida*, 517 U.S. 44, 67 (1996). *ALCOA*'s explanation that a motion is a "dispositive" matter if it "set[s] forth all of the relief requested, *see ALCOA*, 663 F.2d at 501, was "a principle [] clearly integral to the analytical foundations of [its] holding," *Lennear v. Wilson*, 937 F.3d 257, 273 (4th Cir. 2019) (internal quotation marks omitted). Here, the § 1782

13

application and subsequent Motion likewise "set forth all of the relief requested" from this Court, and so they were dispositive, and under *ALCOA*, not capable of being decided by the Magistrate Judge. *ALCOA*, 663 F.2d at 501.

It is no answer to all of this to say, as Applicants argued, that an initial § 1782 application is not dispositive because, if it is granted, the subpoena target could bring a motion to quash. This ignores that if the initial § 1782 application is *denied*, that disposes of the entire proceeding. This is true of a motion to dismiss under Rule 12(b)(6) or a motion for summary judgment under Rule 56 as well: if the motion is denied, the case continues, but these motions are indisputably dispositive motions that cannot be decided, only reported on, by a magistrate judge. 28 U.S.C. § 636(b)(1)(A).

The Magistrate Judge erred in part because he drew a false distinction between administrative warrants on the one hand and § 1782 subpoena proceedings on the other. A § 1782 proceeding, the judge said, must be connected to "a related civil action," and so it is that related civil action, not the petition, that sets forth all of the relief requested. Order at 59 (quoting *In re Plowiecki*, 2021 WL 4973762, at *5 (D. Minn. Oct. 26, 2021)). That is wrong because the question is whether the motion disposes of all the relief requested in *that* proceeding, not all relief that might be requested in a related proceeding. But it is also a misunderstanding of how § 1782 petitions arise.

14

In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court explained that § 1782 does *not* need a related civil action. The statute requires only that "adjudicative proceedings" be "within reasonable contemplation." *Id.* at 259. *Intel* was clear that this standard made "judicial assistance [] available 'whether the foreign or international proceeding or *investigation* is of a criminal, civil, *administrative*, or other nature.'" *Id.* (quoting S. Rep. No. 1580, at 9) (second emphasis added). The Court noted, for example, that § 1782 expressly includes "criminal investigations conducted before formal accusation." *Id.*

Indeed, *Intel* itself is a perfect example: that very case involved an administrative inquiry that had "not progressed beyond the investigative stage" and for which "no adjudicative action [was] currently or even imminently on the [] agenda." *Id.* at 258. Section 1782 applications, in short, may arise without a related civil proceeding just as an administrative warrant like the one at issue in *ALCOA*: one does not require a tighter nexus to a "related civil proceeding" than the other. *See Republic of Turk. v. Cicek*, 2020 WL 8073613 (D.N.J. June 4, 2020) (treating a § 1782 motion as dispositive due to Third

15

Circuit precedent holding administrative subpoenas to be dispositive).[3]  This Court is bound to follow *ALCOA*'s instruction that in a standalone discovery proceeding, whether a matter is dispositive is assessed with respect to the "relief requested," rather than with respect to other proceedings, actual or contemplated.  *ALCOA*, 663 F.2d at 501.

The Magistrate Judge's reliance on *In re Naranjo*, 768 F.3d 332, 338 n.4 (4th Cir. 2014) and *In re Amtsgericht Ingolstadt*, 82 F.3d 590 (4th Cir. 1996) to conclude that § 1782 proceedings are not dispositive matters was misplaced because neither addressed whether § 1782 applications must be decided by an Article III judge.  "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."  *Webster v. Fall*, 266 U.S. 507, 511 (1925); *see also Mays v. Sprinkle*, 992 F.3d 295, 302 n.4 (4th Cir. 2021).  "[C]ourts often decide 'particular legal issues while assuming without deciding the validity of antecedent propositions, and such assumptions are not binding in future cases that directly raise the questions.'"  *United States v. Norman*, 935 F.3d 232, 241 (4th Cir. 2019).  If anything, *Naranjo*, as well as the Tenth

---

[3] All of the cases cited by the Magistrate Judge that addressed this question (outside of *Cicek* and *Plowiecki*) either were not bound by or failed to grapple with precedent requiring a district judge to decide administrative search warrants and subpoenas.

