IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:21-mc-00006-UA-LPA

---------------------------------------------------------X

*In re* **Application of KARAM SALAH AL
DIN AWNI AL SADEQ and STOKOE
PARTNERSHIP SOLICITORS for an
Order under 28 U.S.C. § 1782 to Conduct
Discovery for Use in Foreign Proceedings**

---------------------------------------------------------X


**RESPONSE TO NICHOLAS DEL ROSSO AND VITAL MANAGEMENT'S
OBJECTION TO ORDER DENYING
<u>MOTION TO QUASH OR FOR A PROTECTIVE ORDER</u>**

This matter involves an application by Karam Salah Al Din Awni Al Sadeq ("Al

Sadeq") and Stokoe Partnership Solicitors ("Stokoe") for an order under 28 U.S.C. § 1782

to conduct discovery for use in a foreign proceeding (the "1782 Application"). Al Sadeq

is currently imprisoned in Ras Al Khaimah ("RAK"), one of the constituent Emirates of

the United Arab Emirates ("UAE"), and has brought suit in England claiming that he was

unlawfully kidnapped, forced to provide false confessions and is being unlawfully detained

in violation of UAE law (the "Al Sadeq Litigation"[1]). In the Al Sadeq Litigation, Mr. Al

Sadeq alleges that the defendants Dechert, LLP ("Dechert UK"), Neil Gerrard ("Gerrard"),

---

[1] References to the Al Sadeq Litigation refer to the claim currently pending in the High Court of Justice of England
and Wales, Queen's Bench Division, captioned: *Karam Salah Al Din Awni Al Sadeq v. Dechert, LLP, Neil Gerrard,
David Hughes, and Caroline Black*, Claim No. QB-2020-000322, wherein Stokoe is representing Mr. Al Sadeq as
the claimant. The Applicants respectfully refer the Court to the Memorandum of Law in Support of the 1782
Application (Dkt. 2), the Declaration of Haralambos Tsiattalou filed therewith (Dkt. 4) and the Supplemental
Declaration of Haralambos Tsiattalou (Dkt. 6) for a recital of the facts and conduct underlying the Al Sadeq
Litigation.

1

David Hughes ("Hughes"), and Caroline Black ("Black"), committed serious wrongs against him in the course of an investigation undertaken by them, into alleged fraud committed by Dr. Khater Massaad ("Dr. Massaad"), Mr. Farhad Azima ("Azima") and others, including Al Sadeq, against their former employer, the RAK Investment Authority ("RAKIA"). Al Sadeq denies any involvement in wrongdoing and maintains that the charges against him were politically motivated on the part of the Ruler of RAK in an attempt to conceal the Ruler's own close involvement in RAKIA's activities, and that he was convicted on the basis of false confessions obtained from him under duress by the defendants in the Al Sadeq Litigation. *See* Declaration of Haralambos Tsiattalou (hereinafter "Tsiattalou Decl."), Ex. A, ¶ 1 (Dkt. 4)

Stokoe are the solicitors who represent Mr. Al Sadeq in the Al Sadeq Litigation and are seeking to recover damages for him and vindicate his rights. *Id.* ¶ 1. Following the initiation of the Al Sadeq Litigation, Mr. Al Sadeq's legal team, which includes Stokoe, 4 Stone Buildings (a UK-based barristers' chambers) and others assisting the legal team such as Maltin Litigation Support Group (a legal public relations and litigation support group) and Detained in Dubai (a human rights advocacy organization) (collectively "Al Sadeq's Legal and Support Team"), has become the target of overt and covert surveillance, numerous phishing and spear-phishing attacks, and the hacking of Stokoe's IT system, which rendered Stokoe's IT system inaccessible for days shortly prior to a hearing on Stokoe's claims (collectively referred to as the "hacking scheme"). *See, e.g.*, *id.* ¶¶ 43-47. Stokoe has brought subsequent proceedings in England to seek evidence from those individuals thought to be involved in the hacking scheme, one of which was resolved by

consent order (the "Robinson Proceeding"[2]), and one of which is ongoing (the "Grayson Proceeding").[3] *Id.* at ¶ 39. Mr. Al Sadeq and Stokoe allege that the hacking scheme has sought to disrupt Stokoe's representation of Mr. Al Sadeq, obtain privileged information concerning his action and deter the representation that he deserves.

