IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:21-mc-00006-UA-LPA

*In re* Application of KARAM SALAH AL　　)
DIN AWNI AL SADEQ and STOKOE　　　　)
PARTNERSHIP SOLICITORS for an　　　　)
Order under 28 U.S.C. § 1782 to Conduct　)
Discovery for Use in Foreign Proceedings　)
　　　　　　　　　　　　　　　　　　　)

## MEMORANDUM OF LAW IN OPPOSITION TO NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES, INC.'S MOTION FOR RECONSIDERATION

In their Rule 59(e) motion, Respondents Nicholas Del Rosso ("Del Rosso") and

Vital Management Services, Inc. ("VMS") (collectively, "Respondents") make no attempt

to discredit the well-reasoned opinion upholding the magistrate judge's decisions

granting the Section 1782 Application (the "Application") filed by Karam Salah Al Din

Awni Al Sadeq ("Mr. Al Sadeq") and Stokoe Partnership Solicitors ("Stokoe")

(collectively, "Applicants") and quashing Respondents' objections to the resulting

subpoenas.  Instead, Respondents claim that this Court's ruling should be reconsidered

because, they say, a single paragraph in the Declaration of Haralambos Tsiattalou

submitted in support of the Application falsely stated that Mr. Tsiattalou obtained copies

of CyberRoot's bank statements showing approximately $1 million in payments from

VMS to CyberRoot from a whistleblower.  (ECF No. 4, p. 11).  In addition, Respondents

claim that a ruling by the English court that certain records at issue in the Al Sadeq

litigation in the United Kingdom and belonging to the Dechert law firm are privileged

somehow prevents Applicants from seeking Respondents' documents, which may or may not be privileged, in the United States. Respondents' strategy is to avoid addressing whether the Court's rulings on the Application are correct, and instead to argue the merits of the hacking claims at issue in the United Kingdom and cast the Application as an improper attempt to aid Azima and others in their ongoing disputes against RAK and the Ruler.

This is a strategy of misdirection and obfuscation, which only prolongs Mr. Al Sadeq's years-long wait to obtain discovery. The strategy fails because the requirements for reconsideration under Rule 59(e) are limited and not met here.

There are only three situations in which a motion for reconsideration under Rule 59(e) may be granted: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See Donalds v. Ethicon, Inc.*, No. 22-1737, 2023 WL 2446703, at *5 (4th Cir. Mar. 10, 2023). As set forth below, there is no "new evidence." What Respondents claim is new evidence actually reflects only their own litigation position and subjective view of disputed facts. There is also no manifest injustice to correct or prevent or any intervening change in controlling law based on which this Court must alter its approach.

Fundamentally, Respondents ask this Court to ignore that the underlying foreign proceedings for which discovery is sought are brought not on behalf of Mr. Azima, but Mr. Al Sadeq—who remains imprisoned in RAK unlawfully and has been the subject of

2

human rights abuses—and for Stokoe—Mr. Al Sadeq's law firm, which has been subject to surveillance, intimidation, and hacking attempts since its representation of Mr. Al Sadeq began. As Applicants have maintained from the filing of the Application, Mr. Al Sadeq is collateral damage and a victim in the complicated web of relationships and accusations highlighted in Respondents' opposition papers. As this Court has recognized, irrespective of the larger context in which Mr. Al Sadeq is entangled, the discovery sought is relevant to the prosecution of Mr. Al Sadeq's claims in the United Kingdom for human rights abuses. (*See* ECF No. 7, pp. 39).

Respondents' contentions that the Application somehow circumvents the English court's April 5, 2023 ruling on privilege and that the privilege ruling warrants reconsideration are unavailing. The English court ruled on certain issues of privilege affecting documents in the files of the Dechert law firm relating to its legal work for the Ruler of RAK and RAK government entities. Those issues related to the particular position of Dechert as a law firm, not the question of whether documents held by private investigators like Respondents are privileged, which raises very different considerations. Further, the English court's ruling followed Dechert itemizing in a privilege log all of the documents over which privilege was claimed, and providing further evidence in support of those claims. Respondents' reliance on this ruling ignores that Respondents may possess documents responsive to the subpoenas that are not privileged. Additionally, it is simply premature to address any privilege issue. Any privilege claim can only be addressed after an assertion of privilege by Respondents in an appropriate privilege log

3

setting forth the basis of the privilege.  A blanket assertion of privilege based on an unrelated, foreign privilege ruling does not warrant reconsideration under Rule 59.

