IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| In re Application of KARAM SALAH AL DIN AWNI AL SADEQ and STOKOE PARTNERSHIP SOLICITORS for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | 1:21-mc-6 |

**ORDER**

**OSTEEN, JR., District Judge**

Before this court is a Motion to Reconsider or Modify, (Doc. 25),[1] filed by Vital Management Services, Inc. and Nicholas Del Rosso (collectively, "Respondents"). Respondents request this court to reconsider its order, (Doc. 24), affirming two orders issued by the Magistrate Judge, (Docs. 7, 20). The first order by the Magistrate Judge granted an ex parte application filed by Karam Salah Al Din Awni Al Sadeq and Stokoe Partnership Solicitors (collectively, "Applicants") to conduct discovery for use in a foreign proceeding, pursuant to 28 U.S.C. § 1782. (Doc. 7.) Specifically, the order permitted Applicants to serve subpoenas compelling deposition testimony on Respondents in connection with ongoing litigation in the United Kingdom

---

[1] All citations in this Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

("underlying UK litigation"). (Id. at 42.) The second order by the Magistrate Judge denied Respondents' motion to quash the subpoenas. (Doc. 20.) Respondents filed an objection to the order denying the motion to quash, (Doc. 21), and this court overruled Respondents' objection and affirmed, (Doc. 24).

Respondents now move this court to reconsider or modify its order, pursuant to Fed. R. Civ. P. 59(e), based on "newly received evidence" and "newly-determined law." (Doc. 25 at 1–2.) Respondents filed a brief in support, (Doc. 28), Applicants responded in opposition, (Doc. 33), and Respondents replied, (Doc. 34). For the reasons stated herein, Respondents' motion will be denied.

I.  **STANDARD OF REVIEW**

A motion for reconsideration under Rule 59(e)[2] is granted only in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e) reconsideration "is an extraordinary remedy that should be

---

[2] Respondents argue that an order permitting discovery pursuant to 28 U.S.C. § 1782 is an interlocutory order, and thus is "not subject to the strict standards applicable to motions for reconsideration of a final judgment." (Doc. 28 at 14-15.) While discovery orders are normally interlocutory, in a § 1782 proceeding, the underlying case is conducted in a foreign tribunal; once the district court has ruled on the parties' evidentiary requests, such evidentiary orders are final. See In re Naranjo, 768 F.3d 332, 346-47 (4th Cir. 2014) (holding that a § 1782 order is an immediately appealable final order); Luxshare, Ltd v. ZF Auto. US, Inc., 15 F.4th 780, 782-83 (6th Cir. 2021) (same). Thus, an order granting discovery pursuant to 28 U.S.C § 1782 is a final order, and a motion for reconsideration of that order is made pursuant to Fed. R. Civ. P. 59(e). See Donalds v. Ethicon, Inc., No. 22-1737, 2023 WL 2446703, at *5 (4th Cir. Mar. 10, 2023) (applying Rule 59(e) on a motion to reconsider an order granting summary judgment); see also In re Hulley Enters. Ltd. v. Baker Botts LLP, 286 F. Supp. 3d 1, 5 (D.D.C. 2017) (applying Rule 59(e) on a motion to reconsider an order granting a § 1782 Application); In re Syngenta Crop Prot. AG, No. 21-mc-375, 2022 WL 3153858, at *1 (D. Del. Aug. 8, 2022) (same).

applied sparingly." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012).

Relief based on newly discovered evidence requires the movant to show:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

Boryan v. U.S., 884 F.2d 767, 771 (4th Cir. 1989) (citation omitted). "Evidence that is available to a party prior to entry of judgment, therefore, is not a basis for granting a motion for reconsideration as a matter of law." Id.

Manifest injustice is defined as "an error by the court that is direct, obvious, and observable." Register v. Cameron & Barkley Co., 481 F. Supp. 2d 479, 480 n.1 (D.S.C. 2007) (citation omitted) (internal quotation marks omitted).

"Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Pac. Ins. Co., 148 F.3d at 403; Directv, Inc. v. Hart, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) ("Motions to reconsider are not proper where the motion merely asks the court

- 4 -

to rethink what the Court had already thought through — rightly or wrongly.") (citation omitted) (internal quotation marks omitted).

## II. ANALYSIS

Respondents argue that "[t]his proceeding is part of a concerted effort by Applicants Karam Salah Al Din Awni Al Sadeq ("Al Sadeq") and Stokoe Partnership Solicitors ("Stokoe") ("Applicants") and their co-conspirators — including Farhad Azima ("Azima") and agents of the Eurasian Natural Resources Corporation ("ENRC") — to falsely implicate Respondents and other consultants engaged by the Dechert, LLP law firm and one of its former partners, attorney Neil Gerrard, in schemes alleged in several proceedings." (Doc. 28 at 1.)

Respondents argue reconsideration is appropriate for three reasons: (1) Applicants falsely represented that they obtained CyberRoot bank statements from a whistleblower, and new evidence shows that Azima and his co-conspirators stole the CyberRoot bank statements; (2) Applicants are using the § 1782 Proceeding for "an ulterior purpose," namely to assist a non-party, the ENRC, which has been engaged in a long time dispute with former Dechert partner Gerrard; and (3) the English court presiding over the underlying UK litigation entered a judgment denying Applicants' efforts to obtain discovery into privileged matters

- 5 -

relating to Dechert's representation of its clients, Ras Al Khaimah[3] ("RAK"), and the related entity, the Ras Al Khaimah Investment Authority ("RAKIA"). (Doc. 28 at 2-5). On August 4, 2023, Respondents filed supplemental materials in support of their argument that the CyberRoot bank records were stolen and that a conspiracy exists between Azima, Applicants, and others, "to frame Respondents and CyberRoot in connection with the allegations that they hacked Mr. Azima's data." (Doc. 35 ¶ 5.)

Applicants argue that "Respondents' strategy is to avoid addressing whether the Court's rulings on the Application are correct, and instead to argue the merits of the hacking claims at issue in the United Kingdom and cast the Application as an improper attempt to aid Azima and others in their ongoing disputes against RAK and the Ruler[4]." (Doc. 33 at 2.)

### A. Origin of the CyberRoot Bank Records

In related foreign litigation, Azima alleged that Respondents, acting on behalf of RAKIA, instructed an Indian company, CyberRoot, to hack Azima's data and emails beginning in 2015. (See Doc. 20 at 84-85.) Respondents denied they paid CyberRoot to hack Azima's emails but admit they engaged

---

[3] Ras Al Khaimah is one of the constituent Emirates of the UAE. (Doc. 20 at 4.)
[4] The Ruler refers to the Deputy Ruler of RAK. (See Doc. 20 at 4.)

CyberRoot to carry out unrelated work on RAKIA's behalf. (Id. at 85.) In their § 1782 Application, Applicants introduced CyberRoot bank records that showed Respondents paid CyberRoot $1 million in 2015. (See Doc. 4 ¶ 32; Doc. 4-7.) As the Magistrate Judge explained in depth in his order, "determining the circumstances by which the Ruler obtained Azima's emails, which implicate Al Sadeq in an alleged fraud regarding the sale of RAKIA's Georgian assets, remains relevant to Al Sadeq's claims regarding the Ruler's politically motivated campaign against Al Sadeq . . . ." (Doc. 20 at 91.)

The new evidence at issue here is related to Applicants' allegation that they obtained the CyberRoot bank records from an ex-employee whistleblower. (Doc. 4 ¶ 32.) Respondents allege that Applicants and their co-conspirators stole the CyberRoot bank records. (Doc. 28 at 3.) Respondents argue that "[t]his stolen information was used to create the now-debunked story upon which Applicants and Azima rely to support their Application for discovery as to Respondents and CyberRoot." (Id. at 6.)