Circuit case cited by the Magistrate Judge, *In re Republic of Ecuador*, 735 F.3d 1179, 1182 (10th Cir. 2013), reinforce a § 1782 proceeding's dispositive nature since both held that the disposition of such a proceeding was "final" for purposes of § 1291 appellate jurisdiction. *Naranjo*, 768 F.3d at 347 ("Lacking an 'underlying' proceeding, many of the concerns that make us reluctant to review discovery orders on an interlocutory basis disappear."); *In re Republic of Ecuador*, 735 F.3d at 1183; *see also Singletary v. Dobey,* 500 F. App'x 223, 224 (4th Cir. 2012) (a "magistrate judge [is] authorized to make only determinations that do not constitute final judgments"). These cases thus confirm that a decision on a § 1782 application is a final, dispositive decision that must be made by an Article III judge.[4]

This Court should quash the subpoenas because they were issued without valid authority. Further, all of the same logic means that the Magistrate Judge's decision on the Motion itself was improper: the judge had no power to issue an order, and could instead offer only a report and recommendation. The

---

[4] Applicants argued that *ALCOA*'s holding that the motion to quash there was dispositive was distinguishable because the movants in that case asked for other discovery-related relief that would flow from quashing the warrant. *See ALCOA*, 663 F.2d at 500 n.2. But nothing in the decision turned on the kind of relief requested. All that mattered was that the motion "set forth all of the relief requested." *ALCOA*, 663 F.2d at 501. And if Applicants were correct, then the *ALCOA* court would have at least reached the merits of the Magistrate Judge's denial of quashing relief.

17

Court should vacate and remand the Order as well for that reason. To the extent that the Court reviews the Order, it should do so *de novo* for this same reason, although the subpoenas should still be quashed under a clear error standard.

## II. The Magistrate Judge Erred in Finding the Application Satisfied the Statutory and *Intel* Factors.

### A. The Requested Discovery Is Not "For Use" in the Foreign Proceedings.

Discovery that is "plainly irrelevant to the foreign proceeding" cannot "be said to be 'for use' in that foreign proceeding." *In re Escallón*, 323 F. Supp. 3d 552, 558 (S.D.N.Y. 2018) (quoting *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 n.7 (2d Cir. 2015)); *see also In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018) ("a request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory 'for use' requirement…."). If a § 1782 discovery request "appears to be little more than a fishing expedition to acquire documents and information that have at best limited relevance to the [foreign] [p]roceedings," then the requisite "for use" element is not satisfied, and the "application must be denied on statutory grounds." *In re Escallón*, 323 F. Supp. 3d at 559.

The discovery sought by Applicants here is "plainly irrelevant" to the

18

claims in the Foreign Proceedings. Applicants seek "[a]ll" communications between Movants and third party CyberRoot. Dkts. 3-1, 3-2. But CyberRoot has no connection to the Foreign Proceedings, and is not alleged to have been involved in any misconduct against the Applicants. The Applicants do not, and have not, claimed otherwise. Instead, as Movants explained in their Motion, because Applicants' claims are not tied to their own proceedings, they seek to tie their claims to the claims of an unrelated third party, Azima. Their theory is that, because Del Rosso and CyberRoot are alleged to have hacked Azima in 2015 or 2016, Del Rosso and VMS's documents and testimony would aid them in "determining the identity of those behind the hacking campaign targeting Mr. Al Sadeq's Legal and Support Team" in 2020. Dkt. 2 at 18. But that theory is flawed both because the underlying proceedings are not about hacking and because Applicants' vague assertions and speculation do not establish any cognizable link between the requested discovery and their foreign claims. *See In re Diligence Glob. Bus. Intelligence S.A.*, 2021 WL 2156278, at *2 (S.D.N.Y. May 27, 2021).