In this proceeding, Al Sadeq and Stokoe have sought discovery from Nicholas Del Rosso ("Del Rosso") (an investigator who was engaged by one of the defendants in the Al Sadeq Litigation) and his company Vital Management Services Inc. ("Vital Management"). Al Sadeq and Stokoe seek to depose Del Rosso and Vital Management and have also sought documents related to the involvement of Del Rosso and Vital Management with an Indian company named "CyberRoot." CyberRoot is alleged to be a "hack for hire" firm, and there is evidence that establishes payments by Del Rosso to CyberRoot. *See id.* at ¶ 32. Al Sadeq and Stokoe have provided evidence that strongly links Del Rosso and Vital Management to the conduct at issue in the Al Sadeq Litigation and Grayson Proceeding, and they now seek certain related documents and to depose both Del Rosso and Vital Management.

In a 42-page Memorandum Opinion and Order dated October 18, 2021 (the "October 2021 Order") (Dkt. 7), Magistrate Judge Auld granted the 1782 Application,

---

[2] Paul Robinson ("Robinson") and his associated company, Company Documents Limited, were named defendants in a separate but related proceeding initiated by Stokoe captioned: *Stokoe Partnership Solicitors v. Mr. Paul Robinson, Company Documents Limited, and Mr. Oliver Moon*, Claim No. QB-2020-002218 (the "Robinson Proceeding"). As is more fully set forth in the 1782 Application, as a result of a consent order entered into between the parties in the Robinson Proceeding, Robinson submitted an affidavit implicating Grayson as the source of his instructions to obtain confidential information from Stokoe. (Tsiattalou Supp. Decl. ¶ 6). The contents of that affidavit served as the initial basis of the claims asserted by Stokoe in the Grayson Proceeding.
[3] The proceedings filed by Stokoe against Robinson and Grayson are known as *Norwich Pharmacal* proceedings, which allow a litigant to obtain an order in the English High Court of Justice requiring certain persons to disclose documents. *See Norwich Pharmacal Co. v. Customs and Excise Commissioners*, [1974] AC 133 (Eng.).

3

allowing Al Sadeq and Stokoe to serve subpoenas on Del Rosso and Vital Management. On November 30, 2021, Del Rosso and Vital Management moved to quash the subpoenas that had been issued pursuant to October 2021 Order. On March 18, 2022, in a 97-page Memorandum Order and Opinion (the "March 2022 Order") (Dkt. 20), Magistrate Judge Auld denied Del Rosso and Vital Management's motion to quash and for a protective order. Del Rosso and Vital Management filed an Objection to that order on April 1, 2022.

As set forth below, in highly detailed October 2021 and March 2022 Orders, Magistrate Judge Auld fully considered and rejected the three arguments that Del Rosso and Vital Management raise in their Objection. First, Magistrate Judge Auld, consistent with the majority rule, correctly found that he had the authority to grant the Section 1782 Application and the motion to quash. *See* March 2022 Order at 55-61. Second, Magistrate Judge Auld correctly applied Section 1782 and the factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), to find that Al Sadeq and Stokoe have met the statutory criteria and applicable discretionary factors to grant the 1782 Application. Third, Del Rosso and Vital Management's claim that the magistrate judge should have rejected the Robinson Declaration is contradicted by the very cases that they cite in their Objection. Notably, Del Rosso and Vital Management make no credible argument that the requested discovery is burdensome or should be narrowed.

## I. The Magistrate Judge Had Authority to Grant the Section 1782 Application and Deny the Motion to Quash.

Del Rosso and Vital Management's first argument is that Magistrate Judge Auld lacked authority to grant the Section 1782 application and deny the motion to quash the

subpoena because it was a dispositive matter. That argument has been repeatedly rejected. "The great majority of courts to address the issue have found that a magistrate judge has jurisdiction to issue an order on a motion to quash a Section 1782 subpoena (and other Section 1782 discovery motions)." *In re Pons*, 2020 WL 1860908, at *3 (S.D. Fla. Apr. 13, 2020) (collecting cases). *See also JSC MCC EuroChem v. Chauhan*, 2018 WL 3872197, at *1 (M.D. Tenn. Aug. 15, 2018) ("The majority of persuasive authority on this topic concludes that a magistrate judge's ruling on a motion for discovery under 28 U.S.C. § 1782(a) is nondispositive."). The Second Circuit—the only federal court of appeals to consider the question directly—has agreed that decisions pertaining to Section 1782 applications are non-dispositive, subject to magistrate judge orders, and properly reviewed by the district court under a clear error standard. *Sampedro v. Silver Point Capital, L.P.*, 958 F.3d 140, 142 n.1 (2d Cir. 2020). Movants offer no compelling reason for this court to deviate from the clear weight of authority on this issue.