Respondents have not established the required elements for this Court to reconsider its thorough and well-reasoned opinion upholding the grant of Applicants' Section 1782 Application and denial of Respondents' motion to quash.  Respondents' attempt to litigate the merits of the Azima dispute in no way gives rise to a basis for reconsideration of the Court's ruling.

## I.    FACTUAL AND PROCEDURAL HISTORY

On February 5, 2021, Applicants filed an *ex parte* application for an order under 28 U.S.C § 1782 to conduct discovery for use in foreign proceedings.  The purpose of the Application was to obtain limited but necessary discovery in aid of civil proceedings in the High Court of Justice of England and Wales captioned *Karam Salah Al Din Awni Al Sadeq v. Dechert, LLP, Neil Gerrard, David Hughes, and Caroline Black*, Claim No. QB-2020-000322 and *Stokoe Partnership Solicitors v. Mr. Patrick Tristram Finucane Grayson, Grayson + Co Limited, Mr. Stuart Robert Page, and Page Corporate Investigations Limited*, Claim No. QB-2020-002492.  Magistrate Judge Auld granted the Application in a Memorandum Opinion and Order dated October 18, 2021 (ECF No. 7) and denied the Respondents' motion to quash the subpoenas issued pursuant to that Order in a Memorandum Opinion and Order dated March 18, 2022 (ECF No. 20).  The relevant facts and procedural background are set forth at length and in extensive detail in Magistrate Judge Auld's rulings and are referenced herein as appropriate.

4

Respondents now move this Court to reconsider its Order (ECF No. 24) affirming Magistrate Judge Auld's prior orders on the grounds of "newly discovered evidence," a recent ruling in the United Kingdom, and manifest injustice. Respondents contend that their "newly discovered evidence" establishes that the Application relied on a false statement—specifically, that bank records submitted in support of the Application were obtained from a whistleblower when, according to Respondents, the bank records were "stolen from a bank account in India belonging to CyberRoot." (ECF No. 25, pp. 1-2). Respondents further urge this Court to reconsider its ruling on the basis of "newly-determined law rejecting arguments advanced by Applicants, and instead holding that Dechert LLP's ("Dechert") legal work for RAKIA is covered by the attorney-client privilege and the attorney work product doctrine, and is not subject to expansive discovery which undoubtedly will be sought by Applicants in the Application." (ECF No. 25, p. 2).

## II.     ARGUMENT

### A.     Reconsideration Should Only Be Granted "Sparingly," and the Grounds on which Reconsideration Can Be Granted Are Limited.

There are only three situations in which a Rule 59(e) motion for reconsideration may be granted: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See Donalds*, 2023 WL 2446703, at *5. "It is an extraordinary remedy that should be applied sparingly." *Id.* Rule 59(e) motions may not

be used "to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 404 (M.D. Pa. 2019) ("[M]otions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment . . . [n]or should they be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." (internal quotation marks and citations omitted)); *In re Reese*, 91 F.3d 37, 39 (7th Cir. 1996) ("A motion under Rule 59(e) is not authorized to enable a party to complete presenting his case after the court has ruled against him." (internal quotation marks omitted)).

Where, as here, a Rule 59(e) motion is based on purported newly discovered evidence, the moving party must show that: (1) the evidence is newly discovered since judgment was entered; (2) the movant exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence likely would produce a new outcome if the case were retried, or require the judgment to be amended. *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989). Where "a party relies on newly discovered evidence in its Rule 59(e) motion, the party must produce a legitimate justification for not presenting the evidence during the earlier proceeding." *Pacific Insurance*, 148 F.3d at 403 (internal quotation

marks omitted). "Evidence that is available to a party prior to entry of judgment . . . is not a basis for granting a motion for reconsideration as a matter of law." *Boryan*, 884 F.2d at 771-72. Respondents have failed to meet the applicable Rule 59(e) standard.[1]

### B. Respondents' Evidence Is Not "Newly Discovered" and Fails to Meet the Standards for Reconsideration.

Respondents' moving papers fail to establish that the evidence on which their motion relies was "newly discovered or unknown to" Respondents and that Respondents "could not with reasonable diligence have discovered and produced such evidence" in a more timely manner. *Boryan*, 884 F.2d at 771 (internal quotation marks omitted). This failure is fatal to their motion.