The new evidence is bank records produced in a related lawsuit currently in the discovery stage in the Middle District of North Carolina. (Azima v. Del Rosso et al., No. 1:20-cv-954, Doc. 193 at 4 n.1 (M.D.N.C. filed Oct. 15, 2020) ("Pending North

- 7 -

Carolina Azima Lawsuit").)[5] The bank records were produced after the Magistrate Judge granted the § 1782 Application.[6] The bank records allegedly link Azima and his co-conspirators to the theft of the CyberRoot banks records. (Doc. 28 at 17.) Respondents argue "such evidence shows that the Application was introduced under false pretenses and made in bad faith to create a lawful pretext for Azima's immediate re-use of the stolen records in other cases . . . ." (Doc. 34 at 4.)

Respondents also filed declarations of two directors of CyberRoot ("CyberRoot Declarations") as "further direct evidence of the conspiracy between the Applicants and Mr. Azima to frame Respondents and CyberRoot in connection with allegations that they hacked Mr. Azima's data, and to use this proceeding to sanitize those stolen documents." (Doc. 35 ¶ 5.)

Applicants reply that this evidence goes to the merits of the underlying UK litigation and is not relevant to the § 1782 Application. (Doc. 33 at 2.)

---

[5] Respondents also proffer other evidence in support of their argument that the CyberRoot bank records were stolen, (see Doc. 28 at 11–13), but it is not newly discovered evidence.

[6] Respondents state the bank records were produced "as 'Confidential' under the protective order" in the Pending North Carolina Azima Lawsuit on February 24, 2023. (Doc. 34 at 5.) The § 1782 Application was granted on October 18, 2021. (See Doc. 7.) Respondents filed their motion to quash on November 30, 2021, (see Doc. 14), and the Magistrate Judge denied their motion on March 18, 2022, (see Doc. 20).

While there is merit to the argument that the new bank records and the CyberRoot Declarations bolster Respondents' allegations that Azima and his co-conspirators stole the CyberRoot bank records, this type of evidence does not warrant reconsideration of a § 1782 Application. See In re Veiga, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) ("[I]n enacting § 1782(a), Congress did not intend for district courts to assess the weight of individual pieces of evidence in excruciating detail, and then attempt to discern the precise nexus between such evidence and the claims and defenses raised in the foreign proceeding."). Respondents' arguments reduce to a disagreement about "the underlying validity of the claims and defenses asserted therein . . . . These objections are better left for the foreign tribunals to resolve." Id.

Furthermore, new evidence that bolsters Respondents' argument that CyberRoot was not involved in the hacking of Azima's emails is not likely to produce a new outcome in the § 1782 Application, and thus is not grounds for a motion to reconsider. In the order denying Respondents' motion to quash, the Magistrate Judge concluded that "even if the Court accepted Del Rosso's assertion that he engaged CyberRoot to conduct work for RAKIA unrelated to the hacking of Azima's emails," the discovery sought satisfied § 1782's requirements. (Doc. 20

- 9 -

Case 1:21-mc-00006-WO-LPA   Document 37   Filed 10/27/23   Page 9 of 14

at 91.) The CyberRoot bank records linking Respondents to CyberRoot is only one piece of evidence supporting the § 1782 Application. Applicants also make other hacking allegations against Respondents, specifically concerning Respondents' alleged hacking of Stokoe's banking accounts. (See Doc. 20 at 32–51.) Those allegations are supported by ample direct and circumstantial evidence, as detailed in the Magistrate Judge's Order. (See Doc. 20 at 43 (discussing the "Allen & Overy Letter"), 45 (discussing the "Robinson Declaration").) Thus, more evidence in support of Respondents' assertion that they did not use CyberRoot to hack Azima's emails is not "likely to produce a new outcome." Boryan, 884 F.2d at 771.