The Magistrate Judge concluded that the discovery could go forward on the basis that the truth or falsity of Azima's claim that he was hacked by RAK's purported agents is relevant to Al Sadeq's claim that he was falsely accused of crimes and imprisoned for politically motivated reasons. *See* Order at 91. That

19

is incorrect.

The Magistrate Judge posits that Azima's emails "implicate[d] Al Sadeq in an alleged fraud" and therefore, "the circumstances by which the Ruler obtained Azima's emails . . . [are] relevant to Al Sadeq's claims regarding the Ruler's politically motivated campaign against Al Sadeq." *Id*. This theory turns the allegations in the record on their head. Al Sadeq alleges that he was targeted for his connection with Massaad, not Azima. *See id.* at 6 (alleging Al Sadeq "has become collateral damage in the vendetta pursued by the Ruler against Dr Massaad"). The alleged hacking of Azima's email in 2016 came almost two years *after* the events giving rise to Al Sadeq's claims, which began in September 2014. What is more, Al Sadeq was prosecuted and convicted of frauds that are unrelated to the frauds revealed in Azima's emails. Thus, the inference that an alleged political campaign against Azima would demonstrate a similar politically motivated campaign against Al Sadeq has no support in the record.

Nor is there any relationship between Azima's and Stokoe's respective allegations of hacking. The Magistrate Judge rejected Movants' argument that the discovery was not "for use" in the Foreign Proceedings because the pleadings did not allege "hacking," concluding that the argument was one about se-

mantics. *See* Order at 92-93. But the semantics—the actual text of the pleadings of the Foreign Proceedings—are important. Neither involve allegations that CyberRoot, VMS, or Del Rosso hacked anyone. Neither involve any hacking allegations at all. There are no allegations of hacking or any illicit acquisition of any information in the Al Sadeq Proceedings. In the Stokoe Proceedings, the allegations are that Stokoe voluntarily provided third parties with access to its own bank account statements to "covert[ly] track[]" any recipients of the information—not that the bank information was intercepted by hacking. Dkt. 4 ¶¶ 33-35.

The Magistrate Judge's ruling here departs from the findings of another district court. The Applicants' Section 1782 application in the Northern District of California seeking discovery from several technology service providers, premised on the same Foreign Proceedings, was denied. The court there found that "[p]etitioners do not establish a link between the fact that someone might be watching or attempting to hack them and the particular claims at issue in the foreign proceedings." *In re Al Sadeq*, 2021 WL 2828810, at *3 (N.D. Cal. Mar. 30, 2021).[5] Thus, "the information sought, even if probative of hacking," would not be "for use" in the Foreign Proceedings "because it is unclear how

---

[5] The case is now on remand after the Ninth Circuit determined an Article III judge had to decide whether to grant or deny the § 1782 application.

the information would be relevant to the substance of the underlying claims." *Id.*

On appeal, the Ninth Circuit repeatedly questioned whether the Foreign Proceedings involve hacking during oral arguments. *See, e.g.*, Oral Argument, *In re Karam Salah Al Din Awni Al Sadeq & Stokoe P'ship Solic.*, No. 21-16126 (9th Cir.) at 12:09 ("Is there any allegation in the [Stokoe Proceeding] that there was hacking?"); *id.* at 12:43 ("Has the allegation [of hacking] in the [Stokoe Proceeding] been developed in that litigation with enough specificity that the subject of hacking as the method of getting confidential information has been asserted in that case?"). In response, Applicants' counsel conceded that the issue was not "hacking per se, but it is the access . . . to the confidential information of Stokoe." *Id.* at 11:54; *see also id.* at 12:20 ("The allegation that's been made is that improper access to confidential information to impede the representation of Stokoe in connection with the Al Sadeq Litigation.") Because that "improper access" is not alleged to be *via hacking*, the discovery sought here has not even a potential link to it.

Further, even if the Foreign Proceedings were about hacking (which they are not), that still would not justify the discovery requested. The Magistrate Judge did not address Movants' argument that there is nothing but speculation to link the purported hacking of Azima with the purported hacking of Stokoe.