"Section 1782 petitions are a special creature in the law, because they necessarily contemplate that there is or may be some other proceeding outside the control of the court addressing the application." *In re Plowiecki*, 2021 WL 4973762, at *5 (D. Minn. Oct. 26, 2021) (citing *Intel Corp.*, 542 U.S. at 247). Accordingly, although a magistrate judge's ruling on a Section 1782 application or related motion to quash "may resolve the entire action before the court to which the application is addressed, the court's ruling will not resolve the entire litigation because a related civil action is pending or in reasonable contemplation in another country." *Id.* By nature, "in a § 1782 proceeding, there is nothing to be done 'on the merits.'" *Repub. of Ecuador v. For Issuance of a Subpoena*

*Under 28 U.S.C. § 1782(a)*, 735 F.3d 1179, 1182 (10th Cir. 2013). "The only issue before the district court is discovery; the underlying litigation rests before a foreign tribunal." *Id.* Because decisions to grant or deny Section 1782 applications are "not dispositive of a claim or defense of a party," they are non-dispositive and may be resolved by order, rather than a report and recommendation. *In re Duizendstraal*, 1997 WL 195443, at *1 (N.D. Tex. Apr. 16, 1997). Magistrate Judge Auld correctly applied this authority.

Contrary to Movants' argument, *Aluminum Co. of America, Badin Works, Badin, N.C. v. EPA*, 663 F.2d 499 (4th Cir. 1981) ("*ALCOA*"), does not compel and should not persuade this court to rule differently. In *ALCOA*, the Fourth Circuit held that a federal agency's ex parte application for an administrative search warrant was a dispositive matter rather than a non-dispositive pretrial matter because it "set forth all of the relief requested." *ALCOA*, 663 F.2d at 501.

Unlike a Section 1782 application, an administrative search warrant need not involve a related civil action pending or in reasonable contemplation in another forum. To the contrary, "for an administrative warrant to issue, (1) there must be specific evidence of an existing violation, or (2) the search must be part of a general neutral administrative plan." *Nat'l-Standard Co. v. Adamkus*, 881 F.2d 352, 361 (7th Cir. 1989) (citing *Marshall v. Barlow's Inc.*, 436 U.S. 307, 320-21 (1978)). In other words, an administrative search warrant may be entirely disconnected from any actual or potential litigation. A decision related to an administrative search warrant is therefore dispositive of all issues presented.

6

As the Magistrate Judge Auld recognized, this reasoning does not apply to Section 1782 applications, which necessarily involve related or reasonably contemplated proceedings in another forum. Accordingly, *ALCOA* is not persuasive here. *Accord In re Plowiecki*, 2021 WL 4973762, at *4-5 ("[A]n administrative subpoena *duces tecum* [is] distinguishable from a § 1782 subpoena because in the former there is not necessarily a 'related civil action,' while a § 1782 subpoena requires a related proceeding at least 'in reasonable contemplation.'" (internal citation omitted)).[4]

Cases involving motions to quash subpoenas issued in one jurisdiction while litigation is pending in another are more instructive than *ALCOA*. In one such case, *Jordan v. Commissioner, Mississippi Department of Corrections*, 947 F.3d 1322 (11th Cir. 2020), the Eleventh Circuit stated that there is "no reason" to treat motions to quash filed in a different district from related litigation "any differently than we would treat a similar pretrial discovery motion had it been filed in the district where the [related] action is pending." 947 F.3d at 1328. That the proper venue for seeking a subpoena or filing a related motion to quash happens to be in a different venue than the related litigation "does not somehow transform into a dispositive ruling a routine pretrial discovery motion that is ancillary to the" related litigation pending in another forum. *Id. See also Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *2 (D. Nev. Aug. 14, 2014) ("That subpoena-related motions come before the court in the context of a