*First*, even assuming that the evidence is relevant to the Application (which it is not), the evidence is not newly discovered since this Court's May 10, 2023 Order—or even since Applicants filed the Application in February 2021. (ECF No. 24; ECF No. 1). Respondents' purported evidence concerning the identity of the party funding Applicants' litigation is based on a judgment handed down in the United Kingdom "[o]n May 22,

---

[1] Although Respondents claim that they "are seeking reconsideration of an interlocutory order" and that the Rule 59(e) standard should be applied less stringently to motions seeking reconsideration of interlocutory orders pursuant to Rule 54(b), Respondents characterize their motion as a motion pursuant to Rule 59(e), not Rule 54(b). (ECF No. 25, p. 1). Respondents also cite no case law for the proposition that the Order they seek to have modified is an interlocutory order. The ordinary Rule 59(e) standard applies to Respondents' motion. *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A., Pursuant to 28 U.S.C. § 1782*, 747 F.3d 1262, 1274 (11th Cir. 2014) (applying the Rule 59 and 60 standards to an order denying a motion to vacate a decision granting a Section 1782 application).

2020," (ECF No. 28, pp. 7-8), and on conversations between Del Rosso and an individual named Yuri Koshkin, also in 2020, "[s]hortly after the Approved Judgment was published[.]" (ECF No. 28, pp. 8-9; ECF No. 27, pp. 3-5). Respondents do not attempt to explain how this years-old evidence is "newly discovered" within the meaning of Rule 59(e). (ECF No. 28, pp. 8-9). Respondents provide no information about when the records were obtained, how they were obtained, and why they could not have been obtained or provided to the Court earlier with the exercise of reasonable due diligence, as Respondents are required to show on a Rule 59(e) motion.

The other evidence on which Respondents rely consists primarily of two declarations from Vikash Pandey, dated October 22, 2020, and March 25, 2021—over two years ago. (ECF No. 28, pp. 3-4; *see also* ECF Nos. 26-6, 26-7). The first of these declarations pre-dates the Application, and both declarations pre-date Respondents' motion to quash and objections to the order denying that motion. (ECF Nos. 14, 21). Respondents' filings in the Azima litigation pending before this Court also show that Respondents had both declarations at least by February 9, 2023, when they filed the declarations in the Azima action.[2] Respondents made these filings several months before entry of the judgment Respondents now ask this Court to reconsider, but never raised the purported issue with this Court. This history shows that Respondents knew about these records well before the Court entered its Order. They are not new evidence.

---

[2] *Azima v. Del Rosso et al.*, 1:20-cv-00954-WO-JLW, ECF Nos. 157-6, 157-7.

Where, as here, the party seeking reconsideration has known about or had access to allegedly new evidence offered for the first time in a Rule 59(e) motion, courts regularly hold that the evidence is not new and does not warrant reconsideration. For example, in *Theidon v. Harvard University*, 948 F.3d 477 (1st Cir. 2020), the First Circuit held that an article disclosing an individual's history of sexual harassment was not "new evidence" because the proponent had known about allegations similar to those disclosed in the article for years before the article's publication. 948 F.3d at 509. Similarly, where the party seeking reconsideration should have known about the information earlier, the information does not qualify as "new evidence." For example, the D.C. Circuit rejected the proposition that allegedly false statements made between 2003 and 2013 were "new evidence" for purposes of a 2018 motion for reconsideration, agreeing with the district court that it was "not justifiable that counsel failed to unearth . . . these additional allegations during three years of litigation." *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1287 (D.C. Cir. 2019).

*Second*, for the same reasons, Respondents have not established that they exercised due diligence to discover the allegedly new evidence. Respondents fail to articulate why they are only now bringing to the Court's attention conversations between Mr. Del Rosso and Koshkin in 2020. Respondents further fail to articulate why they are just now submitting the Pandey declarations, dated over two years ago, to the Court, even though those declarations were already submitted in the Azima action several months ago. Where a party's motion for reconsideration is based on allegedly newly discovered

evidence filed with a court before the order at issue was entered, the evidence is not new and does not provide a basis for reconsideration. *Maxmed Healthcare, Inc. v. Price*, 860 F.3d 335, 343-44 (5th Cir. 2017) (affirming denial of motion for reconsideration based on complaints filed with other courts before the order at issue was entered).