Respondents also argue that reconsideration is necessary in light of the new bank records to avoid manifest injustice. (Doc. 28 at 17.) Respondents argue that the discovery of the new bank records discredits the sworn statements of Haralambos Tsiattalou, partner at Spokoe, who stated that the CyberRoot bank records were provided by a whistleblower with legitimate access. (Doc. 4 ¶ 32.) Respondents state:

> [s]eeing as Applicants presented all of this
> information to the Court as the core of their
> Application's basis for seeking discovery from
> Respondents related to CyberRoot, and the Court
> subsequently relied on these material representations
> as the focal point of much of its Order . . ., the
> newly discovered [bank] records

- 10 -

are grounds for granting Respondents' motion. (Doc. 28 at 22.)

However, again, this argument goes to the origin of the CyberRoot bank records. The order granting the § 1782 Application did not solely rely on the CyberRoot bank records to satisfy § 1782's requirements. Respondents' arguments would require this Court to engage in a comprehensive investigation of the credibility of each piece of evidence proffered, and "to assess the weight of individual pieces of evidence in excruciating detail." In re Veiga, 746 F. Supp. 2d at 18. The new bank records do not clearly establish that the court made an obvious error in granting the § 1782 Application, thus manifest injustice will not result from a denial of reconsideration.

### B. Other Grounds for Reconsideration

Respondents argue, without citing to specific grounds for reconsideration, that reconsideration is necessary because Applicants are using discovery for an "improper purpose." (Doc. 28 at 22.) Respondents argue that Applicants intend to use the information sought in their § 1782 Application "to assist a non-party, namely the ENRC, which has been engaged in a heated dispute with former Dechert partner Neil Gerrard for approximately a decade." (Id. at 4.) However, Respondents do not cite to newly discovered evidence in support of this argument and have not justified its omission from their earlier

- 11 -

arguments. Parties may not make new arguments or reargue points that could have been made before judgment was entered. Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008).

Finally, Respondents argue that reconsideration is necessary in light of an April 5, 2023 ruling from the English court presiding over the underlying UK litigation. (Doc. 28 at 24.) The English court ruled on issues of privilege relating to Dechert's representation of RAK and RAKIA. (Id.) Respondents also state in their reply that there were multiple motions pending in the Pending North Carolina Azima Lawsuit regarding the same discoverability issues. (Doc. 34 at 13.) Respondents' argument that all discovery sought from Applicants is privileged, and that, as a result, this court must reconsider the § 1782 Application, is not persuasive.

28 U.S.C. § 1782 provides: "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." While "courts have concluded that the statute's protection extends to privileges recognized by foreign law," "consonant with courts' reticence to delve into complex questions of foreign law, parties are generally required to provide clear and authoritative proof that a foreign tribunal would reject evidence pursuant to a foreign privilege." In re Veiga, 746 F.

Supp. 2d at 26 (citing <u>Ecuadorian Plaintiffs v. Chevron Corp.</u>, 619 F.3d 373, 378-79 (5th Cir. 2010)).

Furthermore, on August 25, 2023, the Magistrate Judge in the Pending North Carolina Azima Lawsuit issued an order denying in part and granting in part motions regarding the scope of the deposition testimony of Del Rosso, and Vital Management's related motion for a protective order regarding the scope of its deposition. (1:20-cv-954, Doc. 248 at 22.) The Magistrate Judge rejected the argument that Azima should be prevented "from inquiring into Defendant Del Rosso's work done in furtherance of Dechert's representation on Ras al Khaimah and its related entities," because Del Rosso "made nothing more than conclusory assertions of privilege and assume[d] that all information provided would be subject to attorney-client privilege." (<u>Id.</u> at 20-21.) "Privilege assertions should be properly lodged during the depositions and not presented in conclusory fashion." (<u>Id.</u> at 21.)

The English court ruling does not present clear proof that all evidence Applicants seek would be privileged. Furthermore, the Magistrate Judge in the Pending North Carolina Azima Lawsuit rejected the same argument Respondents now make. Thus, the English court ruling does not warrant reconsideration of the order granting the § 1782 Application.

## III. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Respondents' Motion for Reconsideration, (Doc. 25), is **DENIED**.

This the 27th day of October, 2023.

_____
United States District Judge

Case 1:21-mc-00006-WO-LPA   Document 37   Filed 10/27/23   Page 14 of 14