*See* Dkt. 15 at 14-16. Applicants' counsel has admitted as much. When asked whether there were any "articulable facts other than the coincident[al] timing" to support the view that the defendants in either of the Foreign Proceedings were involved in the purported Stokoe hacking attempts, counsel admitted that "the [] answer is no," Oral Argument at 18:45, and argued that Applicants would only be able to learn about the connection through discovery. *Id.* This is precisely the type of "fishing expedition" that is not permitted and does not satisfy the "for use" requirement. *See In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Group LLC*, 2014 WL 3404955, at *7 (S.D.N.Y. July 9, 2014), aff'd, 798 F.3d 113 (2d Cir. 2015) (concluding that petitioners did not satisfy the "for use" requirement because of the court's concern that petitioners were engaging in a "fishing expedition").

At bottom, the Foreign Proceedings do not involve hacking, and even if they did, there is no relationship to the alleged Azima hacking such that Applicants can use the discovery sought here in the Foreign Proceedings. *See, e.g.*, *In re Sargeant*, 278 F. Supp. 3d 814, 822 n.4 (S.D.N.Y. 2017) (finding "for use" factor not satisfied where applicants failed to show that discovery into a separate litigation involving an entirely different subject matter was "remotely relevant to the conduct underlying the [foreign] proceeding").

## B.     The Subpoenas Should Be Narrowed.

Finally, the Magistrate Judge erred by refusing to impose any limitations at all on the discovery requested. Despite the breadth of the discovery requested, its facial irrelevance to the claims at issue in the Foreign Proceedings, and the fact that the discovery seeks material which pre-dates the 2020 events Applicants point to in justifying their request, the Magistrate Judge refused even to limit the temporal scope of the discovery to the periods relevant to Stokoe's claims (i.e. January to April 2020). *See* Order at 96-97.

Discovery under § 1782, as in any other case, must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also, e.g.*, *In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018) (court "may decide to exercise its discretion to exclude" evidence when it "is only marginally relevant"); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995) (court may reject a § 1782 application if it "unreasonably seeks cumulative or irrelevant materials"). The Magistrate Judge authorized all of the broad discovery requested, including depositions, into the relationship between Del Rosso and CyberRoot, relating to a time period that is three to five years before any allegation of an attempt to access Stokoe's information arises in the Foreign Proceedings. Because this discovery is irrelevant to the claims

24

or defenses at issue in the Foreign Proceedings, the burden and expense of discovery cannot be justified.

The Magistrate Judge's observation that Al Sadeq's claims "[began] long before January 2020," Order at 96, is irrelevant because Al Sadeq's claims undisputedly do not involve hacking. The allegation that Del Rosso's earlier investigation into Azima's activities may have implicated Al Sadeq is similarly irrelevant because Al Sadeq does not claim to have been hacked. *Id.* In sum, the only arguably relevant time period is in 2020 and the Court should limit the subpoenas accordingly.

The Magistrate Judge's failure to narrow the subpoenas is at odds with an analogous case from another court in this Circuit, which the Magistrate Judge did not address. In *In Re Green Development Corporation S.A. de C.V.*, a Section 1782 applicant sought discovery from a U.S. author related to his motives for writing an allegedly defamatory article approximately five years earlier, which was purportedly submitted improperly by a party in the applicant's foreign proceedings. 2015 WL 10319091, at *2 (D. Md. Oct. 1, 2015). The court denied the application, holding that "[p]etitioner fails to explain— and this Court is unable to deduce—how [the author's] 'motive' in publishing the allegedly false and defamatory article . . . *four to five years prior* . . . would have any bearing on the [foreign proceeding]." *Id.* at *5. As in *Green*, there is

25

no explanation for how the alleged Azima hacking in 2016 would bear relevance to the alleged surveillance, phishing, or other attempts against Stokoe four years later. Permitting discovery into such irrelevant matters should not be allowed. *See, e.g.*, *Cook v. Howard*, 484 F. App'x 805, 813 (4th Cir. 2012) (quashing subpoenas seeking discovery for ten-year period where material had "no correlation to [present] claims").