---

[4] Movants' suggestion that the magistrate judge distinguished *ALCOA* purely by "limiting it to its facts" mischaracterizes the March 2022 Order. Magistrate Judge Auld discussed *In re Plowiecki* and similar cases explaining that the absence of a related proceeding at least in reasonable contemplation rendered decisions on administrative subpoenas and warrants fundamentally unlike Section 1782 applications. March 2022 Order at 58-59.

miscellaneous action based entirely on the disputed subpoenas does not alter [the] conclusion" that the action is non-dispositive, "even though the magistrate judge's resolution of the motions may be dispositive of the miscellaneous action."); *Feist v. RCN Corp.*, 2012 WL 4835038, at *1 (N.D. Cal. Oct. 4, 2012) ("[A]lthough resolution of the motions to quash will resolve all the issues in this Court, resolution of the motions to quash will not resolve *all* of the proceedings in federal court."); *Verso Paper, LLC v. HireRight, Inc.*, 2012 WL 2376046, at *4 (S.D. Miss. June 22, 2012) (same).

As these cases demonstrate, "a motion seeking discovery as an aid to a later adjudication by a court or tribunal is not a 'dispositive' motion . . . even if it is brought in a special proceeding whose only purpose is to obtain that discovery." *In re Hulley Enters.*, 358 F. Supp. 3d 331, 341-42 (S.D.N.Y. 2019) (collecting cases). That this court is the appropriate venue for a Section 1782 application directed at Movants does not transform an otherwise ordinary, pretrial discovery motion into a dispositive motion on which a magistrate judge may issue only a report and recommendation. Because a ruling on the Section 1782 application does not resolve all issues related to the foreign litigation, it is non-dispositive, properly subject to a magistrate judge's order, and should be reviewed for clear error.

In another misplaced attack, Movants assert that the March 2022 Order improperly "relied" and treated as controlling *In re Naranjo*, 768 F.3d 332 (4th Cir. 2014), and *In re Amtsgericht Ingolstadt*, 82 F.3d 590 (4th Cir. 1996). This assertion mischaracterizes the March 2022 Order. As Magistrate Judge Auld explained, *In re Naranjo* and *In re Amtsgericht* affirmed, under an abuse of discretion standard, district court decisions

8

finding no clear error in magistrate judge orders authorizing discovery pursuant to Section 1782. In reviewing the orders, the Fourth Circuit never suggested that the district courts applied the wrong standard of review. Because "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law," *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014) (internal quotation marks omitted), including a misapprehension of the appropriate standard of review, Magistrate Judge Auld reasoned that the Fourth Circuit "has repeatedly acted consistently with the majority view that magistrate judges may determine" Section 1782 applications and that those determinations are reviewed for clear error by the district court, March 2022 Order at 61.

Magistrate Judge Auld acknowledged that neither *In re Naranjo* nor *In re Amtsgericht* "explicitly held that Section 1782 applications qualify as matters which magistrate judges may determine." March 2022 Order at 61. The March 2022 Order characterized *In re Naranjo* and *In re Amtsgericht* as examples of the Fourth Circuit "repeatedly act[ing] consistently with the majority view that magistrate judges may determine" Section 1782 applications. *Id.* The March 2022 Order did not, as Movants contend, treat these cases as binding precedent deciding the issue presented here.[5]

---

[5] Movants' assertion that *In re Naranjo* and other cases holding that decisions on Section 1782 applications are final appealable orders support the conclusion that those decisions are dispositive under Rule 72 is incorrect. These analyses are separate and distinct. *See In re Chevron Corp.*, 2010 WL 8786202, at *2-3 (D.N.M. Sept. 13, 2010) ("[T]he court did not rule that a magistrate judge assessing a section 1782 application may never issue a binding order subject to review by a district court for clear error, [but instead] ruled that . . . the order to compel discovery was not a final appealable order until the district court acted on it in some way.").

9

Del Rosso and Vital Management incorrectly claim that Al Sadeq and Stokoe argued in an appeal of a denial of their Section 1782 application to the Ninth Circuit that the application was a dispositive order that the magistrate judge in that case lacked the authority to enter. This argument miscasts what occurred in the Ninth Circuit. In the Ninth Circuit case, the appellate court raised a question during oral argument as to whether the denial of the Section 1782 application and a motion for reconsideration were final orders within the meaning of 28 U.S.C. § 1291. Al Sadeq's argument in that case turned principally on a local rule in the Northern District of California, which required that the parties consent in writing to appearing before a magistrate judge. Because Al Sadeq and Stokoe did not expressly consent in writing to the magistrate judge conducting the proceedings on their Section 1782 application, Al Sadeq and Stokoe argued the decisions were not final orders. Central to this argument was the fact that the district court never reviewed the magistrate judge's ruling on the Section 1782 application or the motion for reconsideration. Stokoe and Al Sadeq contended that, because no final order was entered, the appeal should be dismissed for lack of jurisdiction and the case remanded to the district court to review the magistrate judge's order and enter final judgment. In contrast, here, the district court is now reviewing the order entered by Magistrate Judge Auld.

With respect to whether an order on a Section 1782 application is dispositive or non-dispositive, in the context of the Ninth Circuit appeal, Al Sadeq and Stokoe described the issue as "far from settled" in the Ninth Circuit and noted that the unsettled nature of the law in the Ninth Circuit weighed in favor of a district court judge resolving

10

a Section 1782 application in the first instance. In the confusing procedural context of the Ninth Circuit appeal, Al Sadeq and Stokoe noting that the Ninth Circuit law on this issue was "far from settled" is hardly equivalent to those parties making a contrary argument, as Del Rosso and Vital Management now contend.

## II. The Magistrate Judge Correctly Concluded that the Section 1782 Application Met the Standards of 28 U.S.C. § 1782 and the *Intel* Factors.

Federal courts may grant discovery within the United States for use in a foreign proceeding under 28 U.S.C. § 1782(a), which requires that "(1) the applicant is an interested person, (2) the discovery production is for use in a proceeding, and (3) the person at whom the order is directed resides in the district where the motion was filed." *RF Micro Devices, Inc. v. Xiang*, No. 1:12CV967, 2013 WL 12136502, at *1 (M.D.N.C. Nov. 4, 2013). Federal courts must also address the discretionary factors that the Supreme Court set forth in the seminal case of *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). These factors include: (1) "whether the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) "whether the request is otherwise unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 264-65.

In the October 2021 and March 2022 Orders, Magistrate Judge Auld sets forth in detail why the 1782 Application met the standards of 28 U.S.C. § 1782 and the *Intel* factors.

*See* October 2021 Order at 34-41; March 2022 Order at 65-94.  In their Objection, Del Rosso and Vital Management have abandoned most of their earlier arguments and now limit their objection to the argument that the requested discovery is not "for use" in the proceedings in the United Kingdom because it is irrelevant.  *See* Objection at 18-23.  The "for use" standard is not robust, and it has been described as imposing a "*de minimis* burden" upon a Section 1782 applicant.  *See In re Veiga*, 746 F. Supp. 2d 8, 18-19 (D.D.C. 2010) (collecting cases).  As set forth below, the record establishes the relevance of the discovery sought in the Al Sadeq Litigation and Grayson Proceeding, and Magistrate Judge Auld correctly found that it would be both relevant and for use in those proceedings.

Del Rosso and Vital Management make two arguments as to why the requested discovery is not for use in a foreign proceeding:  (i) that the discovery sought by Al Sadeq and Stokoe is not tied to their proceedings in the United Kingdom but to proceedings brought by an unrelated third party, Azima; and (ii) that the pleadings of Al Sadeq and Stokoe in the United Kingdom did not involve hacking.  Magistrate Judge Auld addresses both arguments in detail in the March 2022 Order.

With respect to the first argument, Magistrate Judge Auld reviews in detail the record evidence linking Del Rosso to the investigators, including Robinson, Grayson and Page, who have been involved in the surveillance and fact gathering involving Azima, Al Sadeq and Stokoe over the period in question.  *See* March 2022 Order at 86-94.  As accurately stated by Magistrate Judge Auld:

> Ample direct and circumstantial evidence ties [Del Rosso and Vital Management] to the Defendants in the [Al Sadeq Litigation and Grayson Proceeding] and the alleged wrongs against Al Sadeq and Stokoe.  For

12

instance, Robinson and Grayson directly connect Del Rosso to the attempts to gain confidential information regarding Stokoe in 2020 that both the Hacking Claims and the Amended Al Sadeq Claim challenge. In turn, a former CyberRoot employee reports that he and his CyberRoot colleagues hacked Azima's emails on Del Rosso's instructions, emails that allegedly implicate Al Sadeq in the fraudulent sale of RAKIA assets in Georgia.

March 2022 Order at 90.

Magistrate Judge Auld also correctly concluded that the crux of Al Sadeq's claims in the United Kingdom is that he was a pawn in the Ruler of the RAK's vendetta against Dr. Massaad that led Al Sadeq, while unlawfully detained and under duress, to falsely implicate Dr. Massaad, Azima and Mikadze by late 2015. *Id.* at 91-92. Magistrate Judge Auld correctly notes that Del Rosso was part of the "massive investigation of assets potentially stolen from RAK's government, including potentially by Dr. Massaad and others," *id.* at 92, and that CyberRoot was tied to that work, *id.* Magistrate Judge Auld appropriately found that the links of Del Rosso and Vital Management to the Ruler of the RAK, the investigations of Massaad, Azima and Al Sadeq, and the later investigation into Stokoe's representation of Al Sadeq establish that the evidence sought by Al Sadeq and Stokoe is relevant to and for use in the Al Sadeq Litigation and Grayson Proceeding.

Magistrate Judge Auld also appropriately rejected the argument of Del Rosso and Vital Management that the subpoenas do not involve hacking as "semantic." *Id.* at 92-93. Magistrate Judge Auld noted that Del Rosso and Vital Management ignored the claims of "illicit surveillance and attempts to gain access to Al Sadeq's Legal and Support Team's confidential information to impede Stokoe's representation of Al Sadeq." *Id.* He also noted that the Amended Al Sadeq Claim alleges that the Dechert Defendants in that action

Case 1:21-mc-00006-WO-LPA   Document 22   Filed 04/15/22   Page 13 of 19

participated in a conspiracy to unlawfully obtain confidential and privileged information and to disrupt Al Sadeq's access to legal counsel. *Id.* at 93.

Al Sadeq and Stokoe also bring to the Court's attention that the claims in the Al Sadeq Litigation have been amended to specifically refer to the evidence of unlawful attempts to gain information from Stokoe and others by means of phishing, spear-phishing, hacking and surveillance as well as allegations regarding the role of Del Rosso, Vital Management and CyberRoot. *See* Re-Amended Particulars of Claim dated 9 March 2022 pursuant to CPR 17.1(2)(b) by order of Mr. Justice Edward Murray dated 15 February 2022 at ¶¶ 215A.1 -216. In the Grayson Proceeding, Stokoe has amended its claim to add Dechert LLP and David Gerrard and to add allegations regarding spear-phishing emails directed to Stokoe and others working on the Al-Sadeq litigation and the involvement of Del Rosso and Vital Management. *See* Re-Re Amended Particulars of Claim under CPR 17.1(2)(a) dated 9 March 2022 at ¶¶ 11A, 14(5), 15A, 19B-19C. These amended pleadings are filed with this response. *See* Declaration of Haralambos Tsiattalou and Exhibits A and B filed herewith. Both pleadings now contain allegations describing the role of Del Rosso and Vital Management in those proceedings and reinforce that the requested discovery is relevant and for use in those proceedings.

## III. The Magistrate Judge Correctly Concluded that the Robinson Declaration Is Admissible.

Movants' challenge to the authenticity and admissibility of the Robinson Declaration has no basis. The Robinson Declaration complies with the requirements in

14

28 U.S.C. § 1746(1) for declarations executed outside of the United States. Magistrate Judge Auld did not err in concluding that the Robinson Declaration is admissible.

Section 1746(1) "permits litigants to file unsworn declarations under penalty of perjury in lieu of affidavits, when executed outside of the United States." *In re Barkats*, 2014 WL 2993723, at *2 (D.C. Bankr. July 3, 2014). To be admissible, these declarations must be "in writing," signed, and take "substantially the . . . form" set forth in the statute: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." 28 U.S.C. § 1746(1).

The Robinson Declaration states: "Pursuant to 27 U.S.C. § 1746, I declare under penalty of perjury the foregoing is true and correct." This declaration takes "substantially" the same form as the statute, and, therefore, is admissible.

Case law interpreting Section 1746(1) supports this conclusion. According to the plain language of the statute, "the statement of verification [or declaration] need not be identical to the statutory language to suffice." *U.S. v. 8 Gilcrease Lane, Quincy Fla. 32351*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008). For example, "although the statute includes the language 'under the laws of the United States of America,'" courts have found that including this or similar language "is not a rigid requirement." *Matsuda v. Wada*, 101 F. Supp. 2d 1315, 1322 (D. Haw. 1999). Instead, a declaration need only include the phrase "under penalty of perjury" and state "that the document is true" to be admissible under Section 1746(1). *Id.* (quoting *Kersting v. United States*, 865 F. Supp. 669, 676 (D. Haw. 1994)). *See also 8 Gilcrease Lane*, 587 F. Supp. 2d at 139 ("[T]here

15

are two statements that are essential to a proper verification under § 1746: (i) an assertion that the facts are true and correct; and (ii) an averment that the first assertion is made under penalty of perjury." (citing *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988))); *Powell v. Profile Design LLC*, 838 F. Supp. 2d 535, 540 (S.D. Tex. 2012) (deeming compliant with Section 1746 a declaration stating "under penalty of perjury that the foregoing is true and correct").[6]

The Robinson Declaration complies with both of these requirements, and also makes reference to the laws of the United States. There is no colorable claim that the Robinson Declaration fails to satisfy Section 1746(1).

The cases Movants cite do not support a contrary conclusion. In *In re Barkats*, a bankruptcy court concluded that a declaration did not satisfy Section 1746(1) where it "was made simply 'under penalty of perjury,' without reference to the laws of the United States of America." 2014 WL 2993723, at *2. That conclusion does not apply here, where the Robinson Declaration specifically references—and, by that reference, incorporates—Section 1746. *In re Veiga*, 746 F. Supp. 2d 27 (D.D.C. 2010), is even less supportive of Movants' argument. In that case, the declaration deemed inadmissible stated only, "I solemnly declare, on my honor and conscience, that what I have stated above is the truth to the best of my knowledge." 746 F. Supp. 2d at 37. The declaration was also unsigned. *Id.* This defective declaration is not even arguably similar to the one

---

[6] Going a step farther, the Second Circuit has deemed compliant with Section 1746(1) even a declaration that did not state that its contents were "true and correct." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999) (deeming compliant a declaration stating, "Under penalty of perjury, I make the statements contained herein").

16

at issue here, which specifically references United States law, states that the declarant is subject to penalty of perjury, unequivocally states that the declaration's content is true and correct, and is signed.

The Robinson Declaration complies with Section 1746(a), and Magistrate Judge Auld did not err in admitting it.

## IV.    Conclusion

The Al Sadeq Litigation involves serious human rights abuses.  The attempts to interfere with Stokoe's representation of Al Sadeq show the lengths to which bad actors will go to frustrate the vindication of basic human rights.  In his extraordinarily detailed and thorough October 2021 and March 2022 Orders, Magistrate Judge Auld carefully evaluated the record and concluded that it supported granting the 1782 Application and denying the motion to quash.  There is no basis to find clear error.  Indeed, Al Sadeq and Stokoe submit that Magistrate Judge Auld's Orders will stand up to any level of review, including de novo review, based on the record in this matter and the standards set forth in 28 U.S.C. § 1782 and *Intel*.

The biggest enemy of Al Sadeq and Stokoe is time.  Over a year has passed since Al Sadeq and Stokoe filed their 1782 Application on February 5, 2021.  The litigation in the United Kingdom is progressing, and delay in the discovery sought by Al Sadeq and Stokoe compromises their ability to prepare for trial.  Al Sadeq and Stokoe respectfully ask this Court for a prompt resolution of this matter.

17

This 15th day of April, 2022.

/s/ Mark W. Merritt
Mark W. Merritt
N.C. Bar No. 12198
mmerritt@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Suite 1900
Charlotte, North Carolina  28246
Telephone:    704.377.2536
Facsimile:     704.378.4000

*Attorney for Applicant Karam Salah Al Din Awni Al Sadeq and Stokoe Partnership Solicitors*

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that this brief complies with Local Rule 7.3(d) and that this brief does not exceed 6,250 words.

This 15th day of April, 2022.

/s/ Mark M. Merritt
Mark M. Merritt