*Third,* the evidence does not require the Court's Order to be amended. As Respondents correctly point out, "Applicants are seeking discovery from Respondents related to their work for CyberRoot." (ECF No. 28, p. 19). This Court has already determined that Applicants satisfied the statutory criteria for obtaining discovery under Section 1782(a)—that "(1) the applicant is an interested person, (2) the discovery production is for use in a foreign proceeding, and (3) the person at whom the order is directed resides in the district where the motion was filed." *RF Micro Devices, Inc. v. Xiang*, No. 1:12CV967, 2013 WL 12136502, at *1 (M.D.N.C. Nov. 4, 2013). As this Court found, "the evidence sought could help prove whether, inter alia, Gerrard and Dechert helped interfere with Al Sadeq's access to legal counsel (by interfering with Stokoe's ability to represent Al Sadeq), as well as whether the charges and actions against Al Sadeq arose from political motivations, including the Ruler's desire to punish Dr. Massaad and hide the Ruler's involvement in RAKIA's foreign investment activities." (ECF No. 20, p. 94). "The requested discovery could also help prove whether Grayson and his codefendants, including Page, Gerrard, and Dechert, engaged in illicit attempts to obtain Stokoe's confidential information and to disrupt its representation of Al Sadeq." (ECF No. 20, p. 94).

10

As this Court has determined, the Application and discovery sought satisfy Section 1782's "for use" and relevancy requirements. (ECF No. 20, p. 94; ECF No. 7, p. 35-40). Nowhere in Respondents' moving papers do they address these findings or explain how the purported "newly discovered" evidence warrants a different conclusion as to the Section 1782 analysis. This, too, is fatal to Respondents' motion. Where the alleged new evidence has no bearing on the matter pending before the court, it does not provide a basis for reconsideration. *Theidon*, 948 F.3d at 509; *Maxmed Healthcare*, 860 F.3d at 344 (affirming denial of motion for reconsideration based on pleadings lacking sufficient connection to the core issues addressed in the order).

### C. Respondents' "Evidence" Is of an Impeaching Nature and Not Material.

Much of Respondents' Memorandum is focused on persuading the Court that Applicants' claims in the United Kingdom and Azima's claims in the Middle District lack merit. This posturing is not relevant—much less material—to the Section 1782 factors on which the Court based its Order.

As this Court has held, Applicants have met the statutory requirements of Section 1782 because they seek discovery (1) from Del Rosso and VMS, who both reside within this District, (2) for use in foreign proceedings, (3) that are pending in a foreign tribunal (the High Court of Justice of England and Wales, Queen's Bench Division), in which (4) Mr. Al Sadeq and Stokoe are the claimants, and thus, interested parties. In addition, this Court has examined and ruled that the Applicants have satisfied the discretionary

11

factors that the Supreme Court articulated in *Intel Corp. v. Advanced Micro Devices, Inc.* 542 U.S. 241, 252 (2004), in that (1) Del Rosso and VMS are not parties to the foreign proceedings, (2) U.K. courts are receptive to discovery under Section 1782, (3) the Application is not an attempt to circumvent the U.K. court's proof-gathering requirements, and (4) the requested discovery is neither unduly burdensome nor overly intrusive.

An examination of Respondents' alleged "new evidence" establishes that it does not bear on the factors this Court properly considered under Section 1782, but is instead used to support arguments directed to the merits of the underlying claims, which are not before this Court. When considering a Section 1782 application, the district court is not tasked with and is "in no position to assess the merits of" the underlying foreign litigation. *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A., Pursuant to 28 U.S.C. § 1782*, 747 F.3d 1262, 1274 (11th Cir. 2014). Simply stated, the purported new evidence is not material to the Section 1782 analysis, but instead intended to impeach the merits of Applicants' claims in the foreign proceedings. As *Boryan* makes clear, evidence that is impeaching or not material is insufficient to support a motion for reconsideration. 884 F.2d at 771. As such, it is "not material evidence nor evidence that would have probably changed the outcome of the district court's decision," and therefore is not a basis for reconsideration. *Corsorcio*, 747 F.3d at 1274-75.

At best, Respondents' characterizations of their "evidence" merely impeaches Applicants' own view of the case on the merits. Respondents' purported evidence is that:

- A man named Yuri Koshkin working on behalf of ENRC told Del Rosso that ENRC was funding Azima and Applicants (ECF No. 28, p. 8-9);

- Azima's agents unlawfully obtained CyberRoot's bank statements (ECF No. 28, p. 9-10);

- One party, Vikash Pandey, has filed an affidavit regarding CyberRoot that contradicts an affidavit on the same subject filed in the Azima litigation by Azima's investigator, Jonas Rey (ECF No. 28, p. 11-12);

- Azima's counsel attempted to convince Pandey to implicate CyberRoot (ECF No. 28, p. 12-13); and

- Consultants for ENRC contacted Del Rosso about settlement before Azima filed his lawsuit (ECF No. 28, p. 14).

Respondents do not link Applicants to these activities or attempt to explain why the activities are relevant to the Section 1782 analysis they ask the Court to reconsider. They also do not explain why this information is more than "mere impeachment" of Applicants' merits positions, which are at the heart of the dispute to be decided in the U.K. courts. Indeed, the materials Respondents submitted illustrate the controverted nature of the matters they assert—and in some respects, Respondents' materials are consistent with Applicants' own positions.

With respect to the alleged theft of bank records, which the Tsiattalou Declaration stated were disclosed by a "whistleblower," Respondents cite an investigation report from police in India. The report shows that employees of the Kotak Mahindra bank (Deepak

13

Kumar and Pappu Kumar) leaked bank statements concerning transactions between CyberRoot and VMS, among others, to an individual named Omkar Tripathi, who in turn is alleged to have disseminated the records to Azima and others. (ECF No. 28, pp. 10-11, ECF Nos. 30-1 through 30-3). This investigative report and the witness statements do not address whether these individuals viewed themselves as "whistleblowers" and do not substantiate that anyone has been convicted of any crime in connection with the release of the records. The summary of the Indian criminal investigation does, however, contain a statement linking Respondents and CyberRoot, specifically noting that "a hefty sum of money was transferred to the complainant company Cyber Root Risk Advisory Pvt Ltd by Mr. Del Rosso, CEO of VMS (Vital Management Services Inc.) for hacking into the details of Farhad Azima." (ECF No. 26-3, p. 4). This statement is consistent with this Court's previous finding that Del Rosso "engaged CyberRoot to carry out work on RAKIA's behalf; and had arranged payment to CyberRoot of the $1 million." (ECF No. 20, p. 17).

Respondents also seek to have this Court modify its Order based on the Pandey declarations (ECF Nos. 30-6, 30-7) dated over two years ago, wherein Pandey denies "the allegations in Rey's statement, denies ever having met or spoken with Rey," denies "having any information or belief that CyberRoot or Respondents were engaged in any illegal hacking," and claims "that Azima and his agents attempted to pressure him into providing false information that would implicate CyberRoot." (ECF No. 28, p. 12). Pandey's self-serving denial of the allegations in Rey's statement does nothing more than

create a credibility contest between Rey and Pandey. The two-plus-year-old Pandey declarations no more conclusively establish the truth of Pandey's allegations than Rey's statement establishes the truth of his. As a result, the Pandey declarations are, at best, merely impeaching, and do not provide a basis under Rule 59(e) for reconsidering or modifying the Order. *See Boryan*, 884 F.2d at 771.

### D. Respondents Fail to Show "Manifest Injustice."

In addition to their proposed "new evidence," Respondents seek reconsideration by claiming that it would be a "manifest injustice" to leave the current ruling in place. Respondents base their "manifest injustice" argument on their accusation that Applicants knowingly made a false representation in their Section 1782 Application. That alleged false statement, as explained above, relates to the Tsiattalou Declaration's characterization of the source of the CyberRoot bank records as a "whistleblower." The very cases on which Respondents rely establish that that this single statement in the Tsiattalou Declaration did not give rise to manifest injustice in the Court's decision to grant the Application.

Respondents rely primarily on *Circuit City Stores, Inc. v. EEOC*, 182 F.R.D. 496 (E.D. Va. 1998), in support of their argument. There, Circuit City brought an action seeking a declaration that its Associate Issue Resolution Program did not violate federal employment discrimination laws. The EEOC moved to dismiss under Rule 12(b)(1), arguing that the issue was not ripe because (i) the EEOC had not decided whether to authorize litigation against Circuit City to enforce its determination that the Program

15

violated employment discrimination laws; and (ii) the EEOC did not even have a quorum of Commissioners necessary to make a decision on that point. 182 F.R.D. at 497. "In securing the ruling in its favor, the EEOC repeatedly assured the Court" of these points. *Id.* The district court granted the EEOC's motion, finding that the claim "was not yet ripe for judicial resolution." *Id.* The court described its opinion as "issued, in significant part, on the basis of representations made by the EEOC." *Id.* at 499.

Before the district court's ruling on the 12(b)(1) motion, the EEOC made representations in other proceedings that squarely contradicted its representations to the Eastern District of Virginia. In particular, the EEOC declared in two separate investigations that Circuit City's program was "a violation of Title VII, the Equal Pay Act, the [ADA] and the [ADEA]." *Id.* at 498. And in a separate lawsuit, the EEOC disclosed that it had a quorum to make a decision about authorizing litigation against Circuit City and had in fact authorized enforcement action. *Id.* at 498-99. Both statements contradicted the EEOC's representations in the Eastern District of Virginia and undermined the very bases on which the district court granted the EEOC's 12(b)(1) motion. *Id.* at 499.

In granting Circuit City's motion for reconsideration based on these contradictory representations, the district court found that "(1) there is new evidence requiring further consideration of the EEOC's motion to dismiss . . . ; and (2) it would be a manifest injustice for the [12(b)(1)] Opinion to remain in effect, considering that (a) representations significant to the substantive outcome . . . appear not to have been correct

16

at the time the opinion was issued; (b) the EEOC appears to have known that the representations were not correct then; and (c) there may have been deliberate decisions not to correct them." *Id.* at 500.

The new evidence in *Circuit City* flatly contradicted information provided to the district court and was not a matter of interpretation or characterization. The EEOC either had or did not have a quorum. It either had or had not determined whether to authorize litigation against Circuit City. These facts could not properly be the subject of inconsistent positions in different proceedings. And there is no doubt the district court relied on both misrepresentations in issuing its decision on the Rule 12(b)(1) motion.

By contrast, Respondents claim that Mr. Tsiattalou's *characterization* of the source of information as a whistleblower is a false statement. This ignores that whether an individual is a whistleblower is inherently subjective.[3] Whistleblowing involves the sharing of information by someone inside an organization to someone on the outside to address a perceived wrong. Nothing in the record supports that Mr. Tsiattalou knew his representation about how he characterized the source of the bank records was false and yet still made it or failed to correct it. And nothing in the record constitutes conclusive evidence that Mr. Tsiattalou's representation was or is false.

Moreover, and unlike *Circuit City*, Magistrate Judge Auld's orders allowing the Section 1782 application and denying Respondents' motion to quash do not rely on the

---

[3] There has been no determination or finding of criminal activity related to the disclosure of the bank records in connection with the Indian investigation that would undermine Mr. Tsiattalou's "whistleblower" characterization.

allegedly false representation in Tsiattalou's Declaration. The materiality of the bank records to the Section 1782 determination was based on their content, which showed a connection between Del Rosso, VMS, and CyberRoot. That content and connection is not in dispute. Indeed, Del Rosso admitted that he made the payments to CyberRoot in the wake of the disclosures of the bank records at issue. Moreover, the manner in which the bank records were obtained is a disputed issue that remains unresolved. It is not before this Court, nor is it relevant to the Section 1782 analysis. Finally, Magistrate Judge Auld's orders rest on extensive factual analysis apart from the bank records. This independent analysis fully supports granting the Application and denying Respondent's motion to quash.

### E.     The Privilege Ruling Does Not Support Reconsideration.

Respondents assert that the English court's ruling on certain privilege issues also requires reconsideration of this Court's Order. The ruling is a legal determination, not new evidence. It does not constitute an intervening change in controlling law warranting reconsideration under Rule 59(e). *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 210-11 (4th Cir. 2017) (holding that an out-of-circuit case "cannot constitute controlling law").

Respondents' assertion that the English court's ruling requires reconsideration is also premature. As demonstrated by the English court's ruling itself, the English court made a determination of issues arising from the specific position of Dechert as a law firm, and not any issue of whether documents held by a third-party private investigator

18

would be subject to privilege, which would raise very different considerations. Further, Dechert's claims to privilege were based on a privilege log prepared by outside counsel that allowed the court to evaluate the assertion of privilege based on the content and context of each document at issue. (ECF No. 26-9 p. 11). Any privilege objection by Respondents can and must be raised in a privilege log that allows Applicants to evaluate the basis for the assertion of the privilege. *See In re Chevron Corp.*, 749 F. Supp. 2d 141, 166-67 (S.D.N.Y. 2010) (recipients of subpoenas are obliged to enumerate the documents as to which they claim privilege, assert their privilege claims in the manner prescribed by local and federal rules, and answer questions in depositions that explore the basis for a privilege objection).

Respondents' reliance on *In re Eli Lilly & Co.*, 37 F.4th 160 (4th Cir. 2022), is misplaced. The primary issue in *Eli Lilly* was the meaning of the term "found" in 28 U.S.C. § 1782. Section 1782 only authorizes a district court to order a person who "resides or is found" in the district to provide discovery for use in a foreign tribunal. *Eli Lilly*, 37 F.4th at 163 (quoting 28 U.S.C. § 1782(a)). The Fourth Circuit held that "found" means "having a physical presence in" the district. Because the party against which the application was sought did not have a physical presence in the district where the application was filed, the Fourth Circuit affirmed denial of the application. *Id.* at 165.

The Fourth Circuit went on to apply the *Intel* factors to review the district court's conditional ruling denying the application. The Fourth Circuit, like the district court, focused on the third and fourth *Intel* factors and addressed whether the requested

19

discovery was "unduly burdensome" or an impermissible attempt to circumvent foreign proof-gathering restrictions. *Id.* at 168. The Fourth Circuit found the request unduly burdensome because the requested material was not located in the Eastern District or even the United States. *Id.* Instead, Eli Lilly's application essentially requested that data be brought into the United States for production abroad, which is inconsistent with the purpose of Section 1782. *Id.* Additionally, the court in Ireland had already adjudicated discovery motions with respect to categories of documents that appeared to overlap "significantly" with those Eli Lilly requested in its application, rendering the application unnecessary. *Id.*

Here, there is no dispute that Respondents are located in the Middle District of North Carolina. That the party against which discovery is sought is not a resident of or found in the district—the driving force in *Eli Lilly*—is not a factor. In addition, and unlike the dispute in *Eli Lilly*, Del Rosso is not a party to the United Kingdom litigation and is not subject to party discovery in the United Kingdom. There has been no assertion that the courts in the United Kingdom can order Respondents to produce documents that are located in the Middle District in the foreign lawsuits brought by Al Sadeq and Stokoe.

## III. CONCLUSION

The thrust of Respondents' motion for reconsideration and supporting material is that the Applicants are wrong on the merits and that there is no credible hacking claim against Respondents. That issue is for the courts in the United Kingdom to decide. Respondents similarly argue that the evidence Applicants seek should not be

20

discoverable.  But the law is clear that Section 1782 *does not* impose a requirement that the materials sought in a Section 1782 application be discoverable in the country where the foreign proceedings are pending.  *See Intel Corp.*, 542 U.S. at 260-63 (2004); *In re Request from Canada*, 155 F. Supp. 2d 515, 518-520 (M.D.N.C. 2001) (holding that Section 1782 ordinarily does not require that evidence sought in the United States be discoverable or admissible under foreign laws to be produced in response to a Section 1782 application).

This Court should not be distracted or misdirected by Respondents' merits-based arguments.  On three occasions, this Court has appropriately found that Applicants have met Section 1782's requirements.  Respondents' belated reliance on immaterial evidence and matters unconnected to Applicants in no way warrants reconsideration of those rulings.

[Signature on Following Page]

21

This 2nd day of June 2023.

/s/ Mark W. Merritt
Mark W. Merritt
N.C. Bar No. 12198
mmerritt@robinsonbradshaw.com

Travis S. Hinman
N.C. Bar No. 50779
thinman@robinsonbradshaw.com

Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon St., Suite 1900
Charlotte, North Carolina 28246
Phone:  704.377.2536
Fax:  704.378.3000

*Attorneys for Applicants Karam Salah Al
Din Awni Al Sadeq and Stokoe
Partnership Solicitors*

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief complies with Local Rule 7.3(d) and that this brief does not exceed 6,250 words.


/s/ Mark M. Merritt
Mark M. Merritt