The Magistrate Judge's conclusion that "Movants' work with CyberRoot from 2015 to 2017 . . . [is] relevant to . . . Al Sadeq's claims regarding the politically motivated nature of the actions against him" is also incorrect. As explained above, the attempt to link Al Sadeq and Azima's claims together by alluding to similar political motivations contorts the allegations in the record. In any event, evidence that RAK targeted another party goes no further to prove Al Sadeq's claims of due process violations from two years prior to the alleged Azima hacking, or Stokoe's claims of hacking four years later. The burden of the broad discovery, including depositions, simply cannot be justified in light of the tenuous connection to the claims at issue. *See, e.g.*, *In re Schlich*, 893 F.3d at 52.

## III. The Magistrate Judge Erred in Failing to Exclude the Robinson Affidavit and Relying on Hearsay Evidence.

The Magistrate Judge erred in admitting and taking cognizance of the

foreign-sworn Robinson affidavit. *See* Order at 70. The Magistrate Judge concluded, without analysis, that the affidavit's failure to comply with the Hague Convention did not matter because Movants were "not challeng[ing] the authenticity of Robinson's affidavit." *Id.* But Movants did, in fact, challenge the authenticity of the affidavit. Dkt. 19 at 12. And Applicants' failure to authenticate the document is a bar to its admission. *See In re Barkats*, 2014 WL 2993723, at *2 (Bankr. D.D.C. July 3, 2014) (striking non-compliant affidavit that was made "under penalty of perjury" without reference to U.S. law). Nor does the affidavit satisfy 28 U.S.C. § 1746. *See In re Veiga*, 746 F. Supp. 2d 27, 37 (D.D.C. 2010) (rejecting non-compliant declaration).

The Magistrate Judge also erred with respect to Applicants' hearsay evidence. He ruled that he "need not resolve" Movants' hearsay objections to the fabricated invoices, Dkt. 18-5, and Paragraphs 11 and 21 of Robinson's declaration because "exclusion of the challenged materials does not impact resolution of the Motion." Order at 70 n.37, 71. But the judge in fact relied on each of the challenged materials. *See id.* at 47, n.25 (invoices); *id.* at 89 (reciting Lowe statements from Paragraph 21); *id.* at 86, 97 (reciting Grayson statements from Paragraph 11 that Movants paid for Robinson's work, including to support decision not to narrow subpoenas). The Magistrate Judge erred in relying on hearsay, and the Court should at a minimum correct the error and

27

remand for reconsideration.

## CONCLUSION

Movants respectfully request that this Court sustain their objection and grant their motion to quash.

Respectfully submitted this 1st day of April, 2022.

<div style="margin-left:auto; text-align:left; width:50%;">

**NELSON MULLINS RILEY &
SCARBOROUGH, LLP**

By:    */s/  Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Movants*

</div>

28

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify, subject to Fed. R. Civ. P. 11, that the accompanying brief contains 6,246 words, according to the word count feature of the word processing system used to prepare the brief. Accordingly, the brief does not exceed the 6,250 word limitation.

Respectfully submitted this 1st day of April, 2022.

<div align="right">

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By:  */s/ Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Movants*

</div>

29

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April, 2022, I electronically filed the foregoing **Nicholas Del Rosso and Vital Management Services, Inc.'s Objection to Magistrate Judge's Opinion and Order on Motion to Quash** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to the following:

Jonathan Townsend
Christopher W. Jones
Ripley Rand
Womble Bond Dickinson(US) LLP
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601
jonathan.townsend@wbd-us.com
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Calvin Lee
Ian Herbert
Brian Hill
Kirby D. Behre
Miller & Chevalier Chartered
900 16th Street, NW
Washington, D.C. 20006
clee@milchev.com
iherbert@milchev.com
bhill@milchev.com
kbehre@milchev.com

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By:     */s/ Brandon S. Neuman*
Kieran J. Shanahan, NCSB# 13329
Brandon S. Neuman, NCSB# 33590
Jeffrey M. Kelly, NCSB# 47269
Nathaniel J. Pencook, NCSB# 52339
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina, 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
kieran.shanahan@nelsonmullins.com
brandon.neuman@nelsonmullins.com
jeff.kelly@nelsonmullins.com
nate.pencook@nelsonmullins.com
*Counsel for Movants